No. 26-2105

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

**EDWAR ANDERSON GOMEZ BLANCO
[A# 241-676-171]
Petitioner/Appellant,**

v.

**MARKWAYNE MULLIN, Acting Secretary of the United States Department
of Homeland Security, *et al.***

---

**On Appeal from the United States District Court for the District of Arizona
No. 2:26-cv-01768-MTL-CDB
Hon. Michael T. Liburdi**

---

**OPENING BRIEF FOR PETITIONER-APPELLANT**

---

Nera Shefer
8422 E Shea Blvd #103
Scottsdale, Az 85260
PH: 786-295-9077
Email: nera@shefer.legal
Attorney for Petitioner-Appellee

# TABLE OF CONTENTS

**STATEMENT REGARDING ORAL ARGUMENT** ...........................................4

**JURISDICTIONAL STATEMENT**............................................................4

**STATEMENT OF THE CASE**..................................................................5

**STANDARD OF REVIEW** .....................................................................7

**SUMMARY OF THE ARGUMENT** ............................................................8

**DETENTION STATUS** .......................................................................10

**ARGUMENT**...................................................................................10

**I. The District Court Erred In Holding That Petitioner Is Subject To Mandatory Detention Under 8 U.S.C. § 1225(b)(2).** ..........................10

    **A.** **8 U.S.C. § 1226(a) Covers Discretionary Detention Of Noncitizens Already Present In The United States.**....................................11

    **B.** **Section 1225(b)(2)(A) Provides For Detention Of Noncitizens Apprehended At The Nation's Borders And Ports Of Entry.** ........13

    **C.** **The Government's New Mandatory Detention Policy**.....................14

    **D.** **The Current Split In The Circuits.**.......................................15

        *1. The Fifth and Eighth Circuits.* ..........................................16

        *2. The Second, Seventh, and Eleventh Circuits.* ...................17

    **E.** **The Plain Text Of § 1225(b)(2)(A) Makes Clear That It Does Not Apply To Petitioner.**...................................................................20

    **F.** **The Legislative History Of 8 U.S.C. § 1225(b)(2)(A) Makes Clear That It Does Not Apply To Petitioner.** ...............................................24

    **G.** **Historical Usage Of 8 U.S.C. § 1225(b)(2)(A) Makes Clear That It Does Not Apply To Petitioner.** ...............................................25

**II. The District Court Erred In Holding That It Made No Difference Petitioner Was Paroled Upon His Entry To The U.S.** .........................26

    **A.** **8 C.F.R. § 212.5(e) Requires Written Notice Before A Noncitizen's Grant Of Parole May Be Revoked.**................................................27

    **B.** **Petitioner Was Not Given Written Notice Before His Parole Was Revoked And He Was Re-Arrested.** ................................................33

**CONCLUSION**.................................................................................35

**CERTIFICATE OF COMPLIANCE** .................................................37

**CERTIFICATE OF SERVICE** ........................................................38

## **TABLE OF AUTHORITIES**

### **Cases**

*Barbosa da Cunha v. Freden*, __ F.4th __, No. 25-3141, 2026 WL 1146044, (2d Cir. Apr. 28, 2026)...............................................................................................9, 19

*Bartenwerfer v. Buckley*, 598 U.S. 69 (2023)..................................................21

*Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026) ..........................9, 17

*Campos-Chaves v. Garland*, 602 U.S. 447 (2024) ...........................................21

*Castañon-Nava v. Dep't of Homeland Sec.,* __ F.4th ___, 2026 WL 1223250 (May 5, 2026) ................................................................................... 9, 19, 20, 25

*Demore v. Kim,* 538 U.S. 510 (2003) ...............................................................34

*Dep't of Homeland Sec. v. Thuraissigiam,* 591 U.S. 103 (2020)......................13

*Doe v. Warden,* No. 1:25-CV-01283-CDB (HC), 2026 WL 1068736 (E.D. Cal. Apr. 20, 2026)................................................................................... 31, 35

*E.A.P.C. v. Wofford*, No. 1:25-cv-01546-JLT-CDB, 2025 WL 3289185 (E.D. Cal. Nov. 25, 2025).........................................................................................32

*Hernandez Alvarez v. Warden*, --- F.4th ----, No. 25-14065, 2026 WL 1243395 (11th Cir. May 6, 2026) ............................................................................. 9, 18

*Herrera Avila v. Bondi,* 170 F.4th 1128 (8th Cir. 2026) ..................................9, 17

*Hing Sum v. Holder*, 602 F.3d 1092 (9th Cir. 2010).......................................13, 25

*Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) ...........................................11, 28

*Learning Resources, Inc. v. Trump*, 607 U.S. ___, 146 S. Ct. 628 (2026)..............24

*Loper Bright Enters. v. Raimondo,* 603 U.S. 369 (2024)......................................8

*Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128 (W.D.N.Y. 2025) .................35

*Matter of Yajure Hurtado*, 29 I&N Dec. 216 (B.I.A. 2025).............................16, 17

*Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229 (2010)..............24

*Ortega v. Noem*, No. 1:25-CV-01663-DJC-CKD, 2025 WL 3511914 (E.D. Cal. Dec. 8, 2025) ................................................................................................32

*Pinchi v. Noem,* 792 F. Supp. 3d 1025 (N.D. Cal. 2025) .................................31, 33

*Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC, 2025 WL 2637503 (N.D. Cal. Sept. 12, 2025)................................................................................................32

*Saravia v. Sessions*, 280 F. Supp. 3d 1168 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018)............................32

*United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954)......................35

*United States v. Gonzales*, 520 U.S. 1 (1997)..................................................25

*United States v. Youssef*, 547 F.3d 1090 (9th Cir. 2008)........................................8

*Vilchez v. Holde*r, 682 F.3d 1195 (9th Cir. 2012)................................................9

*Y-Z-H-L- v. Bostock*, 792 F. Supp. 3d 1123 (D. Or. 2025)........................ 30, 31, 33

*Zadvydas v. Davis*, 533 U.S. 678 (2001) ........................................................11, 34

**Statutes**

8 C.F.R. § 1003.3(c)............................................................................25

8 C.F.R. § 1003.3(d) ...........................................................................27

8 C.F.R. § 1208.16(c)..........................................................................23

8 U.S.C. § 1158...................................................................................23

8 C.F.R. § 1225 ..............................................................................*ibid*

8 C.F.R. § 1226 ..............................................................................*ibid*

8 U.S.C. § 1229a(b)(4)............................................................ 17, 22, 31

8 U.S.C. § 1229b(b)(1).........................................................................23

8 U.S.C. § 1229b(b)(2).........................................................................24

8 U.S.C. § 1252(a)(1).............................................................................1

42 U.S.C. § 1983...................................................................................1

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner believes that oral argument will assist this Court in its consideration of the legal issues presented by this Petition for Review. Resolution of the issues raised in this Petition for Review may have significant and far-reaching effects for Petitioner and other noncitizens whose habeas corpus petitions are summarily denied. *See,* 9th Cir. R. 34-0(a).

## JURISDICTIONAL STATEMENT

This is an appeal from a final judgment entered March 17, 2026 by the Honorable Michael T. Liburdi in the United States District Court for the District of Arizona denying Edwar Anderson Gomez Blanco's (Petitioner's) petition for writ of habeas corpus (Habeas Petition). This Court has jurisdiction pursuant to 28 U.S.C. § 2253(a).

## ISSUES PRESENTED

1. Whether the lower court erred in summarily dismissing Petitioner's Habeas Petition, holding that he is "subject to mandatory detention under 8 U.S.C. § 1225(b)(2)." Excerpts of Record ("EOR") at 4, lines 17-18.

2. Whether the lower court erred in holding "[t]hat Petitioner was paroled upon his entry to the United States does not change the Court's analysis. EOR at 5, n 1.

## STATEMENT OF THE CASE

Petitioner Edwar Anderson Gomez Blanco was born on October 4, 1988, in Lima, Peru. EOR at 10, ¶ 15. He entered the United States near Otay Mesa, California, on or about June 21, 2022, without being inspected by an immigration officer. EOR at 10, ¶ 16; EOR at 84-88 (Notice to Appear).

Upon apprehension by Border Patrol on July 11, 2022, Petitioner admitted to illegal entry and, due to detention capacity issues in the San Diego sector, he was issued an I-94 and paroled into the United States under an Alternative to Detention (ATD) program. EOR at 11, ¶ 17; EOR at 92-95 (Form I-213, Record of Deportable/Inadmissible Alien).

Petitioner was issued a Notice to Appear on August 30, 2022, before an Immigration Judge in Arlington, Virginia. EOR at 11, ¶ 18; EOR at 84-88 (Notice to Appear). The Notice to Appear charges Petitioner with being subject to removal under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act, placing him in full removal proceedings under section 240 of the Act. *Id.* It further identified him as an "alien present in the United States" even though "arriving alien" was an alternate option. EOR at 11, ¶ 19; EOR at 84-88 (Notice to Appear).

On December 16, 2022, Petitioner filed a Form I-589 seeking asylum, withholding of removal, and protection under the Convention Against Torture

(CAT). EOR at 11, ¶ 20; EOR at 96-97 (Cover: Form I-589, Application for Asylum and Withholding of Removal and Protection Under CAT).

On December 10, 2025, Petitioner was re-arrested by ICE officers while Petitioner appeared at an Intensive Supervision Appearance Program office in Baltimore, Maryland. EOR at 11, ¶ 21; EOR at 92-95 (Form I-213, Record of Deportable/Inadmissible Alien). No written notice for the revocation of his parole was given as required by 8 C.F.R. § 212.5(e)(2), nor was Petitioner given a new Notice to Appear. Following his re-arrest, Petitioner was transferred to the Florence Staging Facility in Arizona. EOR at 89-91 (ICE Online Detainee Locator Printout).

On January 20, 2026, the Immigration Court granted DHS's motion to pretermit Petitioner's asylum application, effectively denying Petitioner's application for asylum and withholding of removal. EOR at 12, ¶ 23; EOR at 98-100 (Order of the Immigration Judge). Petitioner timely filed a Notice of Appeal to the Board of Immigration Appeals (BIA) on February 19, 2026, which appeal remains pending before the BIA. EOR at 12, ¶ 24; EOR at 101-104 (Filing Receipt for Appeal).

Petitioner has no criminal history. EOR at 12, ¶ 26; EOR at 105-107 (Declaration of Counsel in Support of Petition for Writ of Habeas Corpus). Petitioner remains detained at the Florence Correctional Center. EOR at 12, ¶ 25; EOR at 89-91 (ICE Online Detainee Locator Printout). Petitioner has not been

afforded an individualized bond hearing at which he could demonstrate that he is neither a flight risk nor a danger to the community. EOR at 12, ¶ 27.

Petitioner filed his Habeas Petition with the United States District Court for the District of Arizona on March 15, 2026, alleging violations of his Substantive and Procedural Due Process Rights. EOR at 6-20. On March 17, 2026, United States District Court Judge Michael T. Liburdi entered an Order summarily denied Petitioner's Habeas Petition, holding that he is "subject to mandatory detention under 8 U.S.C. § 1225(b)(2)." EOR at 4, lines 17-18. That Order further held "[t]hat Petitioner was paroled upon his entry to the United States does not change the Court's analysis. EOR at 5, n 1.

Mr. Blanco timely filed this Appeal from the Judgment entered on the denial of his Habeas Petition. EOR at 108.

## STANDARD OF REVIEW

The Court reviews questions regarding statutory interpretation *de novo*. *See, e.g.*, *United States v. Youssef*, 547 F.3d 1090, 1093 (9th Cir. 2008). "When the meaning of a statute [is] at issue, the judicial role [is] to 'interpret the act of Congress, in order to ascertain the rights of the parties.'" *Loper Bright Enters. v. Raimondo,* 603 U.S. 369, 385 (2024) (quoting *Decatur v. Paulding,* 39 U.S. (14 Pet.) 497, 515 (1840)).

This court reviews "legal and constitutional questions, including alleged due process violations *de novo*." *Vilchez v. Holde*r, 682 F.3d 1195, 1198 (9th Cir. 2012).

## SUMMARY OF THE ARGUMENT

Five Circuit Courts of Appeal have issued decisions on whether 8 U.S.C. § 1225(b)(2)(A) mandates detention of so-called "interior" noncitizens while their removal cases proceed. The Second, Seventh, and Eleventh Circuits have held that 8 U.S.C. § 1226(a) permits bond hearings in these circumstances. *See, Hernandez Alvarez v. Warden*, --- F.4th ----, No. 25-14065, 2026 WL 1243395 (11th Cir. May 6, 2026); *Barbosa da Cunha v. Freden*, __ F.4th __, No. 25-3141, 2026 WL 1146044, (2d Cir. Apr. 28, 2026); *Castañon-Nava v. Dep't of Homeland Sec.,* --- F.4th --- 2026 WL 1223250 (7th Cir. May 5, 2026).

The Fifth and Eighth Circuit Courts of Appeal have held that § 1225(b)(2)(A) mandates detention for every noncitizen awaiting a determination of their removal case. *See, Herrera Avila v. Bondi,* 170 F.4th 1128 (8th Cir. 2026); *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026).

The plain text of 8 U.S.C. § 1225(b)(2)(A), coupled with historical usage and legislative history makes clear that it does not apply to Petitioner. § 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that **an alien seeking admission** is not

clearly and beyond a doubt entitled to be admitted, the alien **shall be detained** for a proceeding under section 1229a of this title." Emphasis added.

Petitioner is not subject to mandatory detention under § 1225(b)(2)(A) because, although he may be an "applicant for admission" he was clearly not "seeking admission" on December 10, 2025, because he had already paroled into the United States under an Alternative to Detention (ATD) program on July 11, 2022. EOR at 11, ¶ 17; EOR at 92-95 (Form I-213, Record of Deportable/Inadmissible Alien).

Further, the fact that Petitioner was paroled by Respondents into the interior in 2022 is relevant and should have been considered by the lower court. EOR at 5, n 1. A noncitizen previously detained and paroled into the United States may only be re-arrested when there has been a "material" change in circumstances since the individual's initial release. DHS already has procedures in place for notice of revocation of parole. 8 C.F.R. § 236.1(c)(9) requires a material change in circumstance, written notice and an opportunity to be heard before a noncitizen's grant of parole may be revoked.

**DETENTION STATUS**

Petitioner remains in the custody of U.S. Immigration and Customs Enforcement (ICE).

**ARGUMENT**

## I. The District Court Erred In Holding That Petitioner Is Subject To Mandatory Detention Under 8 U.S.C. § 1225(b)(2).

This case, like many others which have arisen in the last year, concerns 8 U.S.C. § 1226(a) and § 1225(b)(2)(A), two separate provisions of the INA that govern the detention of noncitizens in removal proceedings. Generally, § 1226 applies to those "already in the country," *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018), while § 1225 governs noncitizens "at the Nation's borders and ports of entry." *Id.* at 287. "The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

Here, Petitioner's Habeas Petition specifically requested a bond hearing pursuant to § 1226(a) as an alternative to immediate release. EOR 18, lines 24-25. The lower court held that "mandatory detention under 8 U.S.C. § 1225(b)(2)(A) applies. Petitioner is therefore not entitled under the Immigration and Nationality Act to a bond hearing under 8 U.S.C. § 1226(a) or the Due Process Clause." EOR 5, lines 11-2.

10

### A.  8 U.S.C. § 1226(a) Covers Discretionary Detention Of Noncitizens Already Present In The United States.

8 U.S.C. § 1226(a), in relevant part, provides:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on—
> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> (B) conditional parole . . . .

Thus, noncitizens detained under § 1226(a) are entitled to bond hearings before an immigration judge (IJ). *See* 8 C.F.R. §§ 1003.19(a), 1236.1(d).

Before § 1226(a) was enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. 104-208, 110 Stat. 3009 (1996), the statutory authority for bond hearings was found at 8 U.S.C. § 1252(a).  That statute authorized the detention and release of all noncitizens in deportation proceedings, regardless of their manner of entry. *See* 8 U.S.C. § 1252(a).  By contrast, noncitizens who arrived at ports of entry and had never entered the United States were placed in exclusion proceedings and were subject to mandatory detention.  8 U.S.C. § 1225(b).

11

IIRIRA maintained this basic framework for detention. Indeed, Congress made clear that § 1226(a) merely "restates the current provisions in [§ 1252(a)] regarding the authority of the Attorney General to arrest, detain, and release on bond an alien who is not lawfully in the United States." H.R. Rep. No. 104-828, at 210 (1996) (Conf. Rep.); *see also* H.R. Rep. No. 104-469, pt. 1, at 229 (1996) (same).

While maintaining the detention framework, IIRIRA made significant changes to removal proceedings. It combined deportation and exclusion proceedings into "a general 'removal' proceeding," covering persons charged with either being inadmissible or deportable. *Hing Sum v. Holder*, 602 F.3d 1092, 1100 (9th Cir. 2010). It also created an expedited removal process for certain noncitizens who are either apprehended at the border or are apprehended close by. *See Dep't of Homeland Sec. v. Thuraissigiam,* 591 U.S. 103, 106–08 (2020).

The Department of Justice (DOJ) promulgated regulations after IIRIRA confirming that aliens placed in removal proceedings are eligible for bond hearings under § 1226(a), 8 C.F.R. § 1003.19(a), unless subject to mandatory detention under § 1226(c) for certain enumerated criminal grounds or for those deemed "[a]rriving aliens," 8 C.F.R. § 1003.19(h)(2)(B), (E).

At the time, the Immigration and Naturalization Service (INS) and EOIR

explained that "[d]espite being applicants for admission," noncitizens "present without having been admitted or paroled . . . will be eligible for bond and bond redetermination," and that "inadmissible aliens, except for arriving aliens," may seek bond hearings before an IJ. Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).

As the Eleventh Circuit concluded, § 1226(a) "preserved the longstanding border-interior distinction for purposes of detention, a position it has taken for over a hundred years." *Hernandez Alvarez,* 2026 WL 1243395, at *21.

**B. Section 1225(b)(2)(A) Provides For Detention Of Noncitizens Apprehended At The Nation's Borders And Ports Of Entry.**

Congress also enacted § 1225(b)(2)(A) in IIRIRA, which provides:

> **(2) Inspection of other aliens**
> **(A) In general**
> Subject to subparagraphs (B) and (C), in the case of an **alien who is an applicant for admission**, if the examining immigration officer determines that **an alien seeking admission** is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (emphasis added).

Noncitizens subject to § 1225(b)(2)(A) consist of individuals seeking

lawful entry who, ***upon inspection,*** are determined not to be "clearly and beyond a doubt entitled to be admitted" at the time of their arrival. Accordingly, § 1225(b)(2) reflects Congress's longstanding authorization to subject such arriving noncitizens to mandatory detention pending the ultimate determination of admissibility. *See id.* § 1225(b).

Thus, § 1225(b) did change the pre-IIRIRA framework by implementing an expedited removal scheme that could be expanded to recent entrants beyond those apprehended at the border. Expedited removal authorizes a summary removal process (generally an immediate expulsion without any hearing before an IJ) for certain "arriving" noncitizens who are determined to be inadmissible based on fraud or lack of proper entry documents. *See id.* § 1225(b)(1)(A)(i). Individuals are not entitled to bond hearings while placed in expedited removal, as it is intended to be a swift proceeding completed within days, if not hours. *See* H.R. Rep. No. 104-828, at 209. Instead, they are covered by the expedited removal statute's detention provisions at § 1225(b)(1)(B)(ii), (iii)(IV), and thus are not detained pursuant to § 1225(b)(2)(A). *See* 8 U.S.C. § 1225(b)(2)(B)(ii).

## C. The Government's New Mandatory Detention Policy.

On July 8, 2025, ICE issued a memorandum announcing that: "Effective

14

immediately, it is the position of DHS" that anyone who entered the country without inspection, i.e., anyone "who has not been admitted," is "subject to detention under [8 U.S.C. § 1225(b)(2)(A)] and may not be released from ICE custody except by [8 U.S.C. § 1182(d)(5)] parole." EOR 23-24. Such noncitizens are "also ineligible for a custody redetermination hearing . . . before an [IJ] and may not be released for the duration of their removal proceedings absent a parole by DHS." *Id.* The memo further asserted that "[t]he only aliens eligible for a custody determination and release on recognizance, bond, or other conditions under [8 U.S.C. § 1226(a)] during removal proceedings are aliens admitted to the United States and chargeable with deportability under [8 U.S.C. § 1227]." *Id.*

In September 2025, the BIA expanded this policy by issuing *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), which held that noncitizens who have not been admitted or paroled are "subject to mandatory detention under section [1225(b)(2)(A)]." *Id.* at 228–29. EOR 4-39. The BIA adopted the same reasoning expressed in the ICE memo, holding that § 1225 governs the "detention[] . . . of aliens who have not been admitted." *Id.* at 218–19 (citation modified).

**D. The Current Split In The Circuits.**

There currently exists a 3-2 split in the Circuit Courts of Appeal on whether 8

15

U.S.C. § 1225(b)(2)(A) mandates detention for all non-citizens, even those who have been living in the United States for years, while their removal cases proceed. The Second, Seventh, and Eleventh Circuits have held that 8 U.S.C. § 1226(a) permits bond hearings, while the Fifth and Eighth Circuit Courts of Appeal have held that § 1225(b)(2)(A) mandates detention.

### *1. The Fifth and Eighth Circuits.*

The Eighth Circuit held in *Herrera Avila v. Bondi,* 170 F.4th 1128 (8th Cir. 2026), that the plain language of § 1225(a)(1) defines any noncitizen present in the United States who has not been admitted as an "applicant for admission." Consequently, such individuals are subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) while their removal proceedings are pending, rather than being eligible for discretionary bond hearings under 8 U.S.C. § 1226(a). While acknowledging the mandatory nature of the statute, the court noted that its holding did not foreclose "as-applied" Due Process challenges in cases of extraordinary or indefinite prolonged detention.

In *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026), the Fifth Circuit adopted the position advocated in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (B.I.A. 2025), that all noncitizens present in the United States without admission, no matter how long they have resided here, remain "applicants for admission" under § 1225(a) and are not entitled to bond hearings because they are

subject to mandatory detention under § 1225(b)(2)(A).

*Buenrostro-Mendez* never reached any due process issues, confining its analysis and holding to statutory interpretation. Furthermore, the case was remanded to the district court "for further proceedings consistent with this opinion." *Buenrostro-Mendez v. Bondi*, 166 F.4th at 498. Doubtless those further proceedings will entail consideration of Buenrostro-Mendez's due process claim, which the district court declined to reach in the first instance. *See, Buenrostro-Mendez*, 2025 WL 2886346, at *3 n.4.

### 2. The Second, Seventh, and Eleventh Circuits.

In *Hernandez Alvarez v. Warden*, --- F.4th ----, No. 25-14065, 2026 WL 1243395 (11th Cir. May 6, 2026), the Eleventh Circuit issued a 2–1 decision, with the majority holding that noncitizens "unlawfully in the interior" (those who entered without inspection and remained for a period of time) are governed by the discretionary detention provisions of 8 U.S.C. § 1226(a), rather than the mandatory detention provisions of § 1225(b). They reasoned that although § 1225(a)(1) deems anyone present without admission to be an "applicant for admission," § 1225(b)(2)(A) requires that they also be "seeking admission," a term which is not defined. *Hernandez Alvarez,* 2026 WL 1243395, at *16.

Since Congress left "seeking admission" with its ordinary meaning, the majority notes that "seeking" is a present participle indicating active, ongoing

pursuit, while "admission" is defined by 8 U.S.C. § 1101(a)(13)(A) as "lawful entry after inspection and authorization by an immigration officer." Put together, "seeking admission" means actively pursuing lawful entry through inspection. *Hernandez Alvarez,* 2026 WL 1243395 at \*17. The Court concluded that "neither Petitioner was pursuing any object, let alone 'lawful entry,' when he was detained following a traffic stop." 2026 WL 1243395, at \*21.[1]

In *Barbosa da Cunha v. Freden*, __ F.4th ___, 2026 WL 1146044, (2d Cir. Apr. 28, 2026), the Second Circuit held in a 3-0 opinion that § 1225(b)(2)(A) does not apply to noncitizens who are present in the United States after entering without inspection and who were not apprehended at or near the border at the time of entry. A noncitizen "who has lived in the interior for decades is not 'seeking admission' in any common sense of the word. *Barbosa da Cunha*, 2026 WL 1146044 at \*4. Thus, their detention is governed by § 1226(a), which permits bond. *Id.*, at \*7. The Second Circuit also noted that:

> Our holding is consistent with the decisions of over 370 district judges across the Nation who (as of mid-February 2026) have also rejected the government's position. In other words, over ninety percent of district court judges have sided with Petitioner.

---

[1] The 54-page dissenting opinion of Judge Barbara Lagoa contains a thoughtful analysis of the "major questions doctrine," which demands clear congressional authorization before agencies exercise vast powers.

18

*Barbosa da Cunha,* 2026 WL 1146044 at *6.

In *Castañon-Nava v. Dep't of Homeland Sec.,* __ F.4th ___, 2026 WL 1223250 (May 5, 2026), the Seventh Circuit also analyzed the phrase "alien seeking admission" and determined it "denotes 'an affirmative, present-oriented' action." *Castañon-Nava,* 2026 WL 1223250 at *12. The Court further noted that the Government's proposed interpretation "that all applicants for admission are necessarily seeking admission—would render certain words in § 1225(b)(2)(A) surplusage." *Id.* at *13. Indeed, Congress could simply have left off the term "seeking admission" in § 1225(b)(2)(A) altogether and it would have read the same under the Government's proposed interpretation. *Id.* at *13.

The Court also examined the statutory context, *Castañon-Nava,* 2026 WL 1223250 at *14-15, as well as the statutory history and background, *Id.* at *16-18, before concluding that:

> In the words of the Supreme Court, "it is ... telling that in" § 1225(b)(2)(A)'s thirty years of existence "no President has invoked the statute to impose" mandatory detention on the millions of noncitizens living in the United States who have entered unlawfully. [*Learning Res., Inc. v. Trump*, 146 S. Ct. 628, 640 (2026)]. "[T]he fact that no President has ever found such power" in the IIRIRA "is strong evidence that it does not exist." *Id.* at 643.24.

*Castañon-Nava,* 2026 WL 1223250 at *21.

### E. The Plain Text Of § 1225(b)(2)(A) Makes Clear That It Does Not Apply To Petitioner.

As put by Justice Oliver Wendell Holmes: "We do not inquire what the legislature meant; we ask only what the statute means." Oliver Wendell Holmes, *The Theory of Legal Interpretation*, 12 Harv. L. Rev. 417, 419 (1899), cited, among other places, at Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation Of Legal Texts* 29 (2012). Literal "textualism," as set forth in Justice Holmes' quote, avoids extrinsic sources as much as possible in seeking the meaning of statutory language.

Thus, the well-known precept that "[a]s always, we start with the text." *Campos-Chaves v. Garland*, 602 U.S. 447, 457 (2024), *citing Bartenwerfer v. Buckley*, 598 U.S. 69, 74 (2023). In relevant part, 8 U.S.C. § 1225(b)(2)(A) provides:

> . . . in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

There are a number of defined terms contained in § 1225(b)(2)(A). An "alien"

is defined as "any person not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3). An "applicant for admission" is specifically defined as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)." 8 U.S.C. § 1225(a)(1)

"[A]dmission" or "admitted" both mean "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). However, Congress did not specifically define "seeking admission." In the absence of a statutory definition, "we construe a statutory term in accordance with its ordinary or natural meaning." *FDIC v. Meyer*, 510 U.S. 471, 476 (1994).

DHS has argued, successfully, that all "applicants for admission" are "seeking admission," since one who applies for something is necessarily seeking it. Both the Fifth and Second Circuits have found this reasoning persuasive, concluding that "the ordinary meanings of the phrases 'applicant for admission' and 'seeking admission' are the same." *Buenrostro-Mendez*, 166 F.4th at 502; *Avila,* 170 F.4th at 1134.[2]

---

[2] Such construction also violates the rule that "[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant...." *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (quoted in *Corley v.*

However, the Eleventh Circuit found this analysis to be overly simplistic, stating that: "If our task ended with the ordinary meaning of the two phrases, we would agree that they are synonymous. However . . . we are required to look beyond ordinary meaning, because Congress has chosen to define the phrase "applicant for admission" in a technical and specific way." *Hernandez Alvarez*, 2026 WL 1243395 at *6.  The Court so found because §1225(a)(1) **deems** an alien to be an applicant merely by virtue of their being present in the United States without any other action on their part.  Thus, the term "applicant for admission" is a legal fiction and not one being used in its ordinary meaning.  *Id.*

Accordingly, the Court moved on to the second phrase, "an alien seeking admission."  Noting that "Congress has not specifically defined 'seeking'", the Court looked to a number of definitions in ordinary dictionaries to conclude that it means "an affirmative step of search or pursuit."  *Hernandez Alvarez,* 2026 WL 1243395 at *7.  Because "admission" means "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer," § 1101(a)(13)(A), and seeking is "some active and temporally ongoing step or process on the part of the alien," it concluded that "the complete phrase 'an alien seeking admission' refers to an alien who is pursuing 'lawful entry . . . into the United States

---

*United States,* 556 U.S. 303, 314 (2009).  *Accord, Castañon-Nava v U.S. Department of Homeland Security,* 161 F.4th 1048, 1061 (7th Cir. 2025).

after inspection and authorization by an immigration officer." *Hernandez-Alvarez,* 2026 WL 1243395, at \*5. This is distinct from the mere status of being an "applicant for admission" under § 1225(a)(1). *Id.*

Here, Petitioner entered the United States without being inspected by an immigration officer. EOR at 10, ¶ 16; EOR at 84-88 (Notice to Appear). Petitioner was apprehended by Border Patrol on July 11, 2022, when he admitted to illegal entry and, due to detention capacity issues in the San Diego sector, he was issued an I-94 and paroled into the United States under an Alternative to Detention (ATD) program. EOR at 11, ¶ 17; EOR at 92-95 (Form I-213, Record of Deportable/Inadmissible Alien). The issuance of a Notice to Appear placed him into removal proceedings. EOR at 11, ¶ 18; EOR at 84-88 (Notice to Appear).

He filed a Form I-589 seeking asylum, withholding of removal, and protection under the Convention Against Torture (CAT) on December 16, 2022. EOR at 11, ¶ 20; EOR at 96-97 (Cover: Form I-589, Application for Asylum and Withholding of Removal and Protection Under CAT). The Immigration Court granted DHS's motion to pretermit that application and an appeal to the BIA remains pending. EOR at 12, ¶ 24; EOR at 101-104 (Filing Receipt for Appeal).

Thus, Petitioner is not "seeking admission," but rather is an asylum seeker who is ***asserting a defense*** to being removed. Once Petitioner was paroled and released into the interior, the government moved beyond the "inspection" phase. The

filing of an asylum application is a request for relief from removal; it is not the source of a person's statutory classification.

### F. The Legislative History Of 8 U.S.C. § 1225(b)(2)(A) Makes Clear That It Does Not Apply To Petitioner.

The Supreme Court has made clear that, where "the statutory text is clear and unambiguous, 'legislative history has no place' in our analysis. *Learning Resources, Inc. v. Trump*, 607 U.S. ___, 146 S. Ct. 628, 645 (2026). *Accord, Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 236, n. 3 (2010); *United States v. Gonzales*, 520 U.S. 1, 6 (1997). Here, however, two Circuit Courts of Appeal have held that that "the ordinary meanings of the phrases 'applicant for admission' and 'seeking admission' are the same." *Buenrostro-Mendez*, 166 F.4th at 502; *Avila,* 170 F.4th at 1134. Therefore, a brief analysis of the legislative history is appropriate.

"In 1996, IIRIRA replaced the term 'entry' with 'admission'... and eliminated the distinction between 'deportation' and 'exclusion' proceedings, replacing them with a single 'removal' proceeding." *Hing Sum,* 602 F.3d at 1100. As the Seventh Circuit explained in *Castañon-Nava*:

> . . . the legislative history could not be clearer. The conference report unequivocally states that "section 235(b) [codified at § 1225(b)] establishes new procedures for the inspection and in some cases removal of aliens *arriving in the United States.*" H.R. Rep. No. 104-828, at 209 (1996) (emphasis added). So too does the report of the House Judiciary Committee. H.R. Rep. No. 104-469, pt. 1,

24

> at 228 (1996) (stating, "New section 235(b) establishes new procedures for the inspection and in some cases removal of aliens arriving in the United States."). As for noncitizens unlawfully present in the country, the committee report confirmed that "[s]ection 236(a) [codified at § 1226(a)] *restates* the current provisions ... regarding the authority of the Attorney General to arrest, detain, and release on bond an alien who is *not lawfully in the United States*." *Id.* at 229 (emphases added).

*Castañon-Nava*, 2026 WL 1223250, at *18 (emphases in original).

Indeed, federal regulations were enacted which explained that "[d]espite being applicants for admission, aliens who are present without having been admitted or paroled . . . will be eligible for bond and bond re-determination." *See,* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10,312, 10,323 (Mar. 6, 1997).  Thus, the government has long advised that "inadmissible aliens, except for arriving aliens, have available to them bond re-determination hearings before an immigration judge." *Id.*; 8 C.F.R. §§ 1003.19(a), 1236.1(d)(1).

### G.  Historical Usage Of 8 U.S.C. § 1225(b)(2)(A) Makes Clear That It Does Not Apply To Petitioner.

The fact that fact that "five presidential administrations over three decades have read IIRIRA to distinguish between arriving and present aliens is 'powerful evidence'' that Congress did not intend § 1225(b)(2)(A) to mandate the incarceration

25

of all noncitizens in the interior." *Hernandez Alvarez*, 2026 WL 1243395, at *16. If the government is right that IIRIRA "ordered the largest mass detention in American history, the world would have likely noticed sooner. Small wonder that some 90 percent of the hundreds of district judges across the land who have heard [the government's] argument have rejected it." *Barbosa da Cunha,* 2026 WL 1146044, at *4.

As the Eleventh Circuit points out, Congress was careful to allocate funding for an additional five hundred beds when expanding detention for criminal aliens under § 1226(c) in IIRIRA §§ 303(b)(2), 386(a), but "[n]o similar considerations were given for the sweeping detention provisions the Government says IIRIRA baked into § 1225." *Hernandez Alvarez*, 2026 WL 1243395, at *20. If Congress "had intended § 1225(b)(2)(A) to sweep in the millions of noncitizens who are unlawfully in the United States after a century of not doing so, one would 'expect more than simple statutory silence' for such 'a major departure.'" *Castañon-Nava*, 2026 WL 1223250, at *17, citing to *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 465 (2017). After all, Congress "does not ... hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001).

**II.     The District Court Erred In Holding That It Made No Difference That Petitioner Was Paroled Upon His Entry To The United States.**

## A. 8 C.F.R. § 212.5(e) Requires Written Notice Before A Noncitizen's Grant Of Parole May Be Revoked.

Immigration removal proceedings are initiated under 8 U.S.C. § 1229(a) when a Notice to Appear before the Immigration Court is issued. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011). Noncitizens who do not have a visa or other entry document, like Petitioner, are deemed "inadmissible" under 8 U.S.C. § 1182(a)(7). *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1132 (D. Or. 2025).

The Supreme Court has noted that "applicants for admission may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit.' § 1182(d)(5)(A); *see also* 8 C.F.R §§ 212.5(b), 235.3 (2017)." *Jennings*, 583 U.S. at 290.

8 U.S.C. § 1182(d)(5)(A), titled "Temporary admission of nonimmigrant," provides:

> The Secretary of Homeland Security may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall

27

continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

Revocation of parole under this section is governed by 8 C.F.R. § 212.5(e)(2), which provides, in relevant part:

> (e) Termination of parole—
> * * *
> (2)(i) On notice. In cases not covered by paragraph (e)(1) [expiration of time] of this section, upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated **upon written notice to the alien** and he or she shall be restored to the status that he or she had at the time of parole. When a charging document is served on the alien, the charging document will constitute written notice of termination of parole, unless otherwise specified. Any further inspection or hearing shall be conducted under section 235 or 240 of the Act and this chapter, or any order of exclusion, deportation, or removal previously entered shall be executed. If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the alien shall again be released on parole unless in the opinion of the official listed in paragraph (a) of this section the public interest requires that the alien be continued in custody.

8 C.F.R. § 212.5(e)(2), emphasis provided.

*Jennings* also explained that 8 U.S.C. "Section 1226 generally governs the process of arresting and detaining aliens [inside the United States] pending their removal." *Jennings*, 583 U.S. at 290. It then stated that: "Section 1226(a) sets out

28

the default rule: The Attorney General may issue a warrant for the arrest and detention of an alien 'pending a decision on whether the alien is to be removed from the United States.' § 1226(a)." *Id.*

Other than certain aliens involved in criminal offenses and terrorist activities listed in § 1226(c)(1), § 1226(a) provides that the Attorney General:

> (1) may continue to detain the arrested alien; and
> (2) may release the alien on - -
>     (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>     (B) conditional parole ....

*Jennings*, 583 U.S. 281, 299 (2018) ("Except as provided in subsection (c) of this section, the Attorney General 'may release' an alien detained under § 1226(a) 'on bond ... or conditional parole.'").

In *Y-Z-H-L- v. Bostock*, 792 F. Supp. 3d 1123 (D. Or. 2025), the petitioner was a noncitizen who had been granted humanitarian parole but was subsequently re-arrested by ICE without a warrant, written explanation or opportunity to contest the revocation. *Id.* at 1128. The petitioner filed a petition for a writ of habeas corpus, asserting that the revocation of his parole violated the Administrative Procedure Act (APA) and the Due Process Clause because ICE failed to follow its own regulations

29

for revocation of parole under 8 C.F.R. § 212.5(e). *Id.* at 1130. Specifically, the Court noted:

> As explained by U.S. District Judge James E. Boasberg,

>> In 2009, DHS issued the "Parole Directive," which further fleshes out when, precisely, it is in the "public benefit" for an asylum-seeker to be paroled. *See* ICE Directive 11002.1, Parole of Arriving Aliens Found to Have a Credible Fear of Persecution or Torture (Dec. 8, 2009). According to the Directive, if an asylum-seeker establishes her identity and that she presents neither a flight risk nor a danger to the public, her detention "is not in the public interest," and thus ICE "should, absent additional factors ... parole the alien." *Id.*, ¶ 6.2 (emphases added).

> *Mons v. McAleenan*, 2019 WL 4225322, at *2 (D.D.C. Sept. 5, 2019).
> Respondents offer no evidence that any authorized official found Petitioner to be a flight risk or a danger to the public. Nor is there evidence that such an official found that humanitarian reasons do not warrant Petitioner's presence in the United States. Thus, Respondents fail to show that they complied with either clause of 8 C.F.R. § 212.5(e)(2)(i).

*Y-Z-L-H v. Bostock,* 792 F. Supp. 3d at 1145–46.

The Court granted the petition, holding that while the agency had the power to revoke parole, it was required to provide the mandatory "written notice" required by 8 C.F.R. § 212.5(e) and failure to do so rendered the revocation "not in

accordance with law". *Id.* at 1141-42. Consequently, the Court ordered the petitioner's immediate release, concluding that the procedural failure necessitated habeas relief regardless of the underlying merits of the revocation. *Id.* at 1145.

Other District Courts in the Ninth Circuit have reached the same result. *See, Doe v. Warden,* No. 1:25-CV-01283-CDB (HC), 2026 WL 1068736, at *7 (E.D. Cal. Apr. 20, 2026) ("The Court finds that Respondent's continued detention of Petitioner without an individualized determination of his current danger or flight risk violates the Administrative Procedure Act and necessitates habeas relief."); *Pinchi v. Noem,* 792 F. Supp. 3d 1025, 1038 (N.D. Cal. 2025) ("Because 8 C.F.R. § 212.5(e)(2)(i) mandates that an officer 'shall' provide written notice of termination of parole upon redetention, the government's failure to issue such notice constitutes a procedural error that renders the continued detention of a petitioner 'not in accordance with law' under the Administrative Procedure Act."); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1196–97 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018) (discussing parole revocations and government's practice to "generally only re-arrest . . . after a material change in circumstances"); *Ortega v. Noem*, No. 1:25-CV-01663-DJC-CKD, 2025 WL 3511914, at *5 (E.D. Cal. Dec. 8, 2025) ("The summary revocation of parole without the notice required by 8 C.F.R. § 212.5(e) constitutes a violation of the Administrative Procedure Act because an agency must follow its own regulations

31

when depriving an individual of liberty."); *E.A.P.C. v. Wofford*, No. 1:25-cv-01546-JLT-CDB, 2025 WL 3289185, at *6 (E.D. Cal. Nov. 25, 2025) ("[F]or Petitioner's parole revocation to be constitutionally adequate, the government must show that there has been changed circumstances warranting his re-arrest."); *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC, 2025 WL 2637503, at *4 (N.D. Cal. Sept. 12, 2025) ("Although the government maintains broad statutory authority to revoke parole, such discretion does not insulate the agency from the procedural mandate of 8 C.F.R. § 212.5(e)(2)(i), which requires individualized written notice of the termination grounds prior to redetention.").

Thus, once a noncitizen has been granted parole, the government cannot summarily re-arrest and re-detain them without complying with the procedural safeguards mandated by its own regulations. Under 8 C.F.R. § 212.5(e)(2), the revocation of parole requires that the individual be served with a "written notice" of termination. *See Y-Z-H-L v. Bostock*, 792 F. Supp. 3d at 1141-42. Because an agency is legally bound to follow its own established procedures when depriving an individual of their liberty, a failure to provide this notice renders the subsequent re-detention "not in accordance with law" and subject to vacatur. *See also Pinchi v. Noem,* 792 F. Supp. 3d at 1038 (failure to issue written notice before revocation of parole constitutes a procedural error that renders the continued detention of a petitioner 'not in accordance with law' under the Administrative Procedure Act.).

32

## B. Petitioner Was Not Given Written Notice Before His Parole Was Revoked And He Was Re-Arrested.

Petitioner was paroled into the United States under an Alternative to Detention (ATD) program. EOR at 11, ¶ 17; EOR at 92-95 (Form I-213, Record of Deportable/ Inadmissible Alien). On December 16, 2022, Petitioner filed a Form I-589 seeking asylum, withholding of removal, and protection under the Convention Against Torture (CAT). EOR at 11, ¶ 20; EOR at 96-97 (Cover: Form I-589, Application for Asylum and Withholding of Removal and Protection Under CAT). An appeal of the order granting DHS's motion to pretermit that asylum application remains on appeal to the BIA. EOR at 12, ¶ 24; EOR at 101-104 (Filing Receipt for Appeal).

On December 10, 2025, Petitioner was re-arrested by ICE officers while Petitioner appeared at an Intensive Supervision Appearance Program office in Baltimore, Maryland. EOR at 11, ¶ 21; EOR at 92-95 (Form I-213, Record of Deportable/Inadmissible Alien). No written notice for the revocation of his parole was given as required by 8 C.F.R. § 212.5(e)(2), nor was Petitioner given a new Notice to Appear.

Petitioner has no criminal history. EOR at 12, ¶ 26; EOR at 105-107 (Declaration of Counsel in Support of Petition for Writ of Habeas Corpus). Petitioner remains detained at the Florence Correctional Center. EOR at 12, ¶ 25; EOR at 89-91 (ICE Online Detainee Locator Printout). Petitioner has not been

afforded any individualized hearing at which he could demonstrate that he is neither a flight risk nor a danger to the community. EOR at 12, ¶ 27.

In the immigration context, the Supreme Court has recognized only two valid purposes for civil detention: to mitigate the risks of danger to the community and to prevent flight. *Demore v. Kim,* 538 U.S. 510, 528 (2003). Here, absent a hearing before a neutral decision-maker, no such determination can be made.

As the Court observed in *Doe v. Warden:*

> This Court agrees that both common sense and the words of the statute require parole revocation to be analyzed on a case-by-case basis and that a decision to revoke parole "must attend to the reasons an individual [noncitizen] received parole." There is no indication in the record that the government conducted any such analysis here.

*Doe v. Warden,* 2026 WL 1068736 at *7, citing to *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128 (W.D.N.Y. 2025).

Because the government failed to comply with its own regulations in re revoking Petitioner's parole, it violated his due process rights and also the *Accardi* doctrine, whereby the government and its agencies are required to follow their own binding rules and procedures. *See, United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). Where a regulation governing agency behavior has been promulgated, citizens and noncitizens alike are entitled to "that due process required

34

by the regulations." *Id.* at 268.

Further, Petitioner's re-arrest without proper notice violated his due process rights, as he developed a protected liberty interest after residing in the United States freely, after being released on parole, which was violated when he was re-arrested without notice or cause. "[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.

Due process thus requires "adequate procedural protections" to ensure that the government's asserted justification for a noncitizen's physical confinement "outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690 (internal quotation marks omitted).

In the immigration context, the Supreme Court has recognized only two valid purposes for civil detention: to mitigate the risks of danger to the community and to prevent flight. *Demore*, 538 U.S. at 528. The government may not detain a noncitizen based on any other justification.

Here, Petitioner has not been evaluated for his flight risk or risk of danger to the community since he was granted parole. Accordingly, the lower court erred when it held "[t]hat Petitioner was paroled upon his entry to the United States does not change the Court's analysis. EOR at 5, n 1.

35

## CONCLUSION

For all these reasons, this Court should **GRANT** the appeal and **REMAND** the

case to the District Court for a full hearing on the merits of the Habeas Petition.

RESPECTFULLY SUBMITTED this 18th  Day of May, 2026.


By: */s/ Nera Shefer*
Nera Shefer
8422 E Shea Blvd  #103
Scottsdale, AZ  85206
Florida Bar# 0814121
Nera@shefer.legal

# CERTIFICATE OF COMPLIANCE

This document complies with the word limitation of Fed. R. App. P. 27(d)(2)(A) because it contains approximately 8,074 words, excluding the parts exempted by Fed. R. App. P. 32(f). This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word, Times New Roman, 14-point type.

By: */s/ Nera Shefer*
Nera Shefer
8422 E Shea Blvd #103
Scottsdale, AZ 85206
Florida Bar# 0814121
Nera@shefer.legal

## CERTIFICATE OF SERVICE

I hereby certify that on May18, 2026, I caused the foregoing document to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF/ACMS system. I further certify that all participants in the case are registered CM/ECF/ACMS users and that service to Petitioner's counsel will be accomplished this same day via the appellate CM/ECF/ACMS system.

By: */s/ Nera Shefer*
Nera Shefer
8422 E Shea Blvd #103
Scottsdale, AZ 85206
Florida Bar# 0814121
Nera@shefer.legal