**No. 26-2105**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

**EDWAR ANDERSON GOMEZ BLANCO
[A# 241-676-171]
Petitioner/Appellant,**

**v.**

**MARKWAYNE MULLIN, Acting Secretary of the
United States Department of Homeland Security,** *et al.*

---

**On Appeal from the United States District Court for the District of Arizona
No. 2:26-cv-01768-MTL-CDB
Hon. Michael T. Liburdi**

---

**EXCERPTS OF RECORD
Volume 1 of 1**

---

Nera Shefer
8422 E Shea Blvd #103
Scottsdale, Az 85260
PH: 786-295-9077
Email: nera@shefer.legal
Attorney for Petitioner-Appellee

# INDEX

Judgment in a Civil Case,

    Docket No. 5 (filed 03/17/26)..........................................................................3

Order Denying Habeas Petition,

    Docket No. 4 (filed 03/17/2026)................................................... 4-5

Petition for Writ of Habeas Corpus,

    Docket No. 1 (filed 03/15/2026)................................................. 6-107

Notice of Appeal,

    Docket No. 6 (filed 04/03/26)....................................................108

District Court Docket Sheet ........................................................ 109-110

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Edwar Anderson Gomez Blanco, | **NO. CV-26-01768-PHX-MTL (CDB)** |
| Petitioner, | |
| v. | **JUDGMENT IN A CIVIL CASE** |
| Kristi Noem, et al., | |
| Respondents. | |

**Decision by Court.** This action came for consideration before the Court. The issues have been considered and a decision has been rendered.

IT IS ORDERED AND ADJUDGED that, pursuant to the Court's Order filed March 17, 2026, Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 is denied. Petitioner to take nothing and this action is hereby dismissed.

Debra D. Lucas
District Court Executive/Clerk of Court

March 17, 2026

By    s/ K. James
Deputy Clerk

ER-003

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Edwar Anderson Gomez Blanco, | No. CV-26-01768-PHX-MTL (CDB) |
| Petitioner, | **ORDER** |
| v. | |
| Kristi Noem, et al., | |
| Respondents. | |

Petitioner brings a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. 1). Petitioner alleges he is entitled to a bond hearing under 8 U.S.C. § 1226(a) but is instead being detained subject to mandatory detention under 8 U.S.C. § 1225(b)(2).

To the extent Petitioner seeks relief as a member of the bond-eligible class certified by the United States District Court for the Central District of California in *Bautista v. Santacruz*, CV-25-01873-SSS-BFM, 2025 WL 3288403, at *1 (C.D. Cal. Nov. 25, 2025), the Court rejects Petitioner's argument that relief should be granted here simply because he is or may be a member of the *Bautista* class. *See Calderon Lopez v. Lyons*, — F. Supp. 3d —, 2025 WL 3683918, at *1 (N.D. Tex. Dec. 19, 2025). If Petitioner believes he is entitled to further relief under the judgment in *Bautista*, he should seek relief in the Central District of California.

Regardless, this Court has held that, under § 1225(a), any alien who enters the United States illegally, who has not been previously lawfully admitted, is "deemed for

purposes of this chapter an applicant for admission" under 8 U.S.C. § 1225(a)(1). *See Chavez v. Noem*, — F. Supp. 3d —, 2026 WL 381618, at *1-2 (D. Ariz. Feb. 9, 2026); *see also Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026).

Further, an alien unlawfully present in the United States "has only those rights regarding admission that Congress has provided by statute." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020); *see also Lopez v. Noem*, CV-26-00345 (JHR), 2026 WL 266597, at *3 (S.D.N.Y. Feb. 2, 2026).

Based on Petitioner's allegations, the Court finds that Petitioner is present without having been admitted[1] and is therefore treated as an applicant for admission under 8 U.S.C. § 1225(a)(1). The Court further finds that an immigration officer has not determined Petitioner clearly and beyond a doubt is entitled to be admitted, and therefore mandatory detention under 8 U.S.C. § 1225(b)(2)(A) applies. Petitioner is therefore not entitled under the Immigration and Nationality Act to a bond hearing under 8 U.S.C. § 1226(a) or the Due Process Clause. The Petition will therefore be dismissed without prejudice.

**IT IS ORDERED** that the Petition for Writ of Habeas Corpus (Doc. 1) is **denied**. The Clerk of Court must enter judgment accordingly and close this case.

Dated this 17th day of March, 2026.

_____
Michael T. Liburdi
United States District Judge

---

[1] That Petitioner was paroled upon his entry to the United States does not change the Court's analysis. *Vazquez Romero v. Garland*, 999 F.3d 656, 661 (9th Cir. 2021) ("The parole of an alien into the United States does not affect the alien's immigration status. Aliens paroled elsewhere in the country for years pending removal are treated for due process purposes as if stopped at the border." (citations and quotation marks omitted)).

- 2 -

Erica Sanchez, Of Counsel
Shefer Law Firm, P.A.
800 SE 4th. Ave #803
Hallandale Beach, Florida 33009
Telephone: (480) 866-1111
erica@shefer.legal
Arizona Bar #027107
Attorney for Petitioner

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| **Edwar Anderson Gomez Blanco,**<br>          **Petitioner,**<br><br>          v.<br>**Kristi Noem**, Secretary of the United States Department of Homeland Security, in her official capacity; **Sirce Owen**, Acting Director of Executive Office for Immigration Review, in her official capacity; **Luis Rosa, Jr.,** Warden of the Florence Correctional Center, in his official capacity,<br>          **Respondents**. | Case No.<br><br>Agency No. 241-676-171<br><br>**PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. §2241** |

## INTRODUCTION

The Respondents are unlawfully detaining Petitioner Edwar Anderson Gomez Blanco, at the Florence Correctional Center, due to the Department of Homeland Security (DHS) recently changed its long-standing position with regard to the status of mandatory detention. *See*, ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission filed herewith as Exhibit 1. The Board of Immigration Appeals (BIA) issued a precedential decision on September 5, 2025, holding that all

1

noncitizens present in the United States without admission – no matter how long they have resided here – are still "applicants for admission" under 8 U.S.C. § 1225(a) and not entitled to bond hearings because they are subject to mandatory detention under § 1225(b)(2)(A).  *See, Matter of Yajure Hurtado*, 29 I&N Dec. 216 (B.I.A. 2025) filed herewith as Exhibit 2.

But this interpretation of the Immigration and Naturalization Act (INA) violates both procedural and substantive Fifth Amendment protections, ignores the plain statutory language of both § 1225 and § 1226, and is contrary to numerous recent Federal Court decisions in this District that have rejected these exact arguments.  *See e.g* 10/3/2025 Order entered in *Francisco Echevarria v. Pam Bondi, et al.,* CV-25-03252-PHX-DWL (ESW), (D. Ariz. 10/3/2025**)**, filed herewith as Exhibit 3.

Here, Respondents' reliance on *Yajure-Hurtado* to justify Petitioner's continued detention without a bond hearing is legally and factually misplaced. Petitioner has lived in the United States continuously since June 21, 2022  and is not a recent entrant or arriving alien. *See* Notice to Appear, filed herewith as Exhibit 5.

Further, when Respondents initiated removal proceedings, the Notice to Appear classified Petitioner as an "alien present in the United States," rather than as an "arriving alien," notwithstanding that option being available on the form. *Id*. This designation is consistent with the government's own treatment of Petitioner as a non-arriving noncitizen subject to detention under § 1226, not mandatory detention under § 1225.

2

In addition to BIA decisions not being binding precedent upon this Court, the Supreme Court decision last year in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 400 (2024), made clear that federal courts must independently interpret statutes and no longer defer under so-called "Chevron deference." This Court is therefore in the best position to determine whether the Respondents are misinterpreting the relevant federal statutes and improperly denying alien detainees bond hearings on the grounds that they are all subject to mandatory detention under § 1225(b)(2)(A). The petition for writ of habeas corpus should be granted.

## JURISDICTION & CUSTODY

1.      Petitioner Edwar Anderson Gomez Blanco, is in the physical custody of Respondents and Immigration and Customs Enforcement (ICE), an agency within the Department of Homeland Security.

2.      Petitioner is currently detained at Florence Correctional Center and is under the direct control of Respondents and their agents.

3.      This action arises under the Constitution of the United States and 8 U.S.C. § 1101 et seq.

4.      This Court has jurisdiction under 28 U.S.C. § 2241, Art. I § 9, cl. 2 of the United States Constitution, 28 U.S.C. § 1331, and the common law. This Court may grant relief pursuant to 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the All Writs Act, 28 U.S.C. § 1651.

3

5. Congress has preserved judicial review of challenges to immigration detention. *See Jennings v. Rodriguez*, 583 U.S. 122, 130-131 (2018) (holding that 8 U.S.C. §§ 1226(e) and 1252(b)(9) do not bar review of challenges to prolonged immigration detention).

6. The Court must grant the petition for writ of habeas corpus or order Respondents to show cause "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, Respondents must file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.*

7. The Court has inherent power to release the petitioner pending review of his petition. *See Martin v. Solem*, 801 F.2d 324, 329 (8th Cir. 1986).

**VENUE**

8. Pursuant to *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 493- 500 (1973), venue lies in this Court, the federal judicial district in which Petitioner is currently is in custody.

9. Venue is also properly in this Court pursuant to 18 U.S.C. § 1391(e) because Respondents are employees, officers, and agencies of the United States.

**PARTIES**

10. Petitioner Edwar Anderson Gomez Blanco was born on October 4, 1988 in Lima, Peru. Petitioner is currently detained by ICE at Florence Correctional Center. *See*, ICE Online Detainee Locator, filed herewith as Exhibit 6.

4

11.     Respondent Kristi Noem is the Secretary of the U.S. Department of Homeland Security ("DHS"). In this capacity, Respondent Noem is a legal custodian of Petitioner. Respondent Noem is sued in her official capacity.

12.     Respondent DHS is a federal executive agency responsible for, among other things, enforcing federal immigration laws and overseeing lawful immigration to the United States. Respondent DHS is a legal custodian of Petitioner.

13.     Respondent Luis Rosa, Jr. is the Warden of the Florence Correctional Center. Respondent Rosa, Jr. is a legal custodian of Petitioner. Respondent Rosa, Jr. is sued in his official capacity.

14.     Respondent Sirce Owen is the Acting Director of the Executive Office for Immigration Review (EOIR), a federal agency within the U.S. Department of Justice. Respondent EOIR is responsible for the administration of immigration courts, and acceptance of forms and petitions related to adjudication of immigration claims, as well as motions for bond.  Respondent Sirce Owen is sued in her official capacity.

**STATEMENT OF FACTS**

15.     Petitioner Edwar Anderson Gomez Blanco was born on October 4, 1988 in Lima, Peru.

16.     Petitioner entered the United States near Otay Mesa, California, on or about June 21, 2022, without being inspected by an immigration officer. *See* Notice to Appear, filed herewith as Exhibit 5.

5

17.     Upon apprehension by Border Patrol, he admitted to illegal entry. Due to detention capacity issues in the San Diego sector, he was issued an I-94 and paroled into the U.S. under an Alternative to Detention (ATD) program. *See* Form I-213, Record of Deportable/Inadmissible Alien, filed herewith as Exhibit 7.

18.     Respondents arrested Petitioner and issued a notice to appear on July 11, 2022. *Id*. DHS charged Petitioner with being subject to removal under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act. *See* Notice to Appear, filed herewith as Exhibit 5. This placed him in full removal proceedings under section 240 of the Act.

19.     The Notice to Appear identified him as an "alien present in the United States" even though "arriving alien" was an alternate option. *Id*.

20.     On December 16, 2022, Edwar filed a Form I-589 seeking asylum, withholding of removal, and protection under the Convention Against Torture (CAT). *See* Cover: Form I-589, Application for Asylum and Withholding of Removal and Protection Under CAT, filed herewith as Exhibit 8.

21.     On December 10, 2025, Petitioner was arrested by ICE officers at an ISAP (Intensive Supervision Appearance Program) office in Baltimore, Maryland. This arrest was triggered by ATD violations, specifically missing multiple scheduled biometric check-ins and an in-person office visit in 2024. *See* Form I-213, Record of Deportable/Inadmissible Alien, filed herewith as Exhibit 7.  Following his arrest, he was transferred to the Florence Staging Facility in Arizona. *Id*.

6

22.     On December 18, 2025, DHS moved to pretermit (dismiss without a full hearing) his asylum application. They argued he was barred from seeking protection in the U.S. under Asylum Cooperation Agreements (ACA), which require individuals to seek protection in "safe third countries" such as Ecuador, Honduras, or Uganda. *See* Order of the Immigration Judge, filed herewith as Exhibit 9.

23.     On January 20, 2026, Immigration Judge Bruce Taylor granted the DHS motion, effectively denying Petitioner's application for asylum and withholding of removal. *Id*.

24.     Petitioner filed a Notice of Appeal to the Board of Immigration Appeals (BIA) on February 19, 2026, which remains pending before the BIA. *See* Filing Receipt for Appeal, filed herewith as Exhibit 10.

25.     Petitioner is detained at the Florence Correctional Center where he remains in custody. *See* ICE Online Detainee Locator Printout, filed herewith as Exhibit 6.

26.     Petitioner has no criminal history. *See*, Declaration of Counsel in Support of Petition for Writ of Habeas Corpus, filed herewith as Exhibit 11.

27.     Petitioner has not been afforded an individualized bond hearing at which he could demonstrate that he is neither a flight risk nor a danger to the community.

## LEGAL FRAMEWORK

28.     The length of time that a petitioner has been living in the United States is a constitutionally relevant consideration, because "once an alien enters the country,

7

the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). It is therefore reasonable to read these statutes "against [that] backdrop." *See Hewitt v. United States*, 145 S. Ct. 2165, 2173 (2025).

29.     Due process thus requires "adequate procedural protections" to ensure that the government's asserted justification for a noncitizen's physical confinement "outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690 (internal quotation marks omitted).

30.     In the immigration context, the Supreme Court has recognized only two valid purposes for civil detention: to mitigate the risks of danger to the community and to prevent flight. *Id.; Demore*, 538 U.S. at 528.  The government may not detain a noncitizen based on any other justification.

31.     Congress has granted the Attorney General discretion to decide whether to detain or release certain noncitizens pending a removal decision. *See* 8 U.S.C. § 1226(a). The Attorney General has delegated that authority to IJs. 8 C.F.R. §§ 1003.19, 1236.1.

32.     On July 8, 2025, DHS adopted a new policy on mandatory detention for noncitizens who have been residing in the United States.  *See*, ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission filed herewith as Exhibit 1.

8

33.      On September 5, 2025, the BIA entered the precedential decision *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (B.I.A. 2025), filed herewith as Exhibit 2, which holds that all noncitizens who enter without inspection are "applicants for admission" under 8 U.S.C. § 1225(a) and therefore subject to mandatory detention under § 1225(b)(2), without regard for the length of time they have lived in the United States.

34.      The Ninth Circuit has held that § 1226(a) is the "default" detention statute for aliens in removal proceedings "[8 U.S.C. §1226(a) ("Subsection A")] is the default detention statute for noncitizens in removal proceedings and applies to noncitizens "[e]xcept as provided in [Subsection C]." 8 U.S.C. § 1226(a)." *Avilez v. Garland*, 69 F. 4th 525, 529-530 (9th Cir. 2022). *Accord, Rodriguez Diaz v. Garland*, 83 F. 4th 1177, 1179 (9th Cir. 2023); *Sarr v. Scott*, 765 F. Supp. 3d 1091, 1095 (WD Wash. 2025); *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008). *Casas-Castrillon v. DHS*, 535 F.3d 942 (9th Cir. 2008).

35.      In 1997, after Congress amended the INA through the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), EOIR and the then-Immigration and Naturalization Service issued an interim rule to interpret and apply IIRIRA. Specifically, under the heading of "Apprehension, Custody, and Detention of Aliens," the agencies explained that:

> Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) ***will be eligible*** for bond and bond redetermination.

9

62 Fed. Reg. at 10323 (emphasis added). The agencies thus made clear that individuals who had entered without inspection *were* eligible for consideration for bond and bond hearings before IJs under 8 U.S.C. § 1226 and its implementing regulations.

36.     Thus, for almost 30 years, all participants in the immigration system have understood that people arrested inside the United States generally fall within § 1226 for detention purposes and are therefore required to receive a bond hearing upon request—even if they initially entered the country without permission. *See Martinez v. Hyde*, No. 25-11613, 2025 WL 2084238, at *4 n.9 (D. Mass. July 24, 2025) (citing the United States Solicitor General's representation to the Supreme Court at oral argument that "DHS's long-standing interpretation has been that 1226(a) applies to those who have crossed the border between ports of entry and are shortly thereafter apprehended").

37.     This Court and numerous district courts have rejected that interpretation, holding that § 1226(a) governs detention of long-present noncitizens apprehended within the United States and requires access to bond hearings. *See Echevarria v. Bondi*, No. CV-25-03252-PHX-DWL (ESW) (D. Ariz. Oct. 3, 2025) (collecting cases). While a minority of courts have adopted Respondents' position, those decisions are not binding and conflict with the statutory text, legislative history, and overwhelming district court authority.

38.     In *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal. Feb. 18, 2026), the district court vacated *Matter of Yajure-Hurtado* under the

Administrative Procedure Act as resting on an identical, incorrect interpretation of law. *See*, *Maldonado Bautista*, filed herewith as Exhibit 4. The court held that EOIR and DHS may not "privilege an executive agency's legal interpretation over a federal district court's legal interpretation," reaffirming that "[i]t is the province and duty of the judicial department to say what the law is." The court further rejected the government's reliance on rhetoric about detaining the "worst of the worst," where the record showed detainees with no criminal history and strong community ties.

39.     Accordingly, the court restored Immigration Judges' jurisdiction to conduct bond hearings under 8 U.S.C. § 1226(a) for individuals previously denied custody redeterminations based solely on entry without inspection and ordered classwide notice to ensure detainees are informed of their right to seek release on bond or conditional parole.

40.     Although the Fifth Circuit recently adopted a contrary interpretation in *Buenrostro-Mendez v. Bondi*, No. 25-20496, slip op. at 9 (5th Cir. Feb. 6, 2026), concluding that noncitizens who entered without inspection are subject to mandatory detention under 8 U.S.C. § 1225(b)(2) based on an equivalence between the terms "applicant for admission" and "seeking admission," that decision is not binding on this Court and represents a minority view. Courts within this Circuit, including the court in *Maldonado Bautista*, have rejected that interpretation as inconsistent with the INA's structure distinguishing border inspection under § 1225 from interior detention under § 1226.

11

41.     Respondents continue to misclassify long-present noncitizens under § 1225(b)(2) and deny access to bond hearings in violation of statutory authority, binding precedent, and due process. Petitioner's continued detention without a custody redetermination hearing is therefore unlawful and warrants habeas relief.

**CLAIMS FOR RELIEF**
**FIRST CLAIM FOR RELIEF**
**Violation of Fifth Amendment – Substantive Due Process**

42.     Petitioner realleges and incorporates herein the allegations contained in the preceding paragraphs of the petition as if fully set forth herein.

43.     The Due Process Clause of the Fifth Amendment forbids the government from depriving any "person" of liberty "without due process of law," including noncitizens.  U.S. Const. amend. V.

44.     Substantive due process asks whether a person's life, liberty, or property is deprived without sufficient purpose. There is no question that Petitioner has been deprived of his liberty in this case.

45.     The government's continued detention of Petitioner is not supported by any special interest or compelling justification that outweighs his liberty interest.

46.     Petitioner's ongoing detention when so many federal courts have held that he is entitled to be considered for release upon posting an appropriate bond under § 1226 constitutes prolonged detention and violates his substantive due process rights.

**SECOND CLAIM FOR RELIEF**
**Violation of Fifth Amendment Right - Procedural Due Process**

12

47.     Petitioner realleges and incorporates herein the allegations contained in the preceding paragraphs of the petition as if fully set forth herein.

48.     The Due Process Clause of the Fifth Amendment guarantees Petitioner the right to procedural due process in seeking a bond redetermination and the government may not unreasonably restrict this right.

49.     The government's knowing misclassification of Petitioner as an "applicant for admission" under § 1225 in order to justify its argument for mandatory detention is not supported by any special interest or compelling justification that outweighs Petitioner's liberty interest.

50.     The continued detention of Petitioner is not supported by any special interest or compelling justification that outweighs his liberty interest.

### PRAYER FOR RELIEF

**WHEREFORE** Petitioner Edwar Anderson Gomez Blanco respectfully requests that the Court grant the following relief:

1.     Assume jurisdiction over this matter;

2.     Order Respondents not to transfer Petitioner out of this District during the pendency of these proceedings, to preserve jurisdiction;

3.     Issue a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 and order Respondents to immediately release Petitioner from custody or, in the alternative, order Respondents to provide Petitioner a bond hearing under 8 U.S.C. § 1226, and without regard to the holding of *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (B.I.A. 2025), within three (3) business days;

4.     Order Respondents to return all personal property, legal documents, identification documents, and other belongings confiscated at the time of

13

detention;

5.  Award Petitioner reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412; and

6.  Grant any further relief the Court deems just and proper.

Dated this 15th day of March, 2026.

By: */s/ Erica Sanchez*
Erica Sanchez, Esq.
Shefer Law Firm, P.A.
800 SE 4th. Ave #803
Hallandale Beach, Florida 33009
(786) 295-9077
erica@shefer.legal

14

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I represent Petitioner Edwar Anderson Gomez Blanco and submit this verification on his behalf. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated this 15th day of March, 2026.

By: */s/ Erica Sanchez*
Erica Sanchez, Esq.

15

| LIST OF EXHIBITS | |
|---|---|
| Exhibit 1 | ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission (last visited September 8, 2025) |
| Exhibit 2 | *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (B.I.A. 2025). |
| Exhibit 3 | *Echevarria v. Bondi*, No. CV-25-03252-PHX-DWL (ESW), (D. Ariz. Oct. 3, 2025) |
| Exhibit 4 | *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal. Feb. 18, 2026) |
| Exhibit 5 | Notice to Appear |
| Exhibit 6 | ICE Online Detainee Locator Printout |
| Exhibit 7 | I-213, Record of Deportable/Inadmissible Alien |
| Exhibit 8 | Cover: Petitioner's Form I-589 Application for Asylum |
| Exhibit 9 | Order of the Immigration Judge |
| Exhibit 10 | Filing Receipt for Appeal |
| Exhibit 11 | Declaration of Counsel in Support of Petition for Writ of Habeas Corpus |

16

# EXHIBIT 1

1



**To All ICE Employees**
**July 8, 2025**

## Interim Guidance Regarding Detention Authority for Applicants for Admission

As you are all well aware, the U.S. Department of Homeland Security's (Department or DHS) detention authority under the immigration laws is extraordinarily broad and equally complex. The Department's authority to detain, and its authority or lack of authority to release, an alien from immigration detention varies based upon the circumstances of the case. This message serves as notice that DHS, in coordination with the Department of Justice (DOJ), has revisited its legal position on detention and release authorities. DHS has determined that section 235 of the Immigration and Nationality Act (INA), rather than section 236, is the applicable immigration detention authority for all applicants for admission. The following interim guidance is intended to ensure immediate and consistent application of the Department's legal interpretation while additional operational guidance is developed.

### Custody Determinations

An "applicant for admission" is an alien present in the United States who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival. INA § 235(a)(1). **Effective immediately, it is the position of DHS that such aliens are subject to detention under INA § 235(b) and may not be released from ICE custody except by INA § 212(d)(5) parole.** These aliens are also ineligible for a custody redetermination hearing ("bond hearing") before an immigration judge and may not be released for the duration of their removal proceedings absent a parole by DHS. For custody purposes, these aliens are now treated in the same manner that "arriving aliens" have historically been treated. **The only aliens eligible for a custody determination and release on recognizance, bond, or other conditions under INA § 236(a) during removal proceedings are aliens admitted to the United States and chargeable with deportability under INA § 237, with the exception of those subject to mandatory detention under INA § 236(c).**

2

Moving forward, ICE will not issue Form I-286, *Notice of Custody Determination*, to applicants for admission because Form I-286 applies by its terms only to custody determinations under INA § 236 and part 236 of Title 8 of the Code of Federal Regulations. With a limited exception for certain habeas petitioners, on which the Office of the Principal Legal Advisor (OPLA) will individually advise, if Enforcement and Removal Operations (ERO) previously conducted a custody determination for an applicant for admission still detained in ICE custody, ERO will affirmatively cancel the Form I-286.

Because the position that detention is pursuant to INA § 235(b) is likely to be litigated, however, OPLA will need to make alternative arguments in support of continued detention before the Executive Office for Immigration Review. Accordingly, ERO and Homeland Security Investigations (HSI) should continue to develop and obtain evidence, including conviction records, to support OPLA's arguments of dangerousness and flight risk in those bond proceedings.

## Re-detention

This interpretation does not impose an affirmative requirement on ICE to immediately identify and arrest all aliens who may be subject to INA § 235 detention. Rather, the custody provisions at INA § 235(b)(1)(B)(ii), (iii)(IV), and (b)(2)(A) are best understood as prohibitions on release once an alien enters ICE custody upon initial arrest or re-detention.

This change in legal interpretation may, however, warrant re-detention of a previously released alien in a given case. Until additional guidance is issued, ERO and HSI should consult with OPLA prior to rearresting an alien on this basis.

## Parole Requests by Previously Released Aliens

It is expected that ICE will see an increase in applicants for admission previously released under INA § 236(a) requesting documentation of parole pursuant to INA § 212(d)(5) in order to establish eligibility for certain immigration benefits, including employment authorization and adjustment of status. DHS does not take the position that prior releases of applicants for admission pursuant to INA § 236(a) were releases on parole under INA § 212(d)(5) based on this change in legal position. Accordingly, ERO and HSI are not required to "correct" the release paperwork by issuing INA § 212(d)(5) parole paperwork.

3

# EXHIBIT 2

4

Cite as 29 I&N Dec. 216 (BIA 2025)                    Interim Decision #4125

# Matter of Jonathan Javier YAJURE HURTADO, Respondent

*Decided September 5, 2025*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

Based on the plain language of section 235(b)(2)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1225(b)(2)(A) (2018), Immigration Judges lack authority to hear bond requests or to grant bond to aliens who are present in the United States without admission.

FOR THE RESPONDENT: Gabriel Harrison, Esquire, Bellingham, Washington

FOR THE DEPARTMENT OF HOMELAND SECURITY: Cassidy A. Cloninger, Associate Legal Advisor

BEFORE: Board Panel: HUNSUCKER and MONTANTE, Appellate Immigration Judges; MCCLOSKEY, Temporary Appellate Immigration Judge.

HUNSUCKER, Appellate Immigration Judge:

The respondent, a native and citizen of Venezuela, appeals from the Immigration Judge's April 18, 2025, order denying his request for a redetermination of his custody status.[1] The Immigration Judge determined that he lacked jurisdiction to hear the respondent's bond request because the respondent was subject to mandatory detention under section 235(b)(2) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1225(b)(2) (2018) and, in the alternative, that the respondent is a flight risk.[2] This case presents an issue that the Board has not previously addressed in a precedential decision—the Immigration Judge's authority to hold a bond hearing for an alien present in the United States who has not been admitted after inspection.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The respondent crossed the border into the United States without inspection in November 2022 near El Paso, Texas. United States Citizenship and Immigration Services granted him temporary protected status in 2024,

---

[1] Throughout the remainder of this decision, we will use the term "bond hearing" to reference any hearing in which the Immigration Judge considers any aspect of an alien's detention or conditions of release.

[2] On April 30, 2025, the Immigration Judge issued a written memorandum in support of the bond order.

5

but that status expired on April 2, 2025. The respondent was apprehended by immigration officials, and on April 8, 2025, the Department of Homeland Security ("DHS") issued a notice to appear charging the respondent as inadmissible under section 212(a)(6)(A)(i) of the INA, 8 U.S.C. § 1182(a)(6)(A)(i) (2018), for being "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General."

The respondent requested a bond hearing before the Immigration Judge. At the hearing, the Immigration Judge determined he had no jurisdiction to set bond under the facts of the respondent's case. Alternatively, the Immigration Judge stated he would have denied bond because the respondent is a flight risk. The respondent timely appealed to the Board.

On July 18, 2025, the Board issued a request for supplemental briefing, asking the parties to specifically address whether the Immigration Judge has the authority to conduct a bond hearing for an alien who is present in the United States without admission. Both parties filed supplemental briefs.

## II. STATUTORY AND REGULATORY BACKGROUND

We review de novo whether an Immigration Judge has the authority to consider the bond request of an alien who entered the United States without admission and who has been present in the United States for at least 2 years. *See* 8 C.F.R. § 1003.1(d)(3)(i) (2025). The authority of an Immigration Judge to adjudicate any matter, including a request for a bond, is limited to the authority that is delegated to the Immigration Judge by the INA and the Attorney General through regulation.[3] *See* 8 C.F.R. § 1003.10(b) (2025); *see also Matter of A-W-*, 25 I&N Dec. 45, 46 (BIA 2009); *Matter of D-J-*, 23 I&N Dec. 572, 575 (A.G. 2003).

---

[3] The authority of an Immigration Judge to consider a bond request is impacted by legal authorities which generally define that authority in the negative. For example, the Immigration Judge is without authority to conduct a custody redetermination hearing for aliens in exclusion proceedings. *See* 8 C.F.R. § 1003.19(h)(2)(i)(A) (2025). An Immigration Judge is also without authority to conduct a custody redetermination hearing for an arriving alien, including an alien paroled after arrival pursuant to section 212(d)(5) of the INA, 8 U.S.C. § 1182(d)(5). *See* 8 C.F.R. § 1003.19(h)(2)(i)(B); *see also Matter of Oseiwusu*, 22 I&N Dec. 19, 20 (BIA 1998). Various other sections of the INA and the regulations further prohibit the Immigration Judge from considering custody redetermination under certain circumstances. *See* INA § 235(b)(1)(B)(iii)(IV), (b)(2)(A), 8 U.S.C. § 1225(b)(1)(B)(iii)(IV), (b)(2)(A); INA § 236(c), 8 U.S.C.A. § 1226(c) (West 2025); 8 C.F.R. §§ 235.3(b)(1), 1003.19(h)(1)(i)(A)–(E) (2025).

6

A.  Detention Under Section 235

The inspection, detention, and removal of aliens who have not been admitted is governed by section 235 of the INA, 8 U.S.C. § 1225.  There, Congress defined an applicant for admission as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)."  INA § 235(a)(1), 8 U.S.C. § 1225(a)(1).

Under section 235, Congress created three different categories of applicants for admission.  The first two categories are covered by section 235(b)(1)(A) of the INA, 8 U.S.C. § 1225(b)(1)(A).  They include: (1) arriving aliens inadmissible under section 212(a)(6)(C) or 212(a)(7), 8 U.S.C. § 1182(a)(6)(C), (a)(7), and (2) aliens not admitted or paroled into the United States who are inadmissible under section 212(a)(6)(C) or 212(a)(7), 8 U.S.C. § 1182(a)(6)(C), (a)(7), and "who ha[ve] not affirmatively shown, to the satisfaction of an immigration officer, that [they] ha[ve] been physically present in the United States continuously for the 2-year period immediately prior to the date of determination of inadmissibility."    INA   §   235(b)(1)(A)(i),   (iii)(II),   8   U.S.C. § 1225(b)(1)(A)(i), (iii)(II); *see also* 8 C.F.R. § 235.3(b)(1) (2025).  The INA explicitly requires that aliens who fall into either of these two categories are subject to mandatory detention for the duration of their immigration proceedings.    *See*   INA   §   235(b)(1)(B)(ii),   (iii)(IV),   8   U.S.C. § 1225(b)(1)(B)(ii), (iii)(IV); *see also* 8 C.F.R. § 235.3(b)(2)(iii).  Thus, an Immigration Judge lacks authority to hear a bond request filed by an applicant for admission in either of these two categories. *See Matter of M-S-*, 27 I&N Dec. 509, 515–19 (A.G. 2019).

The third category of applicants for admission subject to the inspection, detention, and removal procedures set forth in section 235 of the INA, 8 U.S.C. § 1225, are those aliens who are seeking admission and who an immigration officer has determined are "not clearly and beyond a doubt entitled to be admitted."  INA § 235(b)(2)(A), 8 U.S.C. § 1225(b)(2)(A).  This category is a "catchall provision that applies to all applicants for admission not covered by [section 235(b)(1)]." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).  Like with the first two categories of applicants for admission, the INA explicitly requires that this third "catchall" category of applicants for admission be mandatorily detained for the duration of their

7

immigration proceedings.[4]    *See* INA § 235(b)(2)(A), 8 U.S.C. § 1225(b)(2)(A); *see also Jennings*, 583 U.S. at 299 (interpreting the "plain meaning" of sections 235(b)(1) and (2) to mean that applicants for admission be mandatorily detained for the duration of their immigration proceedings); 8 C.F.R. § 235.3(b)(1)(ii).

### B. Detention Under Section 236

Section 236 of the INA, 8 U.S.C.A. § 1226 (West 2025), provides additional direction for the apprehension and detention of aliens "pending a decision on whether the alien is to be removed from the United States." INA § 236(a), 8 U.S.C.A. § 1226(a). Section 236 "generally governs the process of arresting and detaining" aliens who are deportable under section 237(a), 8 U.S.C. § 1227(a) (2018), including "aliens who were inadmissible at the time of entry or who have been convicted of certain criminal offenses since admission." *Jennings*, 583 U.S. at 288 (citing INA § 237(a)(1), (2), 8 U.S.C. § 1227(a)(1), (2)).

The detention provisions of section 236, distinguish between two groups of aliens. The first group consists of aliens arrested on a warrant issued by DHS, who, subject to certain restrictions, may be detained or released on bond or conditional parole. INA § 236(a), 8 U.S.C.A. § 1226(a). The regulatory provision at 8 C.F.R. § 1236.1(d) (2025) authorizes Immigration Judges to "exercise the authority in section 236 of the [INA] . . . to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released, as provided in § 1003.19 of this chapter." The second group of aliens identified in section 236 are certain defined categories of "criminal aliens" subject to mandatory detention under section 236(c) of the INA, 8 U.S.C.A. § 1226(c). An Immigration Judge is without authority to consider a bond request filed by an alien falling into this category.

Section 236 does not purport to overrule the mandatory detention requirements for arriving aliens and applicants for admission explicitly set forth in section 235(b)(1) and (2) of the INA, 8 U.S.C. § 1225(b)(1), (2). Thus, while an inadmissible alien who establishes that he or she has been

---

[4]  While these aliens might be subject to parole by the Attorney General or DHS, that is not an issue that the Immigration Judge has authority to consider. *See* INA § 212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. 212.5(a) (2025) (designating who may exercise authority to grant parole); *see also Jennings*, 583 U.S. at 300 (noting that the Attorney General may grant aliens detained under sections 235(b)(1) and (b)(2) temporary parole into the United States "for urgent humanitarian reasons or significant public benefit" (quoting INA § 212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A)).

8

present in the United States for over 2 years is not subject to the expedited removal process, the alien nevertheless "shall be detained for a proceeding under section 240." INA § 235(b)(2)(A), 8 U.S.C. § 1225(b)(2)(A).

## III. APPLICATION OF THE RESPONDENT

The issue presented on appeal is one of statutory construction: Does the INA require that all applicants for admission, even those like the respondent who have entered without admission or inspection and have been residing in the United States for years without lawful status, be subject to mandatory detention for the duration of their immigration proceedings, and thus the Immigration Judge lacks authority over a bond request filed by an alien in this category? In addressing this issue, the Board must begin with the "plain language" of the INA. *See Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009) ("As with any question of statutory interpretation, [the] analysis begins with the plain language of the statute.").

"The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997); *see also Beecham v. United States*, 511 U.S. 368, 372 (1994) ("The plain meaning that we seek to discern is the plain meaning of the whole statute, not of isolated sentences."). The Board does not "view the language of statutory provisions in isolation but instead . . . read[s] the words 'in their context and with a view to their place in the overall statutory scheme.'" *Matter of C-T-L-*, 25 I&N Dec. 341, 345 (BIA 2010) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)); *see also Stenberg v. Carhart*, 530 U.S. 914, 942 (2000) ("When a statute includes an explicit definition, we must follow that definition, even if it varies from that term's ordinary meaning.").

Under the plain reading of the INA, we affirm the Immigration Judge's determination that he did not have authority over the bond request because aliens who are present in the United States without admission are applicants for admission as defined under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), and must be detained for the duration of their removal proceedings. *See Jennings*, 583 U.S. at 300 (holding that the INA "unequivocally mandates that aliens falling within the scope [of section 235(b)(1) and (2)] 'shall' be detained," and that "[u]nlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement" (quoting *Kingdomware Technologies, Inc. v. United States*, 579 U.S. 162, 171 (2016))).

9

The respondent concedes that he is an "applicant for admission" under section 235(a)(1) of the INA, 8 U.S.C. § 1225(a)(1), by virtue of his entry without inspection. The respondent also contends, however, that because he has been residing in the interior of the United States for almost 3 years (since his November 2022 entry without inspection), he cannot be considered as "seeking admission" as the phrase is used in section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A).

The respondent's argument is not supported by the plain language of the INA, and actually creates a legal conundrum. If he is not admitted to the United States (as he admits) but he is not "seeking admission" (as he contends), then what is his legal status? The respondent provides no legal authority for the proposition that after some undefined period of time residing in the interior of the United States without lawful status, the INA provides that an applicant for admission is no longer "seeking admission," and has somehow converted to a status that renders him or her eligible for a bond hearing under section 236(a) of the INA, 8 U.S.C.A. § 1226(a). *See Matter of Lemus*, 25 I&N Dec. 734, 743 & n.6 (BIA 2012) (noting that "many people who are not *actually* requesting permission to enter the United States in the ordinary sense [including aliens present in the United States who have not been admitted] are nevertheless deemed to be 'seeking admission' under the immigration laws"). The respondent's argument also leaves unanswered which applicants for admission would be covered by section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), if, as he argues, applicants for admission who have been living for years in the United States without admission and without lawful status are somehow exempt from section 235(b)(2)(A) and instead fall under section 236.

The respondent also contends that the Immigration Judge's interpretation of section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), as applying to aliens who are present in the United States without inspection renders superfluous sections 236(c)(1)(A), (D), and (E), 8 U.S.C.A. § 1226(c)(1)(A), (D), (E), which bar certain categories of inadmissible aliens from requesting bond under section 236(a) of the INA, 8 U.S.C.A. § 1226(a). According to the respondent, Congress would not have enacted the provisions of sections 236(c) and also amended the provision as it did with the recent passage of the Laken Riley Act, Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025), if those aliens were already subject to mandatory custody under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A).[5] The respondent's argument is

[5] The Laken Riley Act amended section 236(c) of the INA, 8 U.S.C.A. § 1226(c), to require that the Attorney General take into custody certain criminal aliens who are deemed inadmissible, including for being "present in the United States without being admitted or

unavailing, however, because nothing in the statutory text of section 236(c), including the text of the amendments made by the Laken Riley Act, purports to alter or undermine the provisions of section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), requiring that aliens who fall within the definition of the statute "shall be detained for a proceeding under section 240."

The respondent's interpretation would, in fact, render section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), superfluous. Interpreting the provisions of section 236(c) as rendering null and void the provisions of section 235(b)(2)(A) (or even the provisions of section 235(b)(1) of the INA, 8 U.S.C. § 1225(b)(1)), would be in contravention of the "cardinal principle of statutory construction," which is that courts are to "'give effect, if possible, to every clause and word of a statute,' rather than to emasculate an entire section." *United States v. Menasche*, 348 U.S. 528, 538–39 (1955) (citations omitted).

Further, the fact that section 236(c) of the INA, 8 U.S.C.A. § 1226(c), mandates detention of a subset of the category of aliens that are also subject to mandatory detention under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), is not a basis on which to determine that section 235(b)(2)(A) is null and void. *See Barton v. Barr*, 590 U.S. 222, 239 (2020) (holding that because "redundancies are common in statutory drafting—sometimes in a congressional effort to be doubly sure, sometimes because of congressional inadvertence or lack of foresight, or sometimes simply because of the shortcomings of human communication,"—"[r]edundancy in one portion of a statute is not a license to rewrite or eviscerate another portion of the statute contrary to its text").

The respondent also argues that the relevant legislative history of the INA supports an interpretation of the INA that authorizes bond and bond hearings under section 236(a) for aliens present in the United States without admission. On the contrary, the legislative history supports the interpretation the Board is taking here. The statutory definition of an "applicant for admission" at section 235(a)(1) of the INA, 8 U.S.C. § 1225(a)(1), was added to the INA in 1996, with the passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, Div. C, § 302(a), 110 Stat. 3009-546, 3009-579. Before the passage of IIRIRA, the INA provided for inspection of aliens only when they were arriving at a port of entry. *See* former INA § 235(a), 8 U.S.C. § 1225(a) (1994) (discussing "aliens arriving at ports of the United States"); *see also*

---

paroled," under section 212(a)(6)(A)(i) of the INA, 8 U.S.C. § 1182(a)(6)(A)(i), and who have been arrested, charged with, or convicted of certain crimes, including theft.

11

former INA § 235(b), 8 U.S.C. § 1225(b) (discussing the detention of aliens by "the examining immigration officer at the port of arrival").  Aliens who were "seeking admission" at a port of entry under former section 235 of the INA, 8 U.S.C. § 1225, or who had been paroled into the United States and were determined to be excludable were placed in exclusion proceedings and subject to mandatory detention, with potential release solely by means of a grant of parole under section § 212(d)(5), 8 U.S.C. § 1182(d)(5) (1994).  *See also* former INA §§ 212(a), 235(a)–(b), 236, 8 U.S.C. §§ 1182(a), 1225(a)–(b), 1226 (1994); *see also* 8 C.F.R. § 235.3(a)–(c) (1995).

At the same time, aliens who were "in the United States" and within certain classes of deportable aliens, including those "who entered the United States without inspection or at any time or place other than as designated by the Attorney General" were deemed deportable under former section 241(a) of the INA, 8 U.S.C. § 1251(a) (1994), and placed in deportation proceedings.  Those aliens were entitled to request release on bond.  *See* former INA § 242(a)(1), 8 U.S.C. § 1252(a)(1) (1994); *see also* 8 C.F.R. § 242.2(c)(1) (1995).  Thus, the placement of an alien in exclusion or deportation proceedings before the 1996 passage of IIRIRA depended on whether the alien had made an "entry" within the meaning of the INA.  *See* former INA § 101(a)(13), 8 U.S.C. § 1101(a)(13) (1994) (defining "entry" as "any coming of an alien into the United States, from a foreign port or place or from an outlying possession").

In 1996, Congress enacted IIRIRA, which, among other things, substituted the term "admission" for "entry," and replaced deportation and exclusion proceedings with removal proceedings.  *See Martinez v. Att'y Gen. of U.S.*, 693 F.3d 408, 413 n.5 (3d Cir. 2012) ("Prior to the 1996 amendment, the INA assessed status on the basis of 'entry' as opposed to 'admission.'").  Congress acted, in part, to remedy the "unintended and undesirable consequence" of having created a statutory scheme where aliens who entered without inspection "could take advantage of the greater procedural and substantive rights afforded in deportation proceedings," including the right to request release on bond, while aliens who had "actually presented themselves to authorities for inspection were restrained by 'more summary exclusion proceedings,'" and were subject to mandatory custody.  *Id.* (quoting *Hing Sum v. Holder*, 602 F.3d 1092, 1100 (9th Cir. 2010).

The legislative history of IIRIRA explains that in replacing the definition of "entry" with a definition for "admission" and "admitted," Congress:

> intended to replace certain aspects of the current "entry doctrine," under which illegal aliens who have entered the United States without inspection gain equities and

12

> privileges in immigration proceedings that are not available to aliens who present themselves for inspection at a port of entry. Hence, the pivotal factor in determining an alien's status will be whether or not the alien has been lawfully admitted.

H.R. Rep. No. 104-469, pt. 1, at 225 (1996). The House Judiciary Committee Report for what would become IIRIRA further explains:

> Currently, aliens who have entered without inspection are deportable under section 241(a)(1)(B). Under the new "admission" doctrine, such aliens will not be considered to have been admitted, and thus, must be subject to a ground of inadmissibility, rather than a ground of deportation, based on their presence without admission. (Deportation grounds will be reserved for aliens who have been admitted to the United States.).

*Id*. at 226.

Thus, after the 1996 enactment of IIRIRA, aliens who enter the United States without inspection or admission are "applicants for admission" under section 235(a)(1) of the INA, 8 U.S.C. § 1225(a)(1), and subject to the inspection, detention, and removal procedures of section 235(b) of the INA, 8 U.S.C. § 1225(b). The legislative history confirms that, under a plain language reading of section 235(b)(1) and (2) of the INA, 8 U.S.C. § 1225(b)(1), (2), Immigration Judges do not have authority to hold a bond hearing for arriving aliens and applicants for admission. *See Chapman v. Hous. Welfare Rts. Org.*, 441 U.S. 600, 608 (1979) (noting that the Supreme Court's "task is to interpret the words of these statutes in light of the purposes Congress sought to serve."); *see also Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835 (1990) ("The starting point for interpretation of a statute 'is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.'" (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980))).

The respondent contends that the statement in the House Judiciary Committee Report that "[s]ection 236(a) restates the current provisions in section 242(a)(1) regarding the authority of the Attorney General to arrest, detain, and release on bond an alien who is not lawfully in the United States" demonstrates that Congress intended to retain the same discretionary detention scheme for aliens unlawfully in the United States that was in place prior to the 1996 enactment of IIRIRA. H.R. Rep. No. 104-469, pt. 1, at 229. The respondent's argument is unavailing, however, because nothing in the portion of the report cited by the respondent suggests that it was intended to undermine or alter the earlier statements, in the same report, that aliens present in the United States without inspection will be considered "seeking

13

admission." *See id.* at 225. The House Judiciary Committee Report makes clear that Congress intended to eliminate the prior statutory scheme that provided aliens who entered the United States without inspection more procedural and substantive rights than those who presented themselves to authorities for inspection. *See id.*; *see also Martinez*, 693 F.3d at 413 n.5. Interpreting the provisions of the INA in the manner the respondent argues would essentially repeal the statutory fix that Congress made with the 1996 passage of IIRIRA.

As the legislative history reflects, the Immigration Judge's interpretation of the respondent as an applicant for admission under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), and therefore subject to mandatory detention and ineligible for a bond hearing is supported by the plain language of the INA. *See Jennings*, 583 U.S. at 297 ("Read most naturally, [sections 235(b)(1)] and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded. Section [235(b)(1)] aliens are detained for 'further consideration of the application for asylum,' and [section 235(b)(2)] aliens are in turn detained for '[removal] proceeding[s].'" (last two alterations in original)). Thus, we affirm the Immigration Judge's interpretation, and hold, under a plain language reading of section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), Immigration Judges lack authority to hear bond requests or to grant bond to aliens, like the respondent, who are present in the United States without admission.

Citing *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), the respondent also contends in his supplemental brief that DHS' "longstanding practice" of treating aliens who are present in the United States without inspection as detained under section 236(a) of the INA, 8 U.S.C.A. § 1226(a), and therefore eligible for a bond, supports his argument that he is likewise detained under section 236(a). *See Loper Bright*, 603 U.S. at 386 ("'[T]he longstanding "practice of the government"'—like any other interpretive aid—'can inform [a court's] determination of "what the law is."'" (citation omitted)).[6] Somewhat similarly, the respondent contends that Congress did

---

[6] We acknowledge that for years Immigration Judges have conducted bond hearings for aliens who entered the United States without inspection. However, we do not recall either DHS or its predecessor, the Immigration and Naturalization Service, previously raising the current issue that is before us. In fact, the supplemental information for the 1997 Interim Rule titled "Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures," 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997), reflects that the Immigration and Naturalization Service took the position at that time that "[d]espite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination."

14

not intend the provisions of section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), to apply to aliens who are arrested after having lived in the United States for more than 2 years, as reflected in DHS' practice of treating those aliens as detained under section 236 of the INA, 8 U.S.C. § 1226.

The respondent's argument is unavailing, however, because the Supreme Court in *Loper Bright* made that statement specifically with respect to judicial interpretation of a "doubtful and ambiguous law." *Id*. at 385–86. As explained above, the statutory text of the INA is not "doubtful and ambiguous" but is instead clear and explicit in requiring mandatory detention of all aliens who are applicants for admission, without regard to how many years the alien has been residing in the United States without lawful status. *See* INA § 235(b)(1), (2), 8 U.S.C. § 1225(b)(1), (2). The Supreme Court in *Loper Bright* did not hold that the long-standing practice of the government can somehow change, or even eviscerate, explicit statutory text that is contrary to that practice. *See* 603 U.S. at 385–86; *see also Niz-Chavez v. Garland*, 593 U.S. 155, 171 (2021) (stating that "no amount of policy-talk can overcome a plain statutory command").

Likewise, the respondent's citation to *Matter of Akhmedov*, 29 I&N Dec. 166 (BIA 2025), does not support his arguments. The Board's statement in that decision that the respondent's custody determination was governed by section 236(a) of the INA, 8 U.S.C.A. § 1226(a), even though the respondent was present in the United States without inspection, *Matter of Akhmedov*, 29 I&N Dec. at 166, does not somehow eviscerate or nullify section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), or vest the Immigration Judge with authority over the respondent's bond request. Whether the respondent was subject to mandatory detention under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), and whether the Immigration Judge had authority to hear the bond request, were not issues presented to the Board in that case.

The respondent also argues that because DHS issued an arrest warrant in conjunction with the Notice to Appear and a Notice of Custody Determination, DHS has detained the respondent pursuant to section 236(a) of the INA, 8 U.S.C.A. § 1226(a), and the Immigration Judge therefore has statutory and regulatory authority to consider his request for a bond. The respondent cites *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), in support of his argument. *Matter of Q. Li*, 29 I&N Dec. at 69, held:

> [A]n applicant for admission who is arrested and detained without a warrant while arriving in the United States, whether or not at a port of entry, and subsequently placed in removal proceedings is detained under section 235(b) of the INA, 8 U.S.C.

15

§ 1225(b), and is ineligible for any subsequent release on bond under section 236(a) of the INA, 8 U.S.C. § 1226(a).

*Matter of Q. Li*, 29 I&N Dec. at 69, further stated that "[s]ubject to certain exceptions contained in section 236(c) of the INA, 8 U.S.C. § 1226(c), aliens detained under section 236(a) may be eligible for discretionary release on bond pursuant to section 236(a)(2) of the INA, 8 U.S.C. § 1226(a)(2)."

Our conclusion in *Matter of Q. Li* that aliens detained without a warrant while arriving in the United States are mandatorily detained under section 235(b) of the INA, 8 U.S.C. § 1225, is consistent with our holding in the present case. While the respondent reads *Matter of Q. Li* as suggesting that aliens present in the United States who are detained with a warrant of arrest are detained under section 236(a), that issue was beyond the scope of our decision in that case. Our acknowledgement that "aliens detained under section 236(a) may be eligible for discretionary release on bond" does not mean that *all* aliens detained while in the United States with a warrant of arrest are detained under section 236(a) and entitled to a bond hearing before the Immigration Judge, regardless of whether they are applicants for admission under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A).

In short, the mere issuance of an arrest warrant does not endow an Immigration Judge with authority to set bond for an alien who falls under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A). *See Matter of A-W-*, 25 I&N Dec. at 46 (discussing the limits on Immigration Judge authority); *Matter of D-J-*, 23 I&N Dec. at 575 (same); 8 C.F.R. § 1003.10(b); *see also* 8 C.F.R. § 235.3(b)(1)(ii). If it did, it would render meaningless the many prohibitions cited above on the authority of an Immigration Judge to set bond.

Ultimately, this issue of statutory interpretation is complicated by a patchwork of statutes implemented at different times and intended to address different issues. The INA is a complex set of legal provisions created at different times and modified over a series of years. Where these provisions impact one another, they cannot be read in a vacuum. *See Matter of C-T-L-*, 25 I&N Dec. at 345 (BIA 2010) (explaining that the Board does not "view the language of statutory provisions in isolation but instead [is] charged with reading the words 'in their context and with a view to their place in the overall statutory scheme'" (citation omitted)). Additionally, the fact that a statute specifically prohibits an Immigration Judge from doing a particular act cannot be read as authorizing the Immigration Judge to perform acts that are not otherwise specifically prohibited.

16

'"[A]n alien present in the United States who has not been admitted . . . ' is deemed 'an applicant for admission.'" *DHS v. Thuraissigiam*, 591 U.S. 103, 109 (2020) (quoting INA § 235(a)(1), 8 U.S.C. § 1225(a)(1)); *see also Matter of Lemus*, 25 I&N Dec. at 743 ("Congress has defined the concept of an 'applicant for admission' in an unconventional sense, to include not just those who are expressly seeking permission to enter, but also those who are present in this country without having formally requested or received such permission . . . ."). Applicants for admission remains such unless an immigration officer determines that they are "clearly and beyond a doubt entitled to be admitted." INA § 235(b)(2)(A), 8 U.S.C. § 1225(b)(2)(A). Failing to clearly and beyond a doubt demonstrate that they are entitled to admission, such aliens "shall be detained for a proceeding under section 240." *Id.*; *see also Jennings*, 583 U.S. at 288.

Aliens, like the respondent, who surreptitiously cross into the United States remain applicants for admission until and unless they are lawfully inspected and admitted by an immigration officer. Remaining in the United States for a lengthy period of time following entry without inspection, by itself, does not constitute an "admission." *See* INA § 101(a)(13)(A), 8 U.S.C. § 1101(a)(13)(A) (2018) (defining "admission"). Likewise, being arrested pursuant to a warrant and placed into removal proceedings does not constitute an admission. Therefore, just as Immigration Judges have no authority to redetermine the custody of arriving aliens who present themselves at a port of entry, they likewise have no authority to redetermine the custody conditions of an alien who crossed the border unlawfully without inspection, even if that alien has avoided apprehension for more than 2 years.

Holding otherwise would require reading the INA to conclude that Congress intended that aliens unlawfully entering the United States without inspection, particularly those who successfully evaded apprehension for more than 2 years, be rewarded with the opportunity for a bond hearing before an Immigration Judge, whereas aliens who present themselves to officers at a port of entry are ineligible for a bond hearing. This is an incongruous result which is not supported by the plain language or any reasonable interpretation of the INA.[7]

---

[7]  Violations of the INA and the regulations often have consequences for aliens seeking relief and protection from removal. *See, e.g.*, Circumvention of Lawful Pathways, 88 Fed. Reg. 31314, 31314 (May 16, 2023) (codified at 8 C.F.R. pts. 1003 and 1208) (establishing a "rebuttable presumption of asylum ineligibility" for certain aliens who did not "avail themselves of a lawful, safe, and orderly pathway to the United States" or "seek asylum or other protection in a country through which they travel[ed]"). For example, aliens who have not been "inspected and admitted or paroled into the United States" are ineligible for

17

## IV.   CONCLUSION

The Immigration Judge properly held that he lacked authority to hear the respondent's request for a bond as the respondent is an applicant for admission and is subject to mandatory detention under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), and the regulation at 8 C.F.R. § 235.3(b)(1)(ii).[8]  Accordingly, the following order will be entered.

**ORDER:**  The appeal is dismissed.

---

adjustment of status under section 245(a) of the INA, 8 U.S.C. § 1255(a) (2018).  *See also Sanchez v. Mayorkas*, 593 U.S. 409, 414 (2021).  Likewise, an applicant for asylum will, absent extraordinary or changed circumstances, be ineligible for relief if he or she did not file the application within 1 year of his or her last arrival in the United States.  *See* INA § 208(a)(2)(B), (D), 8 U.S.C. § 1158(a)(2)(B), (D).

[8]   As we are dismissing the respondent's appeal on the grounds that the Immigration Judge lacked jurisdiction to hear the respondent's motion for a bond, we need not address the Immigration Judge's alternative holding denying bond because the respondent did not meet his burden of proving that he is not a flight risk, or the respondent's appellate arguments contesting that alternative holding.  *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (per curiam) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

18

# EXHIBIT 3

19

**WO**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Francisco Cerritos Echevarria, | No. CV-25-03252-PHX-DWL (ESW) |
| Petitioner, | **ORDER** |
| v. | |
| Pam Bondi, et al., | |
| Respondents. | |

On September 5, 2025, Petitioner, through counsel, filed a habeas corpus petition under 28 U.S.C. § 2241 challenging his immigration detention, as well as a motion for temporary restraining order and preliminary injunction. (Docs. 1, 2.) After the motion for injunctive relief became fully briefed (Doc. 9), the Court notified the parties of its intent to consolidate the request for preliminary injunction with the merits of this action pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure (Doc. 10), issued a tentative ruling (Doc. 11), and held a hearing (Doc. 12). The Court now grants the petition to the extent it seeks an order compelling a prompt bond hearing before an immigration judge ("IJ").

I.     Relevant Background

Petitioner is a native and citizen of El Salvador. (Doc. 1 ¶ 14; Doc. 9-1 at 3 ¶ 4.)

On May 1, 2001, the United States Border Patrol ("USBP") encountered Petitioner at or near Douglas, Arizona. (Doc. 9-1 at 3 ¶ 5.) Petitioner was processed as a voluntary return and returned to Mexico. (*Id.*)

At an unspecified time later in 2001, Plaintiff returned to the United States. (Doc.

20

ER-041

1 ¶ 37 ["Petitioner has resided in the United States for approximately twenty-four years . . . . Petitioner has a prior voluntary return; however, since his entry in 2001, he has had no contact with immigration authorities."].)

On three occasions between 2011 and 2019, Petitioner was convicted of the crime of driving under the influence of alcohol ("DUI") and sentenced to a short jail term followed by a period of probation. (Doc. 9-1 at 3 ¶¶ 6-8.)

On July 2, 2025, Petitioner was arrested outside his home in Los Angeles, California and placed in removal proceedings. (Doc. 1 ¶¶ 38, 39; Doc. 3-2 at 3; Doc. 9-1 at 3 ¶¶ 9, 12.) In the "Notice to Appear," issued that same day, the issuing officer had the option of identifying Petitioner as (1) "an arriving alien"; (2) "an alien present in the United States who has not been admitted or paroled"; or (3) an alien who has "been admitted to the United States, but are removable for the reasons stated below." (Doc. 9-1 at 6.) The issuing officer checked the box indicating that Petitioner is "an alien present in the United States who has not been admitted or paroled." (*Id.*)

A July 8, 2025 policy guidance memorandum issued by the U.S. Department of Homeland Security ("DHS") announced that DHS "has revisited its legal position on detention and release authorities." (Doc. 3-2 at 10.) Under this "revisited" legal position, "[e]ffective immediately, it is the position of DHS that" any "alien present in the United States who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival," should be deemed an "applicant for admission" and thus subject to mandatory detention under 8 U.S.C. § 1225(b). (*Id.*) "For custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated." (*Id.*)

On July 14, 2025, an IJ denied Petitioner's request for bond. (Doc. 9-1 at 3 ¶ 12.) The order stated: "This Court lacks jurisdiction pursuant to Matter of Q Li." (Doc. 9-1 at 10.) The cited decision, *Matter of Q. Li*, 29 I. & N. Dec. 66 (B.I.A. 2025), held that the IJ in that case "lack[ed] jurisdiction to consider the respondent's request for release on bond" because the respondent should be "treated as an applicant for admission" and was "detained

21

under . . . 8 U.S.C. § 1225(b)(2)(A) and thus ineligible for release on bond." *Id.* at 66-68 (cleaned up).

On August 20, 2025, an IJ denied Petitioner's request to reconsider the bond decision. (Doc. 9-1 at 4 ¶ 15.)

II.    Petitioner's Position

Petitioner's overarching argument is that the "[t]he denial of bond hearing to Petitioner and his ongoing detention on the basis of the new DHS policy violates the plain language of the Immigration and Nationality Act . . . .  Despite the new DHS policy's assertions to the contrary, 8 U.S.C. § 1225(b)(2)(A) does not apply to individuals like Petitioner who previously entered and are now residing in the United States.  Instead, such individuals are subject to a different statute, § 1226(a), that allows for release on bond or conditional parole.  Section 1226(a) expressly applies to people who, like Petitioner, are charged as removable for having entered the United States without inspection and being present without admission.  Respondents' new legal interpretation set forth in the policy is contrary to the statutory framework and contrary to decades of agency practice applying § 1226(a) to people like Petitioner who are present within the United States.  Respondents' new policy and the resulting ongoing detention of Petitioner without a bond hearing is depriving Petitioner of statutory and constitutional rights and unquestionably constitutes irreparable injury."  (Doc. 3 at 2-3.)

As relief, Petition seeks an order "enjoining Respondents from continuing to detain him unless Petitioner is provided an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) within seven days."  (*Id.* at 3.)

III.    Jurisdiction-Stripping Arguments

In their response brief, Respondents argue that 8 U.S.C. § 1252(g), § 1252(b)(9), § 1252(e), and/or § 1252(a)(2)(A) "unambiguously strip" this Court of jurisdiction to consider Petitioner's claims.  (Doc. 9 at 1, 4-7.)  However, during oral argument, Respondents withdrew this contention.  Nevertheless, because "Article III generally requires a federal court to satisfy itself of its jurisdiction over the subject matter before it

22

considers the merits of a case," *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999), the Court has an independent duty to determine whether those jurisdiction-stripping provisions apply here. As explained below, they do not. *Barrajas v. Noem*, 2025 WL 2717650, *3 (S.D. Iowa 2025) ("The Federal Defendants argue that sections 1252(g) and (b)(9) preclude this Court from weighing in on active deportation cases, even for the limited purpose of evaluating whether respondents in those proceedings are entitled to bond hearings and other forms of due process. Federal officials have raised this argument in recent months in cases similar to this one. The Court agrees with these well-reasoned decisions and will not repeat their analysis in its entirety.").

First, § 1252(g)[1] "does not preclude jurisdiction over the challenges to the legality of [an alien's] detention." *Kong v. United States*, 62 F.4th 608, 609 (1st Cir. 2023). *See also Hasan v. Crawford*, 2025 WL 2682255, *4 (E.D. Va. 2025) ("Because Hasan's custody proceedings are independent of, and collateral to, the removal process, § 1252(g) does not serve as a jurisdictional bar. Accordingly, the Court finds that it possesses jurisdiction to entertain Hasan's Petition to the extent he challenges the constitutionality of his detention."). Indeed, the Supreme Court has already "rejected as 'implausible' the Government's suggestion that § 1252(g) covers 'all claims arising from deportation proceedings' or imposes 'a general jurisdictional limitation.'" *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.* (*AADC*), 525 U.S. 471, 482 (1999)). Additionally, the Ninth Circuit recently reinforced that "[i]nstead of sweeping in any claim that can technically be said to arise from the three listed actions, the provision refers to just those three specific actions themselves.'" *Ibarra-Perez v. United States.*, __ F.4th __, 2025 WL 2461663, *7 (9th Cir. 2025) (cleaned up) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018)).

Because "the phrase 'arising from' is not 'infinitely elastic,'" it "does not reach 'claims that are independent of, or wholly collateral to, the removal process.'" *Kong*, 62

---

[1]     "[N]o court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders."  8 U.S.C. § 1252(g).

RESTRICTED Case: 26-2105   05/18/2026   DktEntry: 6.1   Page 45 of 110
Case 2:26-cv-01768-MTL--CDB   Document 1-1   Filed 03/15/26   Page 25 of 87
Case 2:25-cv-03252-DWL--ESW   Document 13   Filed 10/03/25   Page 5 of 20

F.4th at 614 (citation omitted). "Among such 'collateral' claims" not subject to the § 1252(g) bar on judicial review are "claims seeking review of the legality of a petitioner's detention." *Id.* Even though, "[i]n a but-for sense," a claim of unlawful detention might arise from the government's decision to commence proceedings, adjudicate a case, or execute a removal, challenges to unlawful detention "do not 'arise from' the government's decision to 'execute removal orders' within the meaning of § 1252(g) simply because the claims relate to that discretionary, prosecutorial decision." *Id.* at 613.

Next, as for § 1252(b)(9),[2] *Ibarra-Perez* reiterated that this provision does not bar claims that are "independent of or collateral to the removal process." *Ibarra-Perez*, 2025 WL 2461663 at *9. Likewise, in *Nielsen v. Preap*, 586 U.S. 392 (2019), the Supreme Court held that § 1252(b)(9) did not bar a lawsuit that, like this one, sought to challenge the government's contention that it was statutorily entitled to detain aliens without a bond hearing during the pendency of their removal proceedings. *Id.* at 402 ("Nor are we stripped of jurisdiction by § 1252(b)(9) . . . [because] respondents here are not asking for review of an order of removal; they are not challenging the decision to detain them in the first place or to seek removal [as opposed to the decision to deny them bond hearings]; and they are not even challenging any part of the process by which their removability will be determined.") (cleaned up). *See also Hasan*, 2025 WL 2682255 at *4 ("Section 1252(b)(9) does not insulate detention orders from judicial review because they are 'separate and apart from' orders of removal.").

Next, § 1252(e) only applies "in any action pertaining to an order to exclude an alien."[3] Here, Petitioner does not seek to challenge an exclusion order and only challenges the denial of a bond hearing.

---

[2]  "Judicial review of all questions of law and fact … arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section."   8 U.S.C. § 1252(b)(9).

[3]  "Without regard to the nature of the action or claim and without regard to the identity of the party or parties bringing the action, no court may enter declaratory, injunctive, other equitable relief in any action pertaining to an order to exclude an alien in accordance with section § 1225(b)(1) of this title except as specifically authorized in a subsequent paragraph of this subsection."  8 U.S.C. § 1252(e)(1)(A).

Finally, for similar reasons, § 1252(a)(2)(A)[4] is inapplicable here. *Padilla v. U.S. Immigration and Customs Enforcement*, 704 F. Supp. 3d 1163, 1170 (W.D. Wash. 2023) ("[T]he Court continues to find that § 1252(a)(2)(A) has no application to Plaintiffs' claims. This provision only applies to the procedures and policies necessary to implement the removal process. Here, Plaintiffs' bond hearing claims do not challenge the removal process—just whether they should be afforded a bond hearing . . . .").

IV.    Whether Petitioner Is Subject To Mandatory Detention Under § 1225(b)(2)(A) Or Is Entitled To A Bond Hearing Under § 1226(a)

Under 8 U.S.C. § 1225(b)(2)(A), and absent exceptions that are inapplicable here, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal] proceeding." *Id.* Respondents contend that Petitioner qualifies an "applicant for admission" for purposes of this provision, even though he has never formally applied for admission, by operation of law under § 1225(a)(1), which provides: "An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission." *Id.* Petitioner disagrees, arguing that the question of his detention is governed not by § 1225(b)(2)(A) but by § 1226(a), which provides, in pertinent part, that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General . . . may continue to detain the arrested alien; and . . . may release the alien on . . . bond of at least $1,500 with security approved by, and

---

[4]    "Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to review—(i) except as provided in subsection (e), any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1) of this title . . . ."  8 U.S.C. § 1252(a)(2)(A).

25

containing conditions prescribed by, the Attorney General; or . . . conditional parole." *Id.*

In recent months, many district courts across the country have grappled with the same issue, and it appears that all but one of them has rejected Respondents' position and concluded that an alien in Petitioner's situation (*i.e.*, an alien who entered the United States without inspection, never formally applied for admission, and has been living in the United States for years or decades) is entitled to a bond hearing under § 1226(a). *See, e.g., Hasan*, 2025 WL 2682255 at *9 ("For all these reasons, . . . Hasan's detention is governed by § 1226(a)'s discretionary framework, not § 1225(b)'s mandatory detention procedures."); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1261 (W.D. Wash. 2025) ("Rodriguez has shown that the text of Section 1226, canons of interpretation, legislative history, and longstanding agency practice indicate that he is governed under Section 1226(a)'s 'default' rule for discretionary detention. The Court is persuaded that Rodriguez is likely to succeed on the merits that he is unlawfully detained under Section 1225(b)(2)'s mandatory detention provision."); *Pizarro Reyes v. Raycraft*, 2025 WL 2609425, *7 (E.D. Mich. 2025) ("The BIA's decision to pivot from three decades of consistent statutory interpretation and call for Pizarro Reyes' detention under § 1225(b)(2)(A) is at odds with every District Court that has been confronted with the same question of statutory interpretation. At least a dozen federal courts concur generally with this Court's interpretation of the statutory language as applied in this context."); *Barrera v. Tindall*, 2025 WL 2690565, *5 (W.D. Ky. 2025) ("Courts across the country have been faced with similar questions of law and fact presented by the United States. And *every court* who has examined this novel interpretation of Section 1225 by the United States has rejected their theory and adopted Petitioner's. This includes courts within the Sixth Circuit, and across the country."); *Vazquez v. Feeley*, 2025 WL 2676082, *16 (D. Nev. 2025) ("In sum, the Court finds that the text and canons of statutory interpretation, including the legislative history, regulations, and long history of consistent agency practice, as well as the doctrine of constitutional avoidance, demonstrate that Petitioner is likely to succeed in establishing he and similarly situated noncitizens are subject to detention under § 1226(a) and its implementing

26

RESTRICTED Case: 26-2105 05/18/2026 DktEntry: 6.1 Page 48 of 110
Case 2:26-cv-01768-MTL--CDB Document 1-1 Filed 03/15/26 Page 28 of 87
Case 2:25-cv-03252-DWL--ESW Document 13 Filed 10/03/25 Page 8 of 20

regulations, not § 1225(b)(2)(A)."). The one apparent exception is *Chavez v. Noem*, 2025 WL 2730228 (S.D. Cal. 2025), which recently concluded that "aliens present in the United States who have not been admitted" are, "[b]y the plain language of § 1225(a)(1), . . . 'applicants for admission' and thus subject to the mandatory detention provisions of 'applicants for admission' under § 1225(b)(2)." *Id.* at *4 (cleaned up).

The Court has carefully reviewed those decisions and, for the reasons set forth below, agrees with the majority of courts that have concluded that § 1226(a), rather than § 1225(b)(2)(A), applies in this circumstance. The Court clarifies, however, that it views this issue as presenting a complicated and debatable question. Indeed, Respondents' presentation during oral argument has persuaded the Court to substantially revise the reasoning in the tentative ruling that was issued before oral argument.

Turning to the merits, the parties' dispute is fundamentally a dispute about statutory interpretation. It is a truism that such "analysis begins with the language of the statute," *Esquivel-Quintana v. Sessions*, 581 U.S. 385, 391 (2017), and Respondents' position appears, at first blush, to be consistent with this principle. Respondents simply point to § 1225(a)(1)'s specification that "[a]n alien present in the United States who has not been admitted . . . shall be deemed for purposes of this chapter an applicant for admission" and argue that such an alien is therefore an "applicant for admission" for purposes of § 1225(b)(2)(A)'s detention mandate. Although this approach has surface appeal, the Court perceives at least two problems with it: first, it ignores some of the additional requirements imposed by § 1225(b)(2)(A); and second, it fails to account for the broader statutory scheme, particularly in light of how that broader scheme has been interpreted by the Supreme Court.

### A.    Section 1225(b)(2)(A)

Even assuming Petitioner is deemed an "applicant for admission" by operation of law under § 1225(a)(1), it doesn't necessarily follow that § 1225(b)(2)(A) would govern the question of Petitioner's detention during a removal proceeding. As noted, § 1225(b)(2)(A), which falls under the heading "Inspection of Other Aliens," provides that

27

"in the case of an alien who is an applicant for admission, *if the examining immigration officer* determines that an alien *seeking admission* is *not clearly and beyond a doubt entitled to be admitted*, the alien shall be detained for a proceeding under section 1229a of this title." *Id.* (emphases added).

The first and third italicized phrases require Petitioner to have undergone an inspection by an "examining immigration officer," who in turn made a finding that Petitioner is "not clearly and beyond a doubt entitled to be admitted." Respondents' brief makes no effort to address these requirements. Other courts have identified this as a flaw in Respondents' position. *See, e.g., Lepe v. Andrews*, 2025 WL 2716910, *4 (E.D. Cal. 2025) ("As other courts have concluded, for section 1225(b)(2)(A) to apply, several conditions must be met—in particular, an 'examining immigration officer' must determine that the individual is: (1) an 'applicant for admission'; (2) 'seeking admission'; and (3) 'not clearly and beyond a doubt entitled to be admitted.' As an initial matter, respondents have failed to show in this case that an 'examining immigration officer' made these determinations. The government points solely to the Notice to Appear issued on July 1, 2025. But that document does not contain any such findings by the immigration officer.") (citations omitted).

If the outcome turned solely on this issue, the Court might solicit supplemental briefing from the parties. On the one hand, the record reveals that on July 2, 2025, Petitioner was "brought into custody" by "ICE/ERO[5] along with DEA" (Doc. 9-1 at 2 ¶ 9) and that during that encounter, "ICE/ERO Officers . . . . conducting an investigation . . . conducted a field interview to determine [Petitioner's] removability and alienage" and made a determination that Petitioner "is amenable to removal" (Doc. 3-2 at 2-5). The document memorializing this encounter, known as a Form I-213, contains a signature block indicating that it was completed by an "Examining Officer." (*Id.* at 2.) Although the form does not contain the magic words "not clearly and beyond a doubt entitled to be admitted,"

---

[5]  "ERO" stands for Enforcement and Removal Operations. *See* https://www.ice.gov/about-ice/ero.

28

ER-049

RESTRICTED Case: 26-2105 05/18/2026 DktEntry: 6.1 Page 50 of 110
Case 2:26-cv-01768-MTL--CDB Document 1-1 Filed 03/15/26 Page 30 of 87
Case 2:25-cv-03252-DWL--ESW Document 13 Filed 10/03/25 Page 10 of 20

the formal "Charge[] of Removability," which states that Petitioner "makes no claim/appears to have no claim to USC [United States citizenship] and is amendable to removal under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act" (*id.* at 5), may functionally operate as such a finding. Thus, it might be argued that this document constitutes proof that an "examining immigration officer" performed an inspection and made the finding required by § 1225(b)(2)(A).

On the other hand, some courts have questioned whether an ICE/ERO officer conducting removal operations qualifies as the sort of "examining immigration officer" contemplated by § 1225(b)(2)(A). *Jimenez v. FCI Berlin, Warden*, 2025 WL 2639390, *7 (D.N.H. 2025) ("With respect to the requirements that the 'examining immigration officer' conduct an 'inspection' of the person, 'examination' is not an unbounded concept. Rather, it is the specific legal process one undergoes while trying to enter the country. Not every encounter with an immigration officer necessarily constitutes an examination or inspection under section 1225.") (cleaned up). Indeed, § 1225(b) is entitled "Inspection of Applicants for Admission" and § 1225(a)(3), entitled "Inspection," provides that "[a]ll aliens (including alien crewmen) who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers." Such verbiage suggests that the sort of "inspection" contemplated by § 1225(b)(2)(A) is an inspection by an examining immigration officer that occurs at the time an alien first applies for or otherwise seeks admission to the United States—not an encounter with an ICE/ERO officer 24 years later.

At any rate, the Court concludes that further briefing on this issue is unnecessary because the second italicized phrase above in § 1225(b)(2)(A), which presupposes that the inspection occurred at a time when the applicant for admission was "seeking admission," poses a bigger obstacle to Respondents' position. The word "seeking" is the present participle of the verb "seek." It thus has a temporal element—Petitioner must have been in the process of seeking admission at the time of the inspection. *United States v. Balint*, 201 F.3d 928, 933 (7th Cir. 2000) ("[U]se of . . . the present participle, or '-ing' form of

29

ER-050

an action verb, generally indicates continuing action.").

It is hard to see how Petitioner could be deemed to have been "seeking" admission at the time of the encounter on July 2, 2025. By that point, Petitioner had already been present in the United States for 24 years, having arrived and entered in 2001. (Doc. 1 ¶ 37.) Moreover, under Respondents' interpretation of § 1225(a)(1), Petitioner became an "applicant for admission" in 2001, upon his arrival and entry. (Doc. 3-2 at 10 [DHS memo: "An 'applicant for admission' is an alien present in the United States who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival."]; Doc. 9 at 7 ["Section 1225 applies to 'applicants for admission' such as Petitioner, who are defined as 'alien[s] present in the United States who [have] not been admitted' or 'who arrive[] in the United States.'"].) Implicit in Respondents' position, then, is that Petitioner somehow existed in a perpetual state of "seeking" admission during the 24-year period between when he first became an "applicant for admission" in 2001, by virtue of his entry into the country, and when he was encountered and inspected by an immigration officer in 2025.

This logic is difficult to reconcile with *Torres v. Barr*, 976 F.3d 918 (9th Cir. 2020) (en banc). There, the plaintiff was charged with being removable under a provision of the Immigration and Nationality Act ("INA") that renders inadmissible any alien who is not in possession of certain valid immigration documents "at the time of application for admission." *Id.* at 924 (citation omitted). A prior court had ruled that if an alien lacks such documents at the time the alien is deemed by operation of law under § 1225(a)(1) to be an "applicant for admission," the alien "should therefore be deemed to have made an actual application for admission." *Id.* at 927 (emphasis omitted). *Torres* reversed, explaining that this approach improperly "conflated the term 'applicant for admission' from § 1225(a)(1) with the term 'application for admission' in § 1182(a)(7)." *Id.* The court emphasized that the phrase "at the time of application for admission" refers "to the particular point in time when a noncitizen submits an application to physically enter into the United States." *Id*. at 924. In the course of reaching this conclusion, the court rejected

30

ER-051

the government's argument "that even if 'the time of application for admission' begins at the moment when an immigrant applies to enter the country, this moment *continues*, potentially for years or decades, until the immigrant appears before the IJ in removal proceedings." *Id.* at 926. The court explained: "Given that an immigrant submits an 'application for admission' at a distinct point in time, stretching the phrase 'at the time of application for admission' to refer to a period of years would push the statutory text beyond its breaking point." *Id.*

Here, too, it would seem to push the statutory text beyond its breaking point to conclude that Plaintiff became an "applicant for admission" by operation of law in 2001, due to his arrival in the United States at that time, yet was still "seeking admission" 24 years later. Other courts have reached similar conclusions. *See, e.g., Vazquez*, 2025 WL 2676082 at *12-13 ("To reiterate, § 1225(b)(2)(A) narrows the above broader definition of 'applicants for admission' and applies in the context of (1) 'inspection' by an 'examining immigration officer' only to (2) 'applicants for admission' as defined [in § 1225(a)(1)], who are (3) 'seeking admission,' and (4) whom § 1225(b)(1) does not address. Respondents assert that this definition of 'applicant for admission' is the key provision . . . . [b]ut as the Ninth Circuit held in interpreting the phrase 'applicant for admission' within the context of the application of § 1225(b)(1) to a noncitizen who was placed in expedited removal proceedings thirteen years after entry, an immigrant submits an 'application for admission' at a distinct point in time and stretching the phrase to continue potentially for years or decades would push the statutory text beyond its breaking point . . . . Moreover, Respondents' sweeping and unlimited reading of 'applicants for admission' ignores the fact that that term is further limited in § 1225(b)(2) by the active construction of the phrase 'seeking admission' which entails some kind of affirmative action taken to obtain authorized entry.") (citations omitted); *Jimenez*, 2025 WL 2639390 at *8 ("The government's assertion that § 1225 applies to all applicants for admission would also read out of § 1225(b)(2)(A) the requirement that the noncitizen be 'seeking admission.' This phrase, to the extent possible, must be given meaning independent of the

31

requirement that the person be an applicant for admission. . . .  Because § 1225(b)(2)(A) applies to applicants for admission who are seeking to enter the United States, it cannot apply to Jimenez, who has already entered the country and has been residing here for over two years.") (citations omitted); *Romero v. Hyde*, 2025 WL 2403827, *10 (D. Mass. 2025) ("[I]t is at least clear that 'applicant for admission' and 'seeking admission' are not synonymous.  Nevertheless, one might try to argue (as Respondents have) that all 'applicants for admission' are necessarily (and continuously) 'seeking admission,' so long as they continue to exist in the United States.  This is an obvious violation of the rule against surplusage.  It also goes against the plain, ordinary meaning of the words 'seeking' and 'admission.'") (citations omitted).

    B.    **The Broader Statutory Scheme**

Putting aside these textual problems with Respondents' position, Respondents' narrow focus on § 1225(a)(1) also ignores the complexities of interpreting the INA, a "dense statute" whose "complex provisions . . . have provoked comparisons to a morass, a Gordian knot, and King Minos's labyrinth in ancient Crete" and which must be interpreted "against the backdrop of our constitutional principles, administrative law, and international treaty obligations.  Divining its meaning is ordinarily not for the faint of heart." *Torres*, 976 F.3d at 923 (cleaned up).  To that end, "[i]n determining whether Congress has specifically addressed the question at issue, the court should not confine itself to examining a particular statutory provision in isolation.  Rather, it must place the provision in context, interpreting the statute to create a symmetrical and coherent regulatory scheme." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 121 (2000). *See also Roberts v. Sea-Land Services, Inc.*, 566 U.S. 93, 101-02 (2012) ("Statutory language . . . cannot be construed in a vacuum.  It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.") (cleaned up).

Several recent decisions by the Supreme Court provide guidance in understanding this context.  In its 2018 decision in *Jennings*, the Supreme Court addressed "the proper

32

interpretation of §§ 1225(b), 1226(a), and 1226(c)." *Jennings*, 583 U.S. at 289. The Court held: "In sum, U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Id.* Elsewhere, the Court characterized § 1226(a) as the "default rule" governing "the process of arresting and detaining" aliens who are already "*inside the United States*." *Id.* at 288 (emphasis added). Later, the Court added: "*§ 1226 applies to aliens already present in the United States*. Section 1226(a) creates a default rule for those aliens . . . ." *Id.* at 303 (emphasis added). Accepting Respondents' position would turn those statements on their head.

Similarly, in its 2019 decision in *Nielsen*, the Supreme Court reiterated that § 1226(a) "applies to most [deportable] aliens," "sets out the general rule regarding their arrest and detention pending a decision and removal," and creates a default rule that "[a]liens who are arrested because they are believed to be deportable may generally apply for release on bond or parole while the question of their removal is being decided." *Nielsen*, 586 U.S. at 395, 397. Again, those statements would not make sense under Respondents' new interpretation. Notably, during oral argument, Respondents were unable to identify any class of aliens whose detention would be governed by § 1226(a), rather than § 1225(b)(2)(A), if Respondents' new interpretation were adopted. Such an outcome would conflict with *Nielsen*'s observation that § 1226(a) applies to "most" deportable aliens and *Jennings*'s observation that § 1226(a) provides the "default rule" governing the detention of aliens "inside the United States" or "already present in the United States."[6]

On the other hand, the Court acknowledges that *Torres* suggests that the enactment of § 1225(a)(1) may have been intended to achieve a more consequential alteration of the scope and structure of the INA than *Jennings* and *Nielsen* seem to contemplate. The

---

[6]    To that end, even assuming § 1226(a) would still apply under Respondents' new interpretation to small, discrete groups of aliens, it still would not apply to "most" deportable aliens in the manner that *Nielsen* contemplates or provide the "default rule" that *Jennings* contemplates.

33

question of statutory interpretation addressed in *Torres* was different than the question presented here—as discussed in detail above, *Torres* "construe[d] the meaning of the phrase 'at the time of application for admission'" and "conclude[d] that the phrase refers to the particular point in time when a noncitizen submits an application to physically enter into the United States." *Torres,* 976 F.3d at 924. Nevertheless, in the course of interpreting that phrase, the court also discussed "the phrase 'applicant for admission,'" which it deemed "a term of art denoting a particular legal status, as the history of its enactment makes clear." *Id.* at 927. The court continued:

> Section 1225(a)(1) was added to the INA as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA). Prior to the passage of IIRIRA, immigration law . . . created an anomaly whereby immigrants who were attempting to lawfully enter the United States were in a worse position than persons who had crossed the border unlawfully. IIRIRA did away with this entry doctrine . . . anomaly. . . . [M]ost importantly for our purposes, IIRIRA added § 1225(a)(1). This provision ensures that all immigrants who have not been lawfully admitted, regardless of their physical presence in the country, are placed on equal footing in removal proceedings under the INA—in the position of an "applicant for admission." Now, in removal proceedings, the relevant distinction for procedural purposes is whether the immigrant has been lawfully admitted, regardless of actual physical presence.

*Id.* at 927-28 (cleaned up). As *Chavez* notes, this passage can be viewed, at least in isolation, as consistent with Respondents' position. *Chavez,* 2025 WL 2730228 at *4 (citing *Torres* in support of the conclusion that the government's "reading of the statute comports with Congress' addition of § 1225(a)(1) by IIRIRA in 1996" and stating that a contrary conclusion "would in effect repeal that statutory fix intended by Congress in enacting IIRIRA").

An added difficulty in determining how to reconcile and apply these precedents is that none of them addressed the precise issue of statutory interpretation presented in this case. *Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."); *Sloan v. State Farm Mut. Auto.*

34

*Ins. Co.*, 360 F.3d 1220, 1231 (10th Cir. 2004) ("[C]ases are not authority for propositions not considered.") (internal quotation marks omitted). Even so, a "lower federal court . . . [is] advised to follow the Supreme Court's considered dicta" and "afford them a weight that is greater than ordinary judicial dicta as a prophecy of what the Court might hold." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 841 n.4 (9th Cir. 2020) (cleaned up).

Ultimately, the Court concludes that it must give the most credence to *Jennings* and *Nielsen* when evaluating whether Respondents' position is consistent with the entire statutory scheme. Both of those cases, unlike *Torres*, specifically addressed the question of detention and bond hearings during removal proceedings. Additionally, *Jennings* addressed how §§ 1225 and 1226 fit together in that context. The Court simply cannot see how it could adopt Respondents' position without running afoul of *Jennings*'s reasoning. *Nat. Institutes of Health v. Am. Public Health Ass'n*, 145 S. Ct. 2658, 2663-65 (2025) (Gorsuch, J., concurring in part and dissenting in part) ("[A] precedent of this Court must be followed by the lower federal courts . . . . [W]hen this Court issues a decision, it constitutes a precedent that commands respect in lower courts. . . . [R]egardless of a decision's procedural posture, its reasoning—its ratio decidendi—carries precedential weight in future cases. . . . [J]udges are duty-bound to respect the hierarchy of the federal court system created by the Constitution and Congress.") (cleaned up).

*Torres*, in contrast, did not cite § 1226 or mention the concept of detention or bond hearings. Additionally, Ninth Circuit cases decided after *Torres* reiterate, consistent with *Jennings* and *Nielsen*, that aliens who are "present" in the United States are, as a general rule, entitled to a bond hearing under § 1226(a). *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196-97 (9th Cir. 2022) ("The provision at issue in this case, 8 U.S.C. § 1226, provides the general process for arresting and detaining aliens who are present in the United States and eligible for removal. . . . Under § 1226(a) and its implementing regulations, a detainee may request a bond hearing before an IJ at any time before a removal order becomes final. . . . Additional provisions supplement § 1226's detention scheme. Section 1225(b) applies to an 'applicant for admission' . . . .") (citations omitted). Again, it would make no sense for

35

*Rodriguez Diaz* to have characterized § 1225(b) as a "supplement" to § 1226's "detention scheme" if, as Respondents now contend, § 1225(b)(2)(A) actually provides for mandatory detention in all (or nearly all) cases involving aliens present in the United States.[7]

The Court thus concludes, as have many other courts addressing the same issue, that Respondents' narrow focus on the language of § 1225(a)(1) fails to take account of the entirety of the statutory scheme. For example, in *Giron Reyes v. Lyons*, 2025 WL 2712427 (N.D. Iowa), the court acknowledged that the government's interpretation of §§ 1225(a)(1) and 1225(b)(2)(A) was "intuitive" when the statutory language was read "in isolation" but concluded that the government's interpretation nevertheless failed to carry the day because when § 1225 was considered "alongside its § 1226 companion," this comparison "demonstrates that the most natural interpretation of § 1225 is that it applies to aliens encountered as they are attempting to enter the United States or shortly after they gained entry without inspection. Section 1225 repeatedly refers to aliens entering the country. The statute further explicitly addresses 'crewm[e]n' and 'stowaway[s]' in § 1225(b)(2), reflecting that Congress envisions applicants for admission as being arriving aliens. In addition, its sister statute, 8 U.S.C. § 1225a, focuses on the pre-inspection of aliens entering the country at foreign airports. In sum, § 1225 is set up with arriving aliens in mind. Compare that to § 1226's broader language that realistically applies to any alien awaiting a removal decision. Considering § 1225 in its entirety, and in relation to § 1226, reveals that § 1225 is more limited than what that plain text of § 1225(a)(1) might indicate when

---

[7] Many other courts agree that Respondents' position conflicts with *Jennings* and other relevant Supreme Court precedents. *See, e.g., Hasan*, 2025 WL 2682255 at *8 ("[T]he federal respondents' theory contradicts how the Supreme Court has traditionally construed the relationship between §§ 1225(b) and 1226(a). In *Jennings*, the Court explained that § 1225(b) governs 'aliens seeking admission into the country' whereas § 1226(a) governs 'aliens already in the country' who are subject to removal proceedings. This distinction makes sense in the broader context of U.S. immigration law. Indeed, the distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law. For those who have already entered to United States, the [Supreme] Court has recognized additional rights and privileges not extended to those in the former category who are merely on the threshold of initial entry.") (citations omitted); *Barrajas*, 2025 WL 2717650 at *5 ("The Supreme Court itself has recognized the difference between §§ 1225 and 1226. . . . Thus, even if principles of statutory interpretation did not defeat the Federal Defendants' position (which they do), the Court would be obligated to follow the Supreme Court's guidance anyway.").

36

RESTRICTED Case: 26-2105  05/18/2026  DktEntry: 6.1  Page 58 of 110
Case 2:26-cv-01768-MTL--CDB  Document 1-1  Filed 03/15/26  Page 38 of 87
Case 2:25-cv-03252-DWL--ESW  Document 13  Filed 10/03/25  Page 18 of 20

construed in the abstract." *Id.* at *4-6.

### C.     **Further Considerations**

The additional points raised by Respondents during oral argument do not compel a different conclusion.

Respondents placed heavy emphasis on what they deemed "public policy" considerations, arguing that it would be preferable to have an immigration system in which aliens who enter the country without inspection and evade detection for years or decades are not effectively treated more favorably, at least for detention purposes, than other aliens. But such arguments are directed to the wrong branch of government—the Court's role is simply to interpret the relevant statutory provisions. *Manufacturers Hanover Tr. Co. v. C.I.R.*, 431 F.2d 664, 668 (2d Cir. 1970) ("[I]t transcends the judicial function to rewrite the statute to conform to considerations of policy. If the facts of this case demonstrate a . . . loophole Congress, not the courts, should plug it.") (cleaned up).

Respondents also suggested that because the INA vests the Attorney General with significant discretion when it comes to the enforcement of the immigration laws, Respondents' new interpretation of the relevant statutes should be reviewed deferentially. But as the Supreme Court recently emphasized, "courts must exercise independent judgment in determining the meaning of statutory provisions" and "need not . . . defer to an agency interpretation of the law simply because a statute is ambiguous." *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 394, 413 (2024). This is particularly true where the agency adopted the opposite interpretation for nearly three decades. *Pizarro Reyes*, 2025 WL 2609425, at *8 ("For almost three decades, most noncitizens who entered without inspection that were placed in standard removal proceedings received bond hearings, unless subject to an exception. Accordingly, the Respondents' proposed statutory interpretation does not align with the executive branch's contemporaneous guidance when the IIRIA passed or with the expectations the guidance established.").

The bottom line is that Petitioner is entitled to a bond hearing under § 1226(a) as a matter of statutory construction, albeit statutory construction that is complicated and not

37

entirely free of doubt.[8]

### V.        Respondents' Remaining Arguments

Respondents advance a variety of reasons why Petitioner's continued detention without a bond hearing would not violate his due process rights. (Doc. 9 at 9-11.) Respondents also contend that Petitioner cannot seek relief under the Administrative Procedure Act ("APA"). (*Id.* at 12-13.) It is unnecessary to reach those arguments because the analysis in the preceding section of this order demonstrates that Petitioner is entitled to relief on Count One, which is a claim that his "Detention is in Violation of 8 U.S.C. § 1226(a)." (Doc. 1 ¶¶ 42-44.) This obviates the need to decide whether Petitioner is also entitled to relief based on his due process-based claim in Count Two or his APA claim in Count Three. *Pizarro Reyes*, 2025 WL 2609425 at *8 ("The Court will decline to decide the merits of Pizarro Reyes' due process claim given that the Court will grant the relief he seeks based on its interpretation of the applicability of § 1226(a).").

Respondents also contend that Petitioner's claims should be rejected because they are "improper habeas claims" and do not "sound[] in habeas jurisdiction" (Doc. 9 at 11-12.) In support, Respondents rely on *Pinson v. Carvajal*, 69 F.4th 1059 (9th Cir. 2023). (*Id.*) This argument is unavailing. True, *Pinson* holds that "release from confinement is the only available remedy for claims at the writ's core" and that "the relevant question is whether, based on the allegations in the petition, release is legally required irrespective of the relief requested." *Id.* at 1070, 1072. The Court thus interprets Respondents' brief as suggesting that because Petitioner is merely demanding a bond hearing—which will not necessarily result in his release from custody—his claims fall outside the scope of habeas jurisdiction. But any such argument is foreclosed by *Doe v. Garland*, 109 F.4th 1188 (9th Cir. 2024), which held that a similar request fell within *Pinson*'s "core of habeas." *Id.* at 1194 ("Doe relies primarily on *Pinson* and *Nettles* for the proposition that, because he did

---

[8]        Given these determinations, it is unnecessary to wade into some of the additional reasons that courts have provided for rejecting Respondents' position, which include that the position is inconsistent with the recent amendment to § 1226 as part of the Laken Riley Act and inconsistent with the relevant legislative history materials.

not challenge the underlying legal basis for his detention, but rather sought a process remedy in the form of a bond hearing, it follows that his petition falls within the 'core of habeas' as defined in *Pinson* . . . . We are unpersuaded that either of those cases support such a conclusion.").[9]

Last, Respondents advance a variety of arguments regarding the standards for granting temporary or preliminary injunctive relief. (Doc. 9 at 13-16.) But it is unnecessary to address those arguments now that Plaintiff's request for a preliminary injunction has been consolidated with a trial on the merits, as permitted by Rule 65(a)(2).

Accordingly,

**IT IS ORDERED** that:

1. Pursuant to Federal Rule of Civil Procedure 65(a), the decision on Petitioner's Motion for Preliminary Injunction (Doc. 2) is consolidated with the merits. Post-consolidation, Petitioner's Motion for Preliminary Injunction (Doc. 2) is **granted**.

2. Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) is **granted** as to Ground One. The Petition is otherwise denied without prejudice as moot.

3. Respondents must provide Petitioner a bond redetermination hearing within seven days or otherwise release him from custody under the same conditions that existed before his detention.

4. Respondents must provide a Notice of Compliance within seven days of providing Petitioner with a bond redetermination hearing.

5. The Clerk shall enter judgment in Petitioner's favor and close this case.

Dated this 3rd day of October, 2025.

Dominic W. Lanza
United States District Judge

---

[9] In their response brief, Respondents also cited *Castaneda v. Souza*, 810 F.3d 15 (1st Cir. 2015) (en banc), for the proposition that "Petitioner is not entitled to a bond hearing" in light of 8 U.S.C. § 1226(c). (Doc. 9 at 12.) However, during oral argument, Respondents withdrew this argument.

39

# EXHIBIT 4

40

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—
GENERAL

| Case No. | 5:25-cv-01873-SSS-BFM | Date | February 18, 2026 |
|---|---|---|---|
| Title | Lazaro Maldonado Bautista et al. v. Ernesto Santacruz Jr et al. | | |

Present: The Honorable    SUNSHINE S. SYKES, UNITED STATES DISTRICT JUDGE

| Irene Vazquez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

Proceedings:    (IN CHAMBERS) ORDER GRANTING PLAINTIFF
PETITIONERS' MOTION TO ENFORCE JUDGMENT
[DKT. NO. 107]

"The accumulation of all powers, legislative, executive, and judiciary, in the same hands, whether of one, a few, or many, and whether hereditary, self-appointed, or elective, may justly be pronounced the very definition of tyranny."

The Federalist No. 47, at 324
(James Madison) (J. Cooke ed.1961)

*                    *                    *

On June 8, 2025, the Department of Homeland Security ("DHS") issued a Press Release accusing "California politicians and rioters" of "defending heinous illegal noncitizen[1] criminals at the expense of Americans safety." Press Release,

---

[1] This Order uses the term "noncitizenship" in place of "alienage" and "noncitizen" in place of "alien." The Court follows the U.S. Supreme Court and Ninth Circuit, where the use of the term "noncitizen" has become a common practice. See Patel v. Garland, 596 U.S. 328 (2022) (Barrett, J.); United States v. Palomar-Santiago, 593 U.S. 321 (2021) (Sotomayor, J.); Barton v. Barr, 590 U.S. 222, 226 n.2, (2020) (Kavanaugh, J.) ("This opinion uses the term 'noncitizen' as

ER-062

RESTRICTED Case: 26-2105   05/18/2026   DktEntry: 6.1   Page 63 of 110
Case 2:26-cv-01768-MTL--CDB   Document 1-1   Filed 03/15/26   Page 43 of 87
Case 5:25-cv-01873-SSS-BFM   Document 116   Filed 02/18/26   Page 2 of 22   Page ID
#:2073

U.S. Dep't of Homeland Security, *ICE Captures Worst of the Worst Illegal [Noncitizen] Criminals in Los Angeles Including Murderers, Sex Offenders, and Other Violent Criminals*, (June 8, 2025), [https://perma.cc/Y6NC-RZUZ]. In recounting the operations by Immigrations and Customs Enforcement ("ICE") in Los Angeles, California, that same Press Release reported that ICE arrested "some of the worst of the worst criminal illegal noncitizens." *Id.*

In the days, weeks, and now months following this initial Press Release, DHS has issued many more similar press releases.[2] These Press Releases repeat

equivalent to the statutory term 'alien.'" (citing 8 U.S.C. § 1101(a)(3))); *Avilez v. Garland*, 69 F.4th 525 (9th Cir. 2023); *Arce v. United States*, 899 F.3d 796 (9th Cir. 2018). Additionally, this Court thinks it is prudent to "avoid language that reasonable readers might find offensive or distracting—unless the biased language is central to the meaning of the writing." *Chicago Manual of Style Online* 5.253, https://www.chicagomanualofstyle.org/book/ed17/part2/ch05/psec253.html. As noted by the Ninth Circuit, "[t]he word alien can suggest 'strange,' 'different,' 'repugnant,' 'hostile,' and 'opposed[.]'" *Avilez*, 69 F.4th at 527 n.1 (citing *Alien*, *Webster's Third New International Dictionary* 53 (2002)). Accordingly, because the word "noncitizen" is synonymous and does not encompass such negative connotations, the Court finds "noncitizen" is a better word choice. *See Alien* and *Noncitizen*, *American Heritage Dictionary of English Language* 44, 1198 (5th ed. 2011).

[2] Although the following list is non-exhaustive, *see e.g.*: Press Release, U.S. Dep't of Homeland Security, *ICE Continues to Arrest Vicious Illegal [Noncitizen] Criminals as Rioters Continue to Disrupt Law Enforcement*, (June 9, 2025), [https://perma.cc/5TK6-666D]; Press Release, U.S. Dep't of Homeland Security, *DHS Reveals More Heinous Criminal Illegal [Noncitizens] Including a Murderer, Pedophile, and Drug Traffickers Arrested during Los Angeles Operation*, (June 11, 2025), [https://perma.cc/7SHG-THXX]; Press Release, U.S. Dep't of Homeland Security, *Since DHS Immigration Enforcement in Los Angeles Began, Border Crossings Continue to Plummet*, (June 24, 2025), [https://perma.cc/YJ4Z-ZLTN]; Press Release, U.S. Dep't of Homeland Security, *ICE Arrests Worst of the Worst Criminal Illegal [Noncitizens] Who Victimized Americans*, (July 16, 2025), [https://perma.cc/XR22-NZ8A]; Press Release, U.S. Dep't of Homeland Security, *Despite Riots and Assaults, ICE and Border Patrol Arrest Worst of the Worst Criminal Illegal [Noncitizens] Including Rapists, Gang Members, Murderers, and Pedophiles in Los Angeles*, (Aug. 27, 2025), [https://perma.cc/6QKG-5HZ5] [hereinafter, "August 27, 2025 Press Release"]; Press Release, U.S. Dep't of Homeland Security, *More Than 10,000 Illegal [Noncitizens] Arrested in Sanctuary*

RESTRICTED Case: 26-2105 05/18/2026 DktEntry: 6.1 Page 64 of 110
Case 2:26-cv-01768-MTL--CDB Document 1-1 Filed 03/15/26 Page 44 of 87
Case 5:25-cv-01873-SSS-BFM Document 116 Filed 02/18/26 Page 3 of 22 Page ID #:2074

rhetoric suggesting ICE operations are limited to the "worst of the worst": criminal noncitizens. *Id.*

Even though "[d]eportation is not a criminal proceeding," *Carlson v. Landon*, 342 U.S. 524, 538 (1952), DHS has issued the following statements in its Press Releases:

- "DHS law enforcement has made over 5,000 arrests in Los Angeles. That's more than 5,000 criminal illegal [noncitizens]."[3]

- "U.S. Customs and Border Protection (CBP) and Immigration and Customs Enforcement (ICE) have made more than 10,000 arrests of illegal [noncitizens]—including murderers, kidnappers, sexual predators, and armed carjackers—in Los Angeles, California since June 2025."[4]

"Worst of the worst" is an inaccurate description of most of those affected by DHS and ICE's operations. Perhaps in utilizing this extreme language DHS seeks to justify the magnitude and scope of its operations against non-criminal noncitizens. Maybe that phrase merely mirrors the severity and ill-natured conduct by the Government. Even though these press releases might contain an inkling of truth, they ignore a greater, more dire reality.

Americans have expressed deep concerns over unlawful, wanton acts by the executive branch. It is not the "worst of the worst" that are swept into the nationwide and reckless violations of the law by the executive branch. In the past weeks, the Government detained Adrian Conejo Arias and his five-year-old son without a valid warrant. [*See* Dkt. No. 9 in *Adrian Conejo Arias v. Kristen Noem et al.*, Case No. 5:26-cv-00415-FB (W.D. Tex. Jan. 31, 2026)]. Beyond its terror against noncitizens, the executive branch has extended its violence on its own

---

*Los Angeles Since DHS Launched Operations in June*, (Dec. 11, 2025), [https://perma.cc/6LV9-G65C] [hereinafter, "December 11, 2025 Press Release"]; Press Release, U.S. Dep't of Homeland Security, *ICE Arrests 118 Illegal [Noncitizens] Including Pedophiles, Burglars, Domestic Abusers, and Serial Drunk Drivers in California Surge Operation*, (Jan. 5, 2026), [https://perma.cc/6XKB-DPJC].

[3] *See* August 27, 2025 Press Release.

[4] *See* December 11, 2025 Press Release.

citizens, killing two American citizens— Renée Good and Alex Pretti—in Minnesota.

The threats posed by the executive branch cannot be viewed in isolation. Consider the undisputed facts of this case. [Dkt. No. 42 at 22; Dkt. No. 60 at 16].

## I.    BACKGROUND

Lazaro Maldonado Bautista has no criminal record and has lived in Los Angeles, California for approximately four years. [Dkt. No. 15 ¶¶ 56, 57, "Class Complaint"]. He has worked at the same company since 2021 and carries deep ties to Southern California, with "several U.S. citizen family members who live in the area." [*Id.* ¶ 57]. Despite his background, DHS and ICE arrested Bautista on June 6, 2025, as part of a concerted immigration operation in Los Angeles. [*Id.* ¶ 58]. After his arrest, the Government denied Bautista release on bond and detained him at the Adelanto ICE Processing Center in Adelanto, California. [*Id.* ¶¶ 58, 60]. Bautista requested a bond redetermination hearing before an immigration judge ("IJ"). [*Id.* ¶ 60]. Instead of conducting a bond determination hearing, an IJ issued a decision stating it lacked jurisdiction to do so. [*Id.* ¶ 61].

Bautista is but one of hundreds, if not thousands, of noncitizens with no criminal background that have been arrested and detained by the Government for being in the country without admission. The Supreme Court has said before, generally, "it is not a crime for a removable [noncitizen] to remain present in the United States." *Arizona v. United States*, 567 U.S. 387, 407 (2012). Consider the Supreme Court's description of what would happen in Bautista's situation:

> If the police stop someone based on nothing more than possible removability, the usual predicate for an arrest is absent. When [a noncitizen] is suspected of being removable, a federal official issues an administrative document called a "Notice to Appear." *See* 8 U.S.C. § 1229(a); 8 CFR § 239.1(a). The form does not authorize an arrest. Instead, it gives the [noncitizen] information about the proceedings, including the time and date of the removal hearing. *See* 8 U.S.C. § 1229(a)(1). If [a noncitizen] fails to appear, an *in absentia* order may direct removal. § 1229a(b)(5)(A).

*Id.*

This is not what happened to Bautista or many others like him.

RESTRICTED Case: 26-2105  05/18/2026  DktEntry: 6.1  Page 66 of 110
Case 2:26-cv-01768-MTL--CDB    Document 1-1    Filed 03/15/26    Page 46 of 87
Case 5:25-cv-01873-SSS-BFM    Document 116    Filed 02/18/26    Page 5 of 22    Page ID
#:2076

## A.    The Original Case and its Adjudication

Respondents refused to release Bautista or grant him a bond hearing. Bautista, along with other Plaintiff Petitioners, initially filed a Petition for Writ of Habeas Corpus on July 23, 2025.  [Dkt. No. 1, "Habeas Petition"].  The Habeas Petition came fifteen days following an internal memorandum circulated to all ICE Employees.  [*See* Dkt. No. 5-2 at 44–46, "Interim Guidance" or "DHS Policy"].

Issued on July 8, 2025, the Interim Guidance "serve[d] as notice that DHS, in coordination with the [DOJ], . . . revisited its legal position on detention and release authorities."  [DHS Policy at 45].[5]  In the Interim Guidance, the DHS and DOJ acknowledged that a new legal interpretation  of the Immigration and Nationality Act ("INA") to "ensure immediate and consistent application" as to DHS's authority to detain noncitizens from immigration detention.  [*Id.*].

Respondents detained Bautista, and refused to provide him with a bond hearing or release him from unlawful detention until this Court ordered as such.  [Dkt. No. 14, "TRO Order"].  In the time since issuing that initial order, the Court declared as a matter of law that indefinite detention for Bautista and those similarly situated is unlawful.  The number of people in Bautista's exact situation was so large that the Court found it appropriate to certify a nationwide class to which this declaration of law would apply.  But declaratory relief was not the only form of relief ordered.  The Court also vacated the underlying DHS Policy that the Government relied on to continue detaining people like Bautista.

On each occasion, and with each ruling being based on a more developed factual record than before, the Court determined the DHS Policy improperly interpreted the INA and that continued detention of Plaintiff Petitioners and those similarly situated was unlawful.  [TRO Order; Dkt. No. 81, "Partial MSJ Order; Dkt. No. 92, "Reconsideration Order"; Dkt. No. 93, "Amended Consolidated Order"].

One might assume that four separate orders issued by a federal district court interpreting a federal statute would make clear that enforcing executive policies

---

[5] For a full description of the DHS Policy, the impact of its change in legal interpretation, and a brief history of the Immigration and Nationality Act, the Court incorporates its factual background from its Amended Consolidated Order issued on December 18, 2025.  [Dkt. No. 93, "Amended Consolidated Order"].

premised on a contrary legal interpretation is improper.  Remarkably, that has not been the case.

### B.      Non-Compliance by Respondents

For sake of brevity, the Court only recounts key developments following this Court's final judgment issued on December 18, 2025.  [*See* Dkt. No. 94].  Each of the events below reflects Respondents' failure to comply with the Final Judgment; however, given the breadth and volume of events, the Court cannot provide an exhaustive account.

#### 1.      Increased Habeas Filings in this Court

As indicated on multiple occasions by the Court, Respondents' noncompliance has caused a routine process of adjudicating habeas petitions and temporary restraining orders.  [Dkt. No. 107-2, "Transcript" at 10:6-22].

For context, the Court's review of filings within this judicial district shows 551 habeas petitions were filed between December 19, 2025, and January 30, 2026.  In other words, that is the number of habeas petitions filed since the Court issued its final judgment as of today.  This is a relatively large figure; the Court's search of habeas petitions filed within this judicial district between January 1, 2025, to July 8, 2025, indicates a total of 165 habeas petitions that were filed.

Certainly, not all 551 habeas petitions were filed by members of the Bond Eligible Class.  However, the Court can confirm a considerable portion of these petitions in fact were.  As of this date, over 70 habeas filings in this Court have been expressly designated as related to this matter.  Many others lack such designation but nevertheless fall within the same category.  An increase in habeas filings alone may not strike the Court's attention.  However, ample evidence demonstrates Respondents' noncompliance with the Final Judgment.

#### 2.      Events Across the Country

Respondents' noncompliance with the Final Judgment has taken a toll on wrongfully detained noncitizens, courts, and government and Petitioners' attorneys.

The Court has identified over 400 cases nationwide following this Court's Final Judgment in which district courts have granted habeas petitions filed by Bond Eligible Class members.  WESTLAW, + (habeas /5 grant!) "Bautista", 405 results (Feb. 5, 2025) (filtered by Search within Results +"grant! /20 bond", "Date

---

RESTRICTED Case: 26-2105  05/18/2026  DktEntry: 6.1  Page 68 of 110
Case 2:26-cv-01768-MTL--CDB   Document 1-1   Filed 03/15/26   Page 48 of 87
Case 5:25-cv-01873-SSS-BFM    Document 116   Filed 02/18/26   Page 7 of 22   Page ID #:2078

After 12/18/2025"). Attorneys for Respondents in cases involving Bond Eligible Class members report backlogs at the EOIR, which have caused difficulties in scheduling bond hearings for Bond Eligible Class Members. [*See e.g.*, Dkt. No. 7 *Olga Sosa Inzuna v. Warden of Adelanto Detention Facility et al.*, Case No. 5:26-cv-00078-SSS-BFM (referencing "the backlog of cases at the EOIR"); *see id.* at Dkt. No. 10 (reporting Petitioner did not receive her bond hearing within the 7-day window outlined by the Court)].

In the United States District Court for the District of Minnesota, an attorney representing some of the same Respondents that are party to this case requested that the Court hold her in contempt "so that [counsel] can have a full 24 hours of sleep." [Dkt. No. 19 at 30:24-25, in *Tot-Choc v. Bondi et al.*, 0:26-cv-00167-JWB-JFD (D. Minn. Feb. 3, 2026)]. Respondents are under extraordinary strain. No irony is lost on the Court. Respondents have chosen to avail themselves of these exact circumstances of which they now complain.

### 3.    Parties' Joint Status Report

Per the Court's Amended Consolidated Order, the parties filed a Joint Status Report detailing their respective positions and requests on January 9, 2026. [Dkt. No. 100, "Joint Status Report"]. In the Joint Status Report, Plaintiff Petitioners expressed concerns as to whether Respondents had adequately provided relief in accordance with the final judgment. [*Id.* at 2–4]. Plaintiff Petitioners observed that IJs continued to follow the BIA's legal interpretation in *Matter of Yajure Hurtado*, which endorsed a position identical to the DHS Policy. [*Id.* at 3]. Respondents disagreed that "any further relief [was] required or warranted regarding the declaratory judgment" that was part of the final judgment. [*Id.* at 5].

The Status Conference to discuss next steps in this matter was originally scheduled for January 16, 2026; however, the Court was made aware of a material development shortly before the hearing that required the parties briefing: an article containing an email containing nationwide guidance from Chief Immigration Judge Teresa L. Riley that questioned this Court's final judgment. [*See* Dkt. No. 101, "Minutes of Status Conference"]. The Court notified parties of its intent to continue the status conference by a week. [*Id.*].

To provide parties with an opportunity to brief their positions, the Court issued an order on January 16, 2026, which detailed questions regarding Chief Immigration Judge Teresa L. Riley's email, specific issues regarding compliance with the final judgment, and how the parties intended to proceed. [Dkt. No. 102].

---

The parties submitted their respective written responses on January 20, 2026. [Dkt. Nos. 103, 104].

Respondents' submission raised several issues. For purposes of this Motion, the only relevant issue is whether Respondents have complied with the Court's final judgment. In espousing their compliance with the Court's final judgment, Respondents made several observations.

*First,* Respondents indicated DHS "is no longer relying on the [DHS Policy]," but that "DHS is not the BIA and does not set policy for immigration judges." [Dkt. No. 103 at 4].

*Second*, Respondents suggested compliance with the Court's final judgment because "the Court has not vacated *Matter of Yajure Hurtado*." [*Id.* at 4–5]. Respondents clarified that their position "remains . . . that *Matter of Yajure Hurtado* is the correct interpretation on detention of applicants for admission." [*Id.* at 5]. Nevertheless, Respondents noted "[e]ven if [*Matter of Yajure Hurtado*] were vacated, immigration courts would follow circuit precedent and the statutory text under their *own interpretive authority*." [*Id.* (emphasis added)].

*Finally*, because the Court issued a declaratory judgment, Respondents suggested "the practical implication . . . is, at most, limited to its preclusive effect in habeas litigation filed by [Bond Eligible Class members]." [Dkt. No. 103 at 5]. As such, Respondents concluded Chief Immigration Judge Teresa L. Riley's nationwide guidance "merely restates th[e] premise" that "immigration judges are bound by precedential decisions of the BIA." [*Id.* at 6].

### 4.    January 22, 2026 Status Conference

A review of the transcript from the January 22, 2026 Status Conference makes clear why this Motion is before the Court. [*See* Dkt. No. 107-2, "Transcript"]. Respondents were unable to provide substantive responses to questions regarding compliance with the final judgment.

### i.    Compliance with Final Judgment by Particular Respondents

As indicated before, Respondents indicated the DHS no longer relied on the Interim Guidance containing the DHS Policy following the final judgment. [Dkt. No. 103 at 4]. However, the DHS is not the only agency that is party to the case.

---

Among Respondents upon whom service has been executed are the following: DHS; Attorney General, Pamela Bondi; the Executive Office for Immigration Review ("EOIR"); ICE; Acting Director of ICE, Todd Lyons; Secretary of Homeland Security, Kristi Noem; then-Acting Director of EOIR, Sirce Owen; and Acting Director, Los Angeles Field Office Immigration and Removal Operations, Ernesto Santacruz, Jr.  [Dkt. No. 47, "Proof of Service"]. The Court is aware that DHS is not the entity responsible for setting policy for IJs. That is the EOIR, a party to the case.

When the Court inquired as to the EOIR's compliance with the final judgment, Respondents suggested the "EOIR was not coerced to do anything" and "other forums [were] to determine" the preclusive effect of this Court's judgment due to the appeal filed in this matter.  [Transcript at 7:13–14, 8:22–25].

Nevertheless, because much of the Court's concern dealt with the volume of habeas petitions filed in this judicial district, the Court redirected Respondents to discuss the preclusive effect of *this Court's* final judgment in *this judicial district*. Respondents provided no immediate answer; instead, Respondents stated they "would have to brief that specifically." [Transcript at 9:22–25].

### ii.    Respondents' Justification for Current Circumstances

Lacking clarity as to the basis for Respondents' position, the Court asked Respondents to explain why IJs continue to rely on *Yajure Hurtado* despite the fact its underlying legal interpretation was found irreconcilable with this Court's declaration of law.  [Transcript at 18:3–19:15].  Respondents confirmed their argument was "[e]ssentially" that *Yajure Hurtado* remains a "valid legal interpretation . . . binding all [immigration judges] due to the BIA's power to issue precedential decisions."  [*Id.* at 18:6–11].  Upon confirming that Respondents attributed the precedential effect of the BIA's opinion in *Yajure Hurtado* to the agency's regulations, Respondents also agreed that there was nothing beyond "the interpretation and the binding controlling authority of *Yajure Hurtado*" justifying "the continued detention of and denial of bond hearings for [Bond Eligible Class members]."  [*Id.* at 22:17–23:5, 26:11–19].

Upon ascertaining Respondents' positions, the Court then asked whether Respondents' position "privilege[ed] an executive agency's legal interpretation over a federal district court's legal interpretation."  [Transcript at 18:12-15].  The Court did not receive a definitive response from Respondents; again, Respondents

---

Page 9 of 22                    CIVIL MINUTES—GENERAL      Initials of Deputy Clerk <u>iva</u>

49

noted their willingness "to address [that issue] in briefing" and that they were "not in a position to answer" the question. [*Id.* at 19:16–18, 20:19–20].

Finally, the Court asked whether "executive bodies within the EOIR [were] complying with the regulations pursuant to the bond hearings . . . as interpreted by this Court in the final judgment." [Transcript at 23:18–21; 23:17–20]. Once more, Respondents stated they would have to brief the issue. [*Id.* at 25:19–20].

In the days following the Status Conference, 282 habeas petitions have been filed in this Court as of February 15, 2026. Although not all these filings fall within the scope of this case, many are indeed filed by Bond Eligible Class members in indefinite detention.

Consistent with their position in the Joint Status Report, Plaintiff Petitioners have filed this Motion pursuant to 28 U.S.C. § 2202. [Dkt. No. 107, "Motion"; Dkt. No. 111, "Reply"; *see also* Dkt. No. 100, "Joint Status Report"]. The Motion follows a final decision on the merits of Counts I, II, and III of Plaintiff Petitioners' Amended Class Complaint and entry of final judgment. [*See* Dkt. No. 94, "Final Judgment"]. Ordinarily, a final decision "generally . . . ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945). As detailed above, this Motion has become necessary to do exactly that: execute the judgment.

Respondents have far crossed the boundaries of constitutional conduct.[6] Somehow, even after the judicial declaration of law that the DHS was misguided in its act of legal interpretation that nullified portions of a congressionally enacted statute, Respondents still insist they can continue their campaign of illegal action. The shameless submission that is Respondents' Opposition deliberately seeks to

---

[6] The Court recognizes the Fifth Circuit reached a contrary decision on the issue of statutory interpretation in this case. *See Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026). First, the Court finds relevant that Petitioners in *Buenrostro-Mendez* "concede that they are applicants for admission within the meaning of § 1225(a)(1)," unlike Petitioners here. *Id.* at *4. Second, though Respondents may hedge their position on this newly issued opinion, the Court notes their noncompliance with the Final Judgment precedes this decision. Finally, the decision coming out of the Fifth Circuit is not binding on this Court. To effectuate the final judgment already issued by this Court months before the Fifth Circuit's determination, the Court proceeds with this Motion.

Page 10 of 22                 CIVIL MINUTES—GENERAL     Initials of Deputy Clerk <u>iva</u>

50

RESTRICTED Case: 26-2105 05/18/2026 DktEntry: 6.1 Page 72 of 110
Case 2:26-cv-01768-MTL--CDB Document 1-1 Filed 03/15/26 Page 52 of 87
Case 5:25-cv-01873-SSS-BFM Document 116 Filed 02/18/26 Page 11 of 22 Page ID #:2082

erode any semblance of separation of powers. [*See* Dkt. No. 110, "Opposition" or "Opp."].

Respondents can only do so in a world where the Constitution does not exist. The Constitution makes no apology in condemning Respondents. With no other option but to uphold its constitutional duty, the Court **GRANTS** Petitioners' Motion.

## II. LEGAL STANDARD

The Declaratory Judgment Act establishes the ability for "any court of the United States, upon the filing of an appropriate pleading" to "declare the rights and other legal relations of any interested party seeking such declaration. *See* 28 U.S.C. § 2201. Moreover, the Act permits courts to grant "[f]urther necessary or proper relief based on a declaratory judgment" against any adverse party whose rights have been determined by such judgment after "reasonable notice and hearing." *See* 28 U.S.C. §§ 2201, 2202.

## III. DISCUSSION

### A. Jurisdictional Issues

The Declaratory Judgment Act does not confer nor serve as an independent basis for subject matter jurisdiction. *California Ass'n of Emp. v. Bldg. & Const. Trades Council of Reno, Nev. & Vicinity*, 178 F.2d 175, 177 (9th Cir. 1949); *see also TIG Ins. Co. v. Reliable Research Co.*, 334 F.3d 630, 634 (7th Cir. 2003).

However, Respondents' misplaced fixation on the Declaratory Judgment Act comes at the cost of ignoring the Administrative Procedure Act ("APA"). The APA was enacted "in part to offer additional protections beyond the minimum constitutional requirements of due process." Martin H. Redish, *Due Process as American Democracy* 146 (2024).

Indeed, the APA confers on this Court the jurisdiction to enter further relief for the same reasons discussed in the Amended Consolidated Order. [*See* Dkt. No. 93 at 20–24]. Moreover, the Ninth Circuit's recent order in *National TPS Alliance v. Noem* included discussion consistent with this Court's analysis as to the availability of vacatur as an APA remedy. *See Nat'l TPS All. v. Noem*, No. 25-5724, 2026 WL 226573, at *17–18 (9th Cir. Jan. 28, 2026). Therefore, the Court assures it operates within the confines of its subject matter jurisdiction in issuing further relief.

---

Furthermore, though Respondents challenge this Court's jurisdiction to amend its judgment pending an appeal, Respondents are incorrect. [*See* Opp. at 4 (citing *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982))].

Although the Ninth Circuit has yet to discuss the intersection of *Griggs* and § 2202, "[c]ourts that have addressed when a motion for further relief may be brought under § 2202 have consistently held that neither the filing of an appeal nor a lengthy delay after the trial court's initial ruling terminates the court's authority to grant further relief pursuant to § 2202." *United Tchr. Assocs. Ins. Co. v. Union Lab. Life Ins. Co.*, 414 F.3d 558, 572 (5th Cir. 2005) (collecting authorities from three circuits and indicating that *Griggs* operates as no bar).

To the extent Ninth Circuit precedent touches on similar principles, *In re Padilla*, the very case to which Respondents cite, states that a "trial court also retains jurisdiction to implement or enforce the judgment or order but may not alter or expand upon the judgment" during an appeal. *In re Padilla*, 222 F.3d 1184, 1190 (9th Cir. 2000). The truncated quote by Respondents assumes that the Court alters or expands the judgment by granting Petitioners' requested relief. Once again, Respondents are incorrect. The Motion seeks to *enforce* the judgment.

Having ensured no jurisdictional bars prevent evaluating this Motion, the Court now determines whether further relief is warranted.

### B.    Propriety and Scope of Relief

The only prerequisites to grant further relief under § 2202 are provision of reasonable notice and hearing. § 2202. That has been provided. [*See* Dkt. No. XX]. Further relief, based on the original declaratory judgment, may be granted wherever it is either "necessary *or proper.*" § 2202 (emphasis added).

The sole remaining question is whether further relief is necessary or proper. Petitioners argue their requested relief is necessary *and* proper. [Motion at 3–11]. Respondents maintain the opposite.[7] [Opp. at 5–11].

---

[7] To the extent Respondents argue that classwide notice is neither necessary nor proper under § 2201, the Court reminds Respondents of Rule 23(d)(1)(B), which permits courts to issue orders giving appropriate notice. Necessity and propriety are not the governing standards under Rule 23(d)(1)(B); thus, Respondents arguments in the Opposition are non-responsive.

Page 12 of 22                CIVIL MINUTES—GENERAL     Initials of Deputy Clerk <u>iva</u>

52

To demonstrate necessity of further relief, Petitioners point to the nationwide guidance issued by Chief Immigration Judge Teresa L. Riley.  [Motion at 3–4]. The guidance effectively encourages IJs across the country to stay the course of violating the rights of Bond Eligible Class Members.  And so they did.

Petitioners also submitted the opinion of IJ Holly D'Andrea who speculated as to the intent of this Court's holding in *Bautista*, its reach, and its impact on IJs. [*See* Dkt. No. 107-3 at 2–4].

Notably, IJ D'Andrea observed that this Court's orders have left "[immigration courts] in the awkward position of being told that the policy of Hurtado is not tenable but its holdings and dictates are not overruled."  [Dkt. No. 107-3 at 3].

Ordinarily, the Court would not state basic principles of law to avoid pontification.  Yet separation of powers concerns is at the heart of this case, this Court's exercise of authority, and this country's foundational principles imbued in the Constitution.  Respondents appear to have little regard for such fundamental tenets; thus, a brief lesson in legal history is apt.

Separation of powers as well as checks and balances are essential components to this country's founding.  The Constitution is evidence of that fundamental premise.  The words and structure of the Constitution anticipate that the three branches of government would be in tension with one another.  *See* Redish, *supra*, at 3 (describing the Framers' design of the constitutional system "to protect against the risk of a dominant faction abusing its power").  There is nothing "awkward" or "confusing" about that, as Respondents and IJs suggest.  [*See* Opp. at 6; Dkt. No. 107-3 at 3].

The current reality that two branches of government are at odds with one another is not an anomaly.  It is the very nature of the government put into place by the Framers.  "[T]he great security against a gradual concentration of the several powers in the same department, consists in giving to those who administer each department the necessary constitutional means and personal motives to resist encroachments of the others."  The Federalist No. 51 (J. Madison).  James Madison posited that "[a]mbition must be made to counteract ambition," and "such devices should be necessary to control the abuses of government."  *Id.*

---

Page 13 of 22                    CIVIL MINUTES—GENERAL     Initials of Deputy Clerk iva

53

When considering one branch's aggrandizement of power, Chief Justice John Marshall confirmed that the Constitution "establish[ed] certain limits not to be transcended." *Marbury v. Madison*, 5 U.S. 137, 176 (1803).

Respondents engage in unlawful practices under the guise of "immigration enforcement" and fidelity to agency regulations. Those practices were found unlawful by way of statutory interpretation by this Court.

"[I]nterpretation of the laws" is "the proper and peculiar province of the courts." The Federalist No. 78, at 525 (A. Hamilton) (J. Cooke ed. 1961). The Supreme Court observed recently that "the Framers structured the Constitution to allow judges to exercise that judgment independent of influence from the political branches." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385 (2024) (citations omitted).

That independence is crucial. It is precisely why Alexander Hamilton referred to the judicial branch as the "least dangerous to the political rights of the Constitution." The Federalist No. 78, at 523 (A. Hamilton) (J. Cooke ed. 1961). The judiciary "will be least in a capacity to annoy or injure [those rights]." *Id.* Courts have "no influence over either the sword or the purse; no direction either of the strength or of the wealth of the society; and can take no active resolution whatever." *Id.*

The judiciary, having "neither force nor will," possesses "merely judgment." *Id.* Judgment carries power. "[A]n order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 293 (1947).

Respondents cannot relitigate the validity of the Court's final judgment here nor continue to endorse an executive interpretation of law that is contrary to the final judgment's declaration of law. "It is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected." *Howat v. State of Kansas*, 258 U.S. 181, 180–90 (1922).

As evidenced by the volume of habeas petitions filed by Bond Eligible Class members and the conduct of Respondents in continuing to violate the rights of those class members, further is relief necessary to effectuate the Final Judgment.

Page 14 of 22          CIVIL MINUTES—GENERAL          Initials of Deputy Clerk iva

Given the circumstances surrounding Respondents' noncompliance and its threat to separation of powers, the Court finds further relief is proper to fulfill this Court's constitutional duties.

### C.      Form of Further Relief

Respondents have violated and continue to violate the law by detaining Bond Eligible Class members in contravention of the Final Judgment.  Worse, Respondents proffer frivolous arguments that aim to insulate unlawful policies from judicial review while taking positions that seek to bludgeon separation of powers into oblivion.  [*See generally* Opp.; *see also* Dkt. No. 103].

Respondents' fixation on the "coercive" nature of the declaratory judgment issued by the Court ignores the other form of relief expressly granted by the Court: vacatur under the APA.  Thus, the only relevant argument raised in the Opposition is Respondents' suggestion that *Yajure Hurtado* is not the DHS Policy that was previously vacated, and that *Yajure Hurtado* remains binding upon IJs because the BIA issued it.

Respondents engage in a deliberately dense three-step maneuver to reach their core absurd conclusion that no further relief is warranted.

- **Step 1**: Identify an immaterial difference between two things that are functionally the same.  [Opp. at 9; Dkt. No. 103 at 3].
- **Step 2**: Insist that the immaterial difference is so consequential that it can violate separation of powers.  [Opp. at 12; Dkt. No. 103 at 3].

Finally, and most importantly,

- **Step 3**: Make sure to never mention the Constitution with the hope that a federal court will not notice.  [*See generally* Opp.; Dkt. No. 103 at 3].

Learned helplessness, no matter how much Respondents may try to will it upon the judiciary, is not an option.  All *Yajure Hurtado* does is parrot the DHS Policy.  *Yajure Hurtado* contains an identical, incorrect interpretation of law.  It is merely in another form.  Yet Respondents state that *Yajure Hurtado* controls because the BIA issues precedential decisions binding on IJs.

It is "emphatically the province and duty of the judicial department to say what the law is."  *Marbury v. Madison*, 5 U.S. 137, 177 (1803).  It is not the executive department's province and duty to say what the law is.  The role of the

judiciary is to continue to demand compliance with the law even in the face of outright defiance by the executive. When asked by the Court to articulate any other justification for Respondents' continued course of action in the event *Yajure Hurtado* were to be vacated, Respondents indicated they were not aware of anything else that would require IJs to deny bond hearings. [Transcript at 26:20–27:7].

As the Ninth Circuit has recently indicated, vacatur under the APA sets aside unlawful actions and "restore[s] the status quo." *Nat'l TPS All.*, 2026 WL 226573 at *17. In restoring the status quo, this Court's final judgment made clear that agency action contrary to the declaration of law was set aside under the APA. The Court's Amended Consolidated Order stated that "the interpretation in *Yajure Hurtado*, 29 I. & N. Dec. 216, which contradicts the Court's reasoning is no longer controlling." [Dkt. No. 93 at 20]. The Court, possibly out of naivete, entrusted Respondents to abide by the law as declared in the Final Judgment. Instead, Respondents choose to privilege an executive interpretation of law over the judiciary's.

*Yajure Hurtado* is functionally equivalent to the DHS Interim Policy, though Respondents seek to obfuscate the identity of these executive actions by referencing internal agency regulations to which Respondents selectively adhere. [*See* Transcript at 22:6–25:20].

The Court's initial decision to deny Petitioners' request to vacate *Yajure Hurtado* under the APA was an act of judicial restraint: a formality. However, based on the representations Respondents have made to the Court, it is evident that further relief is both necessary and proper. The Court **VACATES** *Yajure Hurtado* under the APA.

### D. Notice to Bond Eligible Class

Beyond the scope of the Motion, the Court ordered parties to brief proposed methods of classwide notice. [*See* Transcript at 29:25–30:17]. Respondents suggest that Petitioners' proposed forms of notice are neither "necessary nor proper." [Opp. at 5]. In doing so, Respondents describe the proposed notice as overbroad, repetitive, burdensome, and unworkable. [*Id.* at 5–8].

As a preliminary matter, necessity and propriety are not the standards by which the Court may issue orders requiring notice to a certified class. *See* Fed. R. Civ. P. 23(d)(1)(B). Rather, Rule 23(d) permits a court to issue orders on

---

56

ER-077

"procedural matters" to "protect class members and fairly conduct the action."
Fed. R. Civ. P. 23(d)(1)(B), (E).  This includes entering orders "giving appropriate
notice to some or all class members" of "any step in the action[.]"  Fed. R. Civ.
P. 23(d)(1)(B)(i); *see also* Fed. R. Civ. P. 23 advisory committee's note to 1966
amendment ("Notice is available fundamentally for the protection of the members
of the class or otherwise for the fair conduct of the action[.]"); *id.* ("Subdivision
(d)(2) does not require notice at any stage, but rather calls attention to its
availability and invokes the court's discretion.").

Therefore, the Court evaluates Petitioners' proposals for notice and
Respondents' objections to those proposals based on whether the methods of notice
are appropriate to protect class members and would fairly conduct this action.

Where Respondents oppose classwide notice, it appears to be based in an
argument that classwide notice is an improper remedy.  [*See* Opp. at 5–8].
Respondents aver that Petitioners' requests "are no more than thinly-guised
attempts to impermissibly alter and expand the Court's earlier judgment by
increasing the coercive and injunctive effect of that judgment and imposing
operationally impracticable burdens on Respondents."  [*Id.* at 2].  Once again,
Respondents are incorrect.  Notifying individuals of their rights as Bond Eligible
Class members neither imposes coercive effect nor grants injunctive relief as
prohibited by § 1252(f)(1).[8]  As indicated above, classwide notice is a *procedural*
matter that the Court may issue in its authority to conduct the action.  *See* Fed. R.
Civ. P. 23(D).

Indeed, other district courts have ordered classwide notice in similar cases.
*See Guerrero Orellana v. Moniz*, No. 25-CV-12664-PBS, 2025 WL 3687757 at
*9–11 (D. Mass. Dec. 19, 2025) (ordering notice in a certified class on the issue of
immigration bond hearings for habeas petitioners); *Rodriguez Vazquez v.
Hermosillo*, No. 3:25-CV-05240-TMC, 2026 WL 102461 at *6–7 (W.D. Wash.
Jan. 14, 2026) (same).

Consistent with the circumstances described above, classwide notice is
necessary to protect class members and fairly conduct the action.  Let us return to

---

[8] Given Respondents' insistence on the limited relief available to Petitioners,
the Court also finds it necessary to clarify that § 1252(f) does not impose a *per se*
prohibition on classwide injunctive relief.  Specific carveouts as to the availability
of classwide injunctive relief in certain actions are detailed in 1252(f)(3).

Page 17 of 22          CIVIL MINUTES—GENERAL     Initials of Deputy Clerk <u>iva</u>

57

Respondents' argument that Petitioners' proposed notice for Bond Eligible Class members is burdensome or unworkable. [*See* Opp. at 5–8].

Recall Respondents are DHS, ICE, and EOIR as well as the individuals at the head of these executive bodies. Together, Respondents could stop the continued, unlawful detention of Bond Eligible Class members. Compliance with the Final Judgment would obviate the need for classwide notice and this Motion.

Nevertheless, Respondents choose to disregard this Court's declaration of law and vacatur of unlawful agency action. They instead insist that agency regulations dictating the EOIR's structure require IJs to follow *Yajure Hurtado*. [Opp. at 9]. Never mind that Respondents necessarily violate other agency regulations that confer procedural protections and rights for noncitizens by following *Yajure Hurtado*. *See* 8 C.F.R. §§ 1003.19, 1236.1. Respondents insist they must comply with agency regulations; in the same breath, they choose one regulation over another. Respondents do not appear familiar with their regulations when cherrypicking which to abide by, even though one provides procedural protections while the other merely outlines the internal hierarchy of the agency.

The result? Bond Eligible Class members must affirmatively seek habeas relief because Respondents deny them the individualized bond hearings to which the class members are entitled.

The tragedy behind the current situation: Respondents' compliance with this Court's orders would solve the problem for both sides.

Respondents can continue to waste limited, valuable resources; the Court will in turn continue to protect due process and the principles of separation of powers by articulating the rights of Bond Eligible Class members. The time and cost of doing so is not a waste, though it comes at the heavy price of the unwarranted detention of many Bond Eligible Class members.

The Court **ORDERS** classwide notice of the Final Judgment. The form by which Respondents are ordered to give notice is attached in the Appendix hereto.

### E.    Rule 11 Considerations

Finally, Petitioners reiterate concerns raised at the Status Conference regarding misrepresentations or frivolous arguments made by Respondents in this matter. [*See* Transcript at 13–14]. As Respondents indicate, no Rule 11 motion

has been properly filed nor presented such that Respondents may benefit from the mandatory 21-day period.  [Opp. at 11].  No further discussion is necessary as to this issue.[9]

## IV.  CONCLUSION

In accordance with its authority under § 2202, the Court **GRANTS** Petitioners' Motion.  The Court hereby **VACATES** *Matter of Yajure Hurtado* as contrary to law under the APA.

Furthermore, the Court **ORDERS** classwide notice as follows:

**Form of Notice:**  Respondents shall give notice in the form attached in the Appendix hereto ("the Notice").  Respondents shall forthwith translate the notice into, at minimum, Spanish.

**Where Notice Shall Be Provided:**

- **Online Detainee Locator System Site**: Within 48 hours of the date of this Order, DHS shall post the Notice on its Online Detainee Locator System site found at https://locator.ice.gov/odls/ in English and Spanish.

- **Department of Homeland Security Site**: Within 48 hours of the date of this Order, DHS shall post the Notice on the landing page of its site found at https://www.dhs.gov/ in English and Spanish.

- **Adelanto Detention Center/Immigration Court:** Within 48 hours of the date of this Order, Adelanto Detention Center and Adelanto Immigration Court shall post the Notice in English and Spanish, in common areas of its facilities holding immigration detainees.

- **EOIR Case Information Site:** Within 48 hours of the date of this Order, the EOIR is ordered to post the Notice on its EOIR Case Information site found at https://www.justice.gov/eoir/eoir-case-information in English and Spanish.

---

[9] The Court underscores the importance of Rule 11 and compliance with the duties outlined in that rule.

- **Form I-862 (Notice to Appear):** Upon providing an inadmissible noncitizen with Form I-862, ICE and/or DHS officers shall provide any potential Bond Eligible Class members with the Notice.

- **Form I-213 (Record of Deportability):** Upon arresting an inadmissible noncitizen, ICE and/or DHS officers must provide confirmation on Form I-213 that the Notice was provided to potential Bond Eligible Class members in their best language within 48 hours of arrest and detention.

**When Notice Shall be Provided:**

- Within 7 days of this Order, Respondents shall serve the Notice on all noncitizens already in immigration detention who Respondents reasonably believe may be members of the class.  The Notice shall be in a language the noncitizen understands.  Should Respondents not have the Notice translated into a language the noncitizen understands, they shall secure an interpreter to translate the Notice as soon as feasible.

- Starting no later than 7 days after the date of this order, Respondents shall promptly serve the Notice on all noncitizens who are newly arrested or detained by immigration officers and who Respondents reasonably believe may be members of the class.  The Notice shall be given at the time the noncitizen is processed in a language the noncitizen understands.  Should Respondents not have the Notice translated into a language the noncitizen understands, they shall secure an interpreter to translate the Notice as soon as feasible.

- Respondents shall record the service of each notice and retain a copy of each such notice served.

- Respondents shall provide the noncitizen with access to a telephone to call an attorney within one hour after the noncitizen receives the Notice.

- At the first master calendar hearing, Immigration Judges ("IJs") are ordered to provide the Notice to Bond Eligible Class members and/or confirm the class member's receipt of the Notice at the time of arrest.

**Continuing Reports:**  The Court will **STAY** the following portion of the Order for 14 days to permit Respondents to comply with the abovementioned orders.  The Court **ORDERS** as follows:

- Within 14 days of this Order, ICE, DHS, EOIR, and Adelanto Detention Facility are to coordinate and provide class counsel for Plaintiff Petitioners a weekly report of Bond Eligible Members presently detained, ICE's custody determination, and information regarding bond hearings requested by class members during that week.

- Within 14 days of this Order, ICE, DHS, EOIR, and Adelanto Detention Facility are to also coordinate and provide the Notice to class counsel for Plaintiff Petitioners a bi-weekly report of the names and A-Numbers of all Bond Eligible Class members who have been released within this judicial district.

Respondents have already wasted valuable time and resources.  Worst of all, not only does detention without due process deprive members of the Bond Eligible Class of their liberty, economic stability, and fundamental dignity, but it also harms their families, communities, and the fabric of this very nation.

**IT IS SO ORDERED.**

## APPENDIX

### CLASS ACTION NOTICE

You may be a member of a class that has been certified by the United States District Court for the Central District of California in *Lazaro Maldonado Bautista et al. v. Ernesto Santacruz Jr et al.*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal. 2025).  On December 18, 2025, the District Court issued a ruling that certain immigration detainees may be unlawfully detained and may seek release on bond or conditional parole under 8 U.S.C. § 1226(a).  Therefore, you may be entitled to request release on bond or conditional parole by immigration officers; you may also be entitled to a bond hearing upon your request to the Immigration Court.  At the bond hearing, the Immigration Judge may determine that you are eligible to be released on bond while your removal proceedings are pending.

If you have questions about your potential membership in the class or your rights under the District Court's ruling, you may call the attorneys representing the class at (415) 343-0770.

Served on date: _____

Served at location: _____

Name of person served: _____

Alien number of person served: _____

Name of officer serving notice: _____

ID number of officer serving notice: _____

Signed by serving officer: _____

---

Page 22 of 22                CIVIL MINUTES—GENERAL     Initials of Deputy Clerk <u>iva</u>

62

ER-083

# EXHIBIT 5

Uploaded on: 7/11/2022 at 5:40:20 p.m. (Eastern Daylight Time)  Base City: WAS

## DEPARTMENT OF HOMELAND SECURITY
## NOTICE TO APPEAR

DOB: 10/04/1988

Event No: WAS2207000286

In removal proceedings under section 240 of the Immigration and Nationality Act:

Subject ID: 378685934

FINS: 1321961617

File No: 241 676 171

In the Matter of:

Respondent: EDWAR ANDERSON GOMEZ BLANCO _____ currently residing at:

9512 COVINGTON PL MANASSAS, VIRGINIA, 20109                    (571) 621-0065

(Number, street, city, state and ZIP code)                (Area code and phone number)

☐ You are an arriving alien.

☒ You are an alien present in the United States who has not been admitted or paroled.

☐ You have been admitted to the United States, but are removable for the reasons stated below.

The Department of Homeland Security alleges that you:

1. You are not a citizen or national of the United States;

2. You are a native of PERU and a citizen of PERU;

3. You entered the United States at or near Otay Mesa, CA, on or about June 21, 2022;

4. You were not then admitted or paroled after inspection by an Immigration Officer.

5. You are an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the See Continuation Page Made a Part Hereof

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

See Continuation Page Made a Part Hereof

☐ This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.

☐ Section 235(b)(1) order was vacated pursuant to:     ☐ 8CFR 208.30     ☐ 8CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:

1901 S. BELL STREET, SUITE 200, ARLINGTON, VA, 22202, ARLINGTON, VIRGINIA
(Complete Address of Immigration Court, including Room Number, if any)

on  August 30, 2022  at  8:00 AM  to show why you should not be removed from the United States based on the
      (Date)          (Time)

charge(s) set forth above.         _____
                                    H 7393 HILARIO - aSDDO
                                   (Signature and Title of Issuing Officer) (Sign in ink)

Date:   July 11, 2022   _____   Chantilly, VA
                                       (City and State)

Uploaded on: 7/11/2022 at 5:40:20 p.m. (Eastern Daylight Time) Base City: WAS

## Notice to Respondent

**Warning:** Any statement you make may be used against you in removal proceedings.

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are in removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 1003.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents that you desire to have considered in connection with your case. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing. At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear, including that you are inadmissible or removable. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by the immigration judge. You will be advised by the immigration judge before whom you appear of any relief from removal for which you may appear eligible including the privilege of voluntary departure. You will be given a reasonable opportunity to make any such application to the immigration judge.

**One-Year Asylum Application Deadline:** If you believe you may be eligible for asylum, you must file a Form I-589, Application for Asylum and for Withholding of Removal. The Form I-589, Instructions, and information on where to file the Form can be found at www.uscis.gov/i-589. Failure to file the Form I-589 within one year of arrival may bar you from eligibility to apply for asylum pursuant to section 208(a)(2)(B) of the Immigration and Nationality Act.

**Failure to appear:** You are required to provide the Department of Homeland Security (DHS), in writing, with your full mailing address and telephone number. You must notify the Immigration Court and the DHS immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the DHS.

**Mandatory Duty to Surrender for Removal:** If you become subject to a final order of removal, you must surrender for removal to your local DHS office, listed on the internet at http://www.ice.gov/contact/ero, as directed by the DHS and required by statute and regulation. Immigration regulations at 8 CFR 1241.1 define when the removal order becomes administratively final. If you are granted voluntary departure and fail to depart the United States as required, fail to post a bond in connection with voluntary departure, or fail to comply with any other condition or term in connection with voluntary departure, you must surrender for removal on the next business day thereafter. If you do not surrender for removal as required, you will be ineligible for all forms of discretionary relief for as long as you remain in the United States and for ten years after your departure or removal. This means you will be ineligible for asylum, cancellation of removal, voluntary departure, adjustment of status, change of nonimmigrant status, registry, and related waivers for this period. If you do not surrender for removal as required, you may also be criminally prosecuted under section 243 of the Immigration and Nationality Act.

**U.S. Citizenship Claims:** If you believe you are a United States citizen, please advise the DHS by calling the ICE Law Enforcement Support Center toll free at (855) 448-6903.

**Sensitive locations:** To the extent that an enforcement action leading to a removal proceeding was taken against Respondent at a location described in 8 U.S.C. § 1229(e)(1), such action complied with 8 U.S.C. § 1367.

## Request for Prompt Hearing

To expedite a determination in my case, I request this Notice to Appear be filed with the Executive Office for Immigration Review as soon as possible. I waive my right to a 10-day period prior to appearing before an immigration judge and request my hearing be scheduled.

Before: _____

_____   _____
(Signature and Title of Immigration Officer) (Sign in ink)    (Signature of Respondent) (Sign in ink)

Date: _____

## Certificate of Service

This Notice To Appear was served on the respondent by me on ___July 11, 2022___ , in the following manner and in compliance with section 239(a)(1) of the Act.

[X] in person   [ ] by certified mail, returned receipt # _____ requested   [ ] by regular mail

[ ] Attached is a credible fear worksheet.

[X] Attached is a list of organization and attorneys which provide free legal services.

The alien was provided oral notice in the ___Spanish___ language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

_____   C IRBY - DO  _____
(Signature of Respondent if Personally Served) (Sign in ink)    (Signature and Title of officer) (Sign in ink)

Exh 1 - Adm
DHS Form I-862 (2/20)

EOIR – 2 of 4

Page 2 of 4

65

ER-086

Uploaded on: 7/11/2022 at 5.40.20 p.m. (Eastern Daylight Time) Base City: WAS

| U.S. Department of Homeland Security | | Continuation Page for Form I-862 |
|---|---|---|
| Alien's Name<br>GOMEZ BLANCO, EDWAR ANDERSON | File Number<br>241 676 171<br>Event No: WAS2207000286 | Date<br>07/11/2022 |

THE SERVICE ALLEGES THAT YOU:
--------------------------------
Immigration and Nationality Act; and/or

6. You are an immigrant not in possession of a valid unexpired passport, or other suitable travel document, or document of identity and nationality.

ON THE BASIS OF THE FOREGOING, IT IS CHARGED THAT YOU ARE SUBJECT TO REMOVAL FROM THE UNITED STATES PURSUANT TO THE FOLLOWING PROVISION(S) OF LAW:
--------------------------------------------------------------------------------
--------------------------------------------------------------
212(a)(6)(A)(i) of the Immigration and Nationality Act, as amended, in that you are an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General.

212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (Act), as amended, as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the Act.

| Signature | Title |
|---|---|
| H 7393 HILARIO | aSDDO |

4 of 4 Pages

Form I-831 Continuation Page (Rev. 08/01/07)
Exh. 1 - Adm.

66

Uploaded on: 1/11/2022 at 3:43.20 p.m. (Eastern Daylight Time)  Base City: WAC

## Privacy Act Statement

**Authority:**

The Department of Homeland Security through U.S. Immigration and Customs Enforcement (ICE), U.S Customs and Border Protection (CBP), and U.S. Citizenship and Immigration Services (USCIS) are authorized to collect the information requested on this form pursuant to Sections 103, 237, 239, 240, and 290 of the Immigration and Nationality Act (INA), as amended (8 U.S.C. 1103, 1229, 1229a, and 1360), and the regulations issued pursuant thereto.

**Purpose:**

You are being asked to sign and date this Notice to Appear (NTA) as an acknowledgement of personal receipt of this notice. This notice, when filed with the U.S. Department of Justice's (DOJ) Executive Office for Immigration Review (EOIR), initiates removal proceedings. The NTA contains information regarding the nature of the proceedings against you, the legal authority under which proceedings are conducted, the acts or conduct alleged against you to be in violation of law, the charges against you, and the statutory provisions alleged to have been violated. The NTA also includes information about the conduct of the removal hearing, your right to representation at no expense to the government, the requirement to inform EOIR of any change in address, the consequences for failing to appear, and that generally, if you wish to apply for asylum, you must do so within one year of your arrival in the United States. If you choose to sign and date the NTA, that information will be used to confirm that you received it, and for recordkeeping.

**Routine Uses:**

For United States Citizens, Lawful Permanent Residents, or individuals whose records are covered by the Judicial Redress Act of 2015 (5 U.S.C. § 552a note), your information may be disclosed in accordance with the Privacy Act of 1974, 5 U.S.C. § 552a(b), including pursuant to the routine uses published in the following DHS systems of records notices (SORN): DHS/USCIS/ICE/CBP-001 Alien File, Index, and National File Tracking System of Records, DHS/USCIS-007 Benefit Information System, DHS/ICE-011 Criminal Arrest Records and Immigration Enforcement Records (CARIER), and DHS/ICE-003 General Counsel Electronic Management System (GEMS), and DHS/CBP-023 Border Patrol Enforcement Records (BPER). These SORNs can be viewed at https://www.dhs.gov/system-records-notices-sorns. When disclosed to the DOJ's EOIR for immigration proceedings, this information that is maintained and used by DOJ is covered by the following DOJ SORN: EOIR-001, Records and Management Information System, or any updated or successor SORN, which can be viewed at https://www.justice.gov/opcl/doj-systems-records. Further, your information may be disclosed pursuant to routine uses described in the abovementioned DHS SORNs or DOJ EOIR SORN to federal, state, local, tribal, territorial, and foreign law enforcement agencies for enforcement, investigatory, litigation, or other similar purposes.

For all others, as appropriate under United States law and DHS policy, the information you provide may be shared internally within DHS, as well as with federal, state, local, tribal, territorial, and foreign law enforcement; other government agencies; and other parties for enforcement, investigatory, litigation, or other similar purposes.

**Disclosure:**

Providing your signature and the date of your signature is voluntary. There are no effects on you for not providing your signature and date; however, removal proceedings may continue notwithstanding the failure or refusal to provide this information.

BOIR – 4 of 4

Exh. 1 - Adm.
DHS Form I-862 (2/20)

# EXHIBIT 6

5/2/26, 2:59 p.m.                                          search

 Official Website of the Department of Homeland Security

Report (

Main Menu

<VOLVER A RESULTADOS

## Página del Centro

Detention Information For:

**EDWAR GOMEZ-BLANCO**
**Pais de Nacimiento:** Perú
**Número A:** 241676171

Centro de Detención Actual:

FLORENCE CORRECTIONAL CENTER
1100 BOWLING ROAD
FLORENCE, AZ 85132
**Información para Visitantes** (520) 868-9095

MÁS INFORMACIÓN>



## Información de la Oficina ERO

Privacidad – Términos

ER-090

5/2/26, 2:59 p.m.                                                                    search

Los familiares y representantes legales pueden obtener
información adicional sobre el caso de esta persona
poniéndose en contacto con esta oficina de ERO:

FLORENCE, AZ, SERVICE PROCESSING CENTER (DOCKET
CONTROL OFFICE)
**Número de Teléfono** (520) 868-5862

VOLVER A LA BÚSQUEDA>

## Información Relacionada

## Información Útil

Estatus de un Caso

Acerca del Localizador de
Detenidos

Folleto

Oficinas de Campo de ICE ERO

Centros de Detención del ICE

Aviso de Privacidad

## Enlaces Externos

Localizador de Reclusos de la
Oficina de Prisiones



DHS.gov USA.gov OIG OpenFOIA Metrics  No    Site    Site
                                      Gov   FearMap Policies
                                      Act         &

https://locator.ice.gov/odls/#/details

70

2/3

ER-091

# EXHIBIT 7

71

Person ID **15243329** Sex **M** DOB **10/04/1988** Current Age **35** COB **PERU** COC **PERU**

Subject ID : **378685934** Processing Disposition: **Warrant of Arrest/Notice to Appear** RCA Look-Up

Case # : **19961964** Case Category: **[8B]** Docket: **BAL - ATD 143-285 Aguilar Pre-O**

Final Order of Removal **No**               Time in Custody **N/A**                  Special Class
Final Order Date **N/A**                    Depart / Cleared Status **ACTIVE**
Proceed With Removal **N/A**
Days Final Order in Effect **N/A**

**Current / Active Alerts**

Enrolled in ATD

## Gomez-Blanco, Edwar 241 676 171

## Encounter Details

**2 Encounter(s) linked to Person ID: 15243329**

| | Ref# | Subject ID | A-Number | Last Name | First Name | COC | Historical Priority | DOB | Encountered on | Case | Case Category |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ● | 2 | 378685934 | 241676171 | GOMEZ BLANCO | EDWAR | PERU | No Priority | 10/04/1988 | 07/11/2022 | 19961964 | 8B |
| ○ | 1 | 378293955 | 241676171 | GOMEZ BLANCO | EDWAR | PERU | No Priority | 10/04/1988 | 06/21/2022 | 19961964 | 8B |

## Encounter Details

### Event / Incident Information

Event Number **WAS2207000286**          Operation **Southwest Border SWB PD**          Primary Agent **C 5841 IRBY**
Event Occurred On **07/11/2022**          Site **WAS**                                  Assigned On **07/11/2022**
Event Type: **Non-Detained Docket Control**   Landmark: **NORVA - NORTHERN VIRGINIA AREA**   Event Supervisor: **H 7393 HILARIO**
Program **NDD - Non-Detained Docket Control**                                           Assigned On **07/11/2022**

### Subject Information

FINS

DNA Collection Device Number **F0719892**

A Number **241 676 171**

Control Name: **GOMEZ BLANCO**

First Name **EDWAR**

Middle Name: **ANDERSON**

Maiden **N/A**

Nickname **N/A**

Living?: **Y**

Sex **M**

Transgender: **N**

Marital Status: **Married**

SSN **N/A**

Juvenile Verified: **N/A**

Occupation **LABORER**

TSC Log #: **N/A**

NUIN #: **N/A**

SEN # **N/A**

Exh. 3 - Adm.

6/28/24, 9:48 AM 06/28/2024 at 09:54:17 AM (Eastern Daylig

| | | |
|---|---|---|
| TECS Subject # **N/A** | Historical Priority | Role **P** |
| U.S. Veteran Status: **N** | | Role Comment: **N/A** |
| Relationship to U S Veteran(s) **N/A** | | Processing Disposition **Warrant of Arrest/Notice to Appear** |
| | Primary Citizenship: **PERU** | INS Status: **Inadmissible Alien** |
| | Hair **BLK** | POE **OTAY MESA, CA** |
| | Eyes **BRO** | Entry Date **06/21/2022** |
| | Complexion: **MED** | Entry Class: **Not Applicable** |
| | Race **W** | Apprehension Date **2022-07-11 09:47:00.0** |
| | Origin: **H** | Warrant served by Warrant Service Officer (WSO)? **N/A** |
| | Date of Birth: **10/04/1988** | |
| | Age **35** | Arrest Method: **Non-Custodial Arrest** |
| | Age at Encounter: **33** | Site **WAS** |
| | Height **65** | Landmark: **NORVA - NORTHERN VIRGINIA AREA** |
| | Weight: **174** | Arrest At/Near **Chantilly, VA** |
| | Speak/Understand English: **N/A** | Juvenile Status: **N/A** |
| | Read/Write English **N/A** | CBP Family Unit ID: **N/A** |
| | Primary Language: **SPANISH** | CBP Separation Reason **N/A** |
| | Family Members **N/A** | Accompanying Family Member Relation: **N/A** |
| | | Accompanying Family Member Subject ID **N/A** |
| | | Consequence Delivery System Selection **N/A** |
| | | ICE Family ID: **N/A** |

## I-213 Narrative

## Narrative 1 : Created Date: 07/11/2022 09:50 AM

### WAS Chantilly ERO Narrative

Based on Record and System Checks, Edwar Anderson GOMEZ Blanco was encountered by the U.S. Border Patrol near Otay Mesa, CA on or about 06/21/2022. At that time, biometrics were obtained. Edwar Anderson GOMEZ Blanco was instructed to report to the ICE ERO WAS Chantilly Office for service of an NTA.

On 07/11/2022 Edwar Anderson GOMEZ Blanco reported to the ICE ERO Chantilly Field Office as instructed and was served an NTA pursuant to section 212 of the INA. Edwar Anderson GOMEZ Blanco had his biometrics (fingerprints, photograph, DNA) obtained. Edwar Anderson GOMEZ Blanco was served OREC and provided a list of free legal services. Edwar Anderson GOMEZ Blanco was previously referred to BI ISAP - Virginia and completed the ISAP process.

### BP NARRATIVE

Border Patrol Agent Julie Amati encountered Edwar Anderson GOMEZ Blanco in the San Diego, California, Border Patrol Sector on 06/21/2022. Agent Amati determined that GOMEZ had unlawfully entered the United States from Mexico on 06/21/2022, at a time and place other than as designated by the Secretary of the Department of Homeland Security of the United States. After determining that GOMEZ was an alien who illegally entered the United States, GOMEZ was arrested and transported to the Chula Vista Border Patrol Station for further processing using the E3/IDENT and IAFIS Systems.

The following numbers are associated with GOMEZ:

A #: 241 676 171
FIN #: 1321961617
FBI #: X5V3M65KX

### IMMIGRATION/CRIMINAL VIOLATION:

At the Chula Vista Border Patrol Station, GOMEZ stated he is a citizen and national of Peru without the necessary legal documents to enter, pass through, or remain in the United States. GOMEZ stated his father and mother, were both born in Peru. Both of GOMEZ's parents are citizens and nationals of Peru. Neither the GOMEZ nor his parents have ever been citizens or nationals of any other countries. GOMEZ also admitted he illegally crossed the international boundary without being inspected by an Immigration Officer at a designated Port of Entry.

While in custody, GOMEZ identified the following person as a point of contact (POC) in the United States:

Exh. 3 - Adm.

73

2/3

6/28/24, 9:46 AM 6/26/2024 at 05:34:17 AM (Eastern Daylight

Name: Karen Trujillo Blanco
Address: 9512 Covington Blvd
Manassas, VA 20109
Phone: (571) 375-9326

DISPOSITION:

GOMEZ was paroled into the United States and issued an I-94 as an Alternative to Detention (ATD).
GOMEZ was Paroled under INA _ 212(d)(5) due to detention capacity issues at San Diego Sector.

EOIR — 3 of 3

Exh. 3 - Adm.

https //earm ice dhs gov/earm/showEncounter do

74

3/3

# EXHIBIT 8

75

Uploaded on: 12/16/2022 at 4:20:10 p.m. (Eastern Standard Time) Base City: STE

**GOMEZ BLANCO, Edwar Anderson**                                   A#241-676-171

Amin Ganjalizadeh, Esq.                                            **NON-DETAINED**
AG Legal, PLLC
EOIR#: FZ612816
900 S. Washington Street, Suite 109
Falls Church, VA 22046
703-723-9822 (Office)
703-662-6039 (Fax)
AG@AminGLegal.com

## UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
## UNITED STATES IMMIGRATION COURT
STERLING, VIRGINIA

|  |  |
|---|---|
| In the Matter of ) |  |
| ) |  |
| ) |  |
| ) |  |
| ) | **NON-DETAINED** |
| **GOMEZ BLANCO, Edwar Anderson** ) | **A#241-676-171** |
| ) |  |
| ) |  |
| ) |  |
| ) |  |
| IN REMOVAL PROCEEDINGS ) |  |

**Immigration Judge: TBA    Next Hearing Date: TBA**

RESPONDENT'S I-589, APPLICATION FOR ASYLUM AND

WITHHOLDING OF REMOVAL, AND PROTECTION UNDER CAT

EOIR — 1 of 15

Exh. 2 - Adm.                                                                  76

# EXHIBIT 9

ER-098



**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**FLORENCE IMMIGRATION COURT**

| | |
|---|---|
| Respondent Name:<br><br>GOMEZ BLANCO, EDWAR ANDERSON<br><br>To:<br><br>Gabriel A. Ramos Cuevas, Esq.<br>RAMOS LAW FIRM<br>1451 Rockville Pike, Ste. 250<br>Rockville, MD 20852 | A-Number:<br>241-676-171<br>Riders:<br>In Removal Proceedings<br>Initiated by the Department of Homeland Security<br>Date:<br>01/20/2026 |

### ORDER OF THE IMMIGRATION JUDGE

The Department of Homeland Security has ☑ filed a motion or ☐ orally moved to pretermit the following application(s):

> DHS Motion to Pretermit R's 589 re ACA Agreement for safe third country of Ecuador (ECU), or Honduras (HND), or Uganda (UGA), to accept 3d country nationals to apply for protection.

Upon considering the motion, and any opposition from the non-moving party, the motion is:

☑ granted for the following reason(s):
    ☑ Respondent has failed to establish *prima facie* eligibility for relief.
    ☑ Other:
    This Court-IJ finds that the Motion of the Department of Homeland Security to pretermit Respondent's I-589 application is well taken and that Respondent's request for protection against persecution and/or torture in Peru is provided by his removal to Ecuador or Honduras or Uganda pursuant to the Asylum Cooperation Agreements (ACA) between the Governments of the United States and Ecuador, Honduras, and/or Uganda, and upon this Court-IJ's finding that Respondent did not establish that he would be or is likely to be persecuted or tortured in Ecuador, Honduras, or Uganda. Therefore, the I-589 is denied as pretermitted.

    We hereby apply Matter of C-I-G-M- & L-V-S-G-, 29 I&N Dec. 291 (BIA 2025), and the safe third country bar to asylum under INA under § 208(a)(2)(A), 8 USC § 1158(a)(2)(A), and the implementing regulation at 8 CFR § 1240.11(h) (which applies to noncitizen aliens who arrive at a U.S. Port of Entry, or enter the United States between ports of entry (e.g. EWI), on or after Nov. 19, 2019, for orders of removal to a designated safe third country to pursue protection in that country of removal).

Exh. 14 -

78

This Court-IJ notes that pretermission of an application is a form of denial of the requests for relief in that application and this Court-IJ's Orders are entered in the Court's CASE system as reflecting that the I-589 application of Respondent was denied as pretermitted.

☐ denied for the following reason(s):
    ☐ Respondent has established *prima facie* eligibility for the relief requested.
    ☐ Other:

Immigration Judge: Taylor, Bruce 01/20/2026

Appeal:    Department of Homeland Security:  ☐ waived  ☑ reserved
            Respondent:  ☐ waived  ☑ reserved
Appeal Due: 02/19/2026

### Certificate of Service

This document was served:

Via: [ M ] Mail | [ P ] Personal Service | [ E ] Electronic Service | [ U ] Address Unavailable
To: [ ] Alien | [ P ] Alien c/o custodial officer | [ E ] Alien atty/rep. | [ E ] DHS
Respondent Name : GOMEZ BLANCO, EDWAR ANDERSON | A-Number : 241-676-171
Riders:
Date: 01/20/2026 By: Taylor, Bruce, Immigration Judge

Exh. 14 -

79

# EXHIBIT 10

80



**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**BOARD OF IMMIGRATION APPEALS**

shefer, nera
Alianza Americas USA
8422 E. Shea Blvd.
#103
Scottsdale, AZ 85260

DHS/ICE Office of Chief Counsel - FLO
3250 N. Pinal Parkway Ave.
Florence, AZ 85132

Name:
GOMEZ BLANCO, EDWAR ANDERSON       241-676-171

Riders:

Date of Notice:  02/22/2026

### FILING RECEIPT FOR APPEAL OR MOTION

The Board of Immigration Appeals (Board or BIA) acknowledges receipt of the appeal or motion and fee or fee waiver request (where applicable) on  02/19/2026  , in the above-referenced case, filed by the  Respondent

Additional Comments
 N/A

**WARNING FOR APPEALS:**

**Departure.**  If you leave the United States after filing this appeal but before the Board issues a decision, your appeal may be considered withdrawn and the Immigration Judge's decision will become final as if no appeal had been taken (unless you are an "arriving alien" as defined in the regulations under 8 C.F.R. § 1001.1(q)).

ER-102

**Proof of posting voluntary departure bond.** If you have been granted voluntary departure by the Immigration Judge, you must submit proof of having posted the voluntary departure bond set by the Immigration Judge to the Board.  Your submission of proof must be provided to the Board within 30 days of filing this appeal.  If you do not timely submit proof to the Board that the voluntary departure bond has been posted, the Board cannot reinstate the period of voluntary departure.  8 C.F.R. § 1240.2(c)(3)(ii).

**Autostay Bond Appeals.**  Please note that the automatic stay will expire 90 days from the date of receipt of the DHS' appeal.  8 C.F.R. § 1003.6(c)(3).  If the Board grants the respondent's request for additional briefing time, then the 90-day automatic stay period will be tolled for the same number of days.  8 C.F.R. § 1003.6(c)(4).

**Form EOIR-27.**  If the appeal was filed by DHS and the respondent/applicant wishes to be represented by an attorney or accredited representative in these new proceedings, counsel must complete a new Form EOIR-27 (Notice of Entry of Appearance as Attorney or Representative before the Board of Immigration Appeals). Unless a Form EOIR-27 is received from counsel, the respondent/applicant will be considered pro se before the Board and all future notices, including the Board's decision, will be sent directly to the respondent/applicant and not to counsel.

## WARNING FOR MOTIONS:

**Stay of removal.**  Filing a motion with the Board does not automatically stop the DHS from executing an order of removal.  If the respondent/applicant is in DHS detention and is about to be removed, you may request the Board to stay the removal on an emergency basis.  For more information, call the Clerk's Office at (703) 605-1007.

**Form EOIR-27.**  If the motion was filed by DHS and the respondent/applicant wishes to be represented by an attorney or accredited representative in these new proceedings, counsel must complete a new Form EOIR-27 (Notice of Entry of Appearance as Attorney or Representative before the Board of Immigration Appeals).  Unless a Form EOIR-27 is received from counsel, the respondent/applicant will be considered pro se before the Board and all future notices, including the Board's decision, will be sent directly to the respondent/applicant and not to counsel.

82

**FILING INSTRUCTIONS:**

If you have any questions about how to file something at the Board, please review the Board's Practice Manual which is available on EOIR's website at www.justice.gov/eoir.

Accepted by: SeilerJ

CC

83

# EXHIBIT 11

84

# DECLARATION OF COUNSEL IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS

I, Erica Sanchez, declare as follows:

1. I am an attorney licensed to practice law in Arizona and am counsel for Petitioner Edwar Anderson Gomez Blanco 241-676-171 in this matter. I submit this declaration based on my personal knowledge, review of the administrative record, and filings in Petitioner's immigration proceedings.

2. Petitioner entered the United States near Otay Mesa, California, on or about June 21, 2022, without being inspected by an immigration officer.

3. Petitioner was arrested and served with a Notice to Appear on July 11, 2022.

4. Since his arrest, Petitioner has been detained by U.S. Immigration and Customs Enforcement ("ICE"). He is currently detained at the Florence Correctional Center and remains in custody without having been afforded an opportunity to present evidence before an Immigration Judge regarding eligibility for release on bond.

5. On December 16, 2022, Petitioner filed a Form I-589 application seeking asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). In support of his application, Petitioner asserts that he fled Peru after Venezuelan gang members extorted, threatened, and assaulted him in connection with his business. Petitioner reported these incidents to the Peruvian police but maintains that authorities failed to provide protection.

6. On December 18, 2025, DHS moved to pretermit (dismiss without a full hearing) his asylum application.

7. Immigration Judges are applying *Matter of Yahure-Hurtado* to decline jurisdiction over custody redetermination hearings in all cases like Petitioner's where the manner of entry was without inspection, rendering the filing of a bond motion a futile exercise. As such, an Immigration Judge has not yet issued a formal custody determination in Petitioner's case.

8. Based on my review of the record, Petitioner has no criminal history, has been present in the United States for more than two years and has not been afforded a meaningful opportunity to petition for bond and to present evidence relevant to flight risk and dangerousness.

9. Petitioner is not categorically barred from bond eligibility and is entitled to an individualized custody determination. His detention is based on an improper application of law and is inconsistent with controlling authority.

I declare under penalty of perjury that the foregoing is true and correct.

85

Executed on March 15, 2026, at Mesa, Arizona.


Erica Sanchez
Attorney for Petitioner

86

Erica Sanchez, Of Counsel
Shefer Law Firm, P.A.
800 SE 4th. Ave #803
Hallandale Beach, Florida 33009
Telephone: (480) 866-1111
erica@shefer.legal
Arizona Bar #027107
Attorney for Petitioner

## UNITED STATES DISTRICT COURT

### DISTRICT OF ARIZONA

| | |
|---|---|
| **Edwar Anderson Gomez Blanco,**<br>  **Petitioner,**<br><br>v<br>.<br>**Kristi Noem, et al.,**<br>  **Respondents**. | **Case No. CV-26-01768-PHX-MTL (CDB)**<br><br><br>**NOTICE OF APPEAL** |

Notice is hereby given that Petitioner, Edwar Anderson Gomez Blanco, appeals to the United States Court of Appeals for the Ninth Circuit from the final order denying the Petition for Writ of Habeas Corpus entered on March 17, 2026. (Doc. 4).

Dated this 3rd day of April, 2026.

By: */s/ Erica Sanchez*
Erica Sanchez, Esq.
Shefer Law Firm, P.A.
800 SE 4th. Ave #803
Hallandale Beach, Florida 33009
(786) 295-9077
erica@sheferlegal.com

ER-108

APPEAL,CASREF,CLOSED,DTE,HABEAS

# U.S. District Court
## DISTRICT OF ARIZONA (Phoenix Division)
## CIVIL DOCKET FOR CASE #: 2:26-cv-01768-MTL--CDB

| | |
|---|---|
| Blanco v. Noem et al | Date Filed: 03/15/2026 |
| Assigned to: Judge Michael T Liburdi | Date Terminated: 03/17/2026 |
| Referred to: Magistrate Judge Camille D Bibles (PS) | Jury Demand: None |
| Case in other court: Ninth Circuit, 26-02105 | Nature of Suit: 463 Prisoner: Alien Detainee |
| Cause: 28:2241 Petition for Writ of Habeas Corpus (Federal) | - Habeas Corpus |
| | Jurisdiction: U.S. Government Defendant |

**Petitioner**

**Edwar Anderson Gomez Blanco**      represented by   **Erica Sanchez**
MiVoz Law PLLC
PO Box 12923
Chandler, AZ 85248
480-866-1111
Email: erica@mivozlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Respondent**

**Kristi Noem**
*Secretary of the Department of Homeland Security, in her official capacity*

**Respondent**

**Sirce E Owen**
*Acting Director of Executive Office for Immigration Review, in her official capacity*

**Respondent**

**Luis Rosa, Jr.**
*Warden of the Florence Correctional Center, in his official capacity*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/15/2026 | 1 | PETITION for Writ of Habeas Corpus (Fed/2241). Filing fee received: $ 5.00, receipt number AAZDC-25354143 filed by Edwar Anderson Gomez Blanco. (Sanchez, Erica) (Attachments: # 1 Exhibit, # 2 Civil Cover Sheet)(KJ) (Entered: 03/16/2026) |
| 03/15/2026 | 2 | SUMMONS Submitted by Edwar Anderson Gomez Blanco. (Sanchez, Erica) (KJ) (Entered: 03/16/2026) |
| 03/15/2026 | 3 | NOTICE OF ASSIGNMENT (Attachments: # 1 Instructions) (KJ) (Entered: 03/16/2026) |

| 03/17/2026 | 4 | ORDER: The Petition for Writ of Habeas Corpus (Doc. 1 ) is denied. The Clerk of Court must enter judgment accordingly and close this case. Signed by Judge Michael T Liburdi on 3/17/2026. (KJ) (Entered: 03/17/2026) |
| 03/17/2026 | 5 | CLERK'S JUDGMENT - Pursuant to the Court's Order filed 3/17/2026, Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 is denied. Petitioner to take nothing and this action is hereby dismissed. (KJ) (Entered: 03/17/2026) |
| 04/03/2026 | 6 | NOTICE OF APPEAL to 9th Circuit Court of Appeals re: 4 Order, 5 Clerk's Judgment by Edwar Anderson Gomez Blanco. Filing fee received: $ 605.00, receipt number AAZDC-25438578. (Sanchez, Erica) *Modified to add doc link on 4/6/2026 (DXD). (Entered: 04/03/2026) |
| 04/08/2026 | 7 | USCA Case Number re: 6 Notice of Appeal. Case number 26-2105, Ninth Circuit. (DXD) (Entered: 04/08/2026) |

| **PACER Service Center** | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 04/28/2026 12:53:24 | | | |
| **PACER Login:** | isabelli1999 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:26-cv-01768-MTL--CDB |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |